Jennifer Hostetler, Bar No. 11994
JHostetler@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: 702.949.8200
Fax: 702.949.8398

*Attorneys for PlayUp, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| PlayUp, Inc., a Delaware Corporation, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Dr. Laila Mintas, an individual, | |
| Defendant. | |

Plaintiff, PlayUp, Inc. ("PlayUp"), by and through its counsel, Lewis Roca Rothgerber LLP, hereby complains of Defendant Dr. Laila Mintas ("Dr. Mintas") and alleges as follows:

### PARTIES

1. PlayUp, Inc. is, an at all times relevant hereto was, a corporation organized under the laws of Delaware, qualified to conduct business in Colorado, New Jersey, and other states, and maintaining its principal place of business in Colorado.

2. Upon information and belief, Defendant, Dr. Laila Mintas is, and at all relevant times hereto, an individual residing in Las Vegas, Nevada.

### JURISDICTION AND VENUE

3. Jurisdiction of this Court is appropriate under 28 U.S. Code § 1332 as the parties are residents of different states and the amount in controversy excess $75,000.

4. Venue is proper under 28 U.S. Code § 1391(b)(1) as Nevada is the state in which the Defendant resides.

116137221.1

## FACTS COMMON TO ALL COUNTS

5. PlayUp is an entertainment and technology company that facilitates global online sports betting. *See* Daniel Simic Affidavit ("Simic Affidavit") attached hereto as **Exhibit "1".**

6. PlayUp's parent company, PlayUp Limited, was originally founded in Australia and with the growth of the company, PlayUp began operating globally into India, New Zealand, and the United States. *See* Simic Affidavit.

7. PlayUp's expansion into the United States was led by Dr. Mintas, as the Chief Executive Officer, United States. *See* Simic Affidavit.

8. At the beginning of her employment in 2019 Dr. Mintas entered into an Agreement with PlayUp, Inc. A true and accurate copy of the Agreement is attached hereto as **Exhibit "2."**

9. In her role as Chief Executive Officer, United States, Dr. Mintas was subject to the following Confidentiality, Non-Competition and Non-Disparagement provisions (collectively "Restrictive Covenants") in the Agreement:

> 6. <u>Confidentiality; Non-Competition, Non-Solicitation; Non-Disparagement.</u> Executive recognizes and acknowledges that she will come into possession of certain confidential and proprietary information and trade secrets of the Company and its Subsidiaries including, without limitation, financial plans, business plans, business concepts, know-how and intellectual property and materials related thereto (the "Confidential Information"). Executive further acknowledges that she will use and develop the goodwill that the Company and its Subsidiaries have established with business relationships. To protect the Company's and the Subsidiaries' investment in the foregoing, Executive agrees to abide by certain restrictive covenants ("Restrictive Covenants"), as follows:
>
> (a) Executive agrees that *she shall not, directly or indirectly, take commercial or proprietary advantage of, profit from, use or disclose to any Person any Confidential Information, except in connection with the good faith performance of Executive's duties hereunder or required by law*. If ordered by a court of competent jurisdiction to disclose Confidential Information, Executive shall immediately provide written notice of that fact to the Board, enclose a copy of the subpoena and any other documents describing the legal obligation, and cooperate with the Company's efforts to object to, or limit, the disclosure obligation.
>
> (b) During the Employment Term, the Executive's Employment with the Company following the Employment Term, and for a period of six (6) months from the date of termination of Executive's employment for any reason, the Executive shall not, anywhere within the United States either as principal, agent, employee, consultant, partner, officer, director, shareholder, or in any other individual or representative capacity, own, manage, finance, operate, control or otherwise engage or participate in any manner or fashion in an employment, business, or other activity competitive with the Company.

\*\*\*

(e) Executive shall not, in any communications with the press or other media or in any communications with any business relation of the Company or any of its Subsidiaries, criticize, ridicule or make any statement which disparages, or is derogatory of, the Company or any of its Subsidiaries or any of their respective directors, managers, or officers. Executive shall not engage in any form of conduct or make any statements or representations that disparage, portray in a negative light, or otherwise impair the reputation or commercial interests of the Company or its past, present and future Subsidiaries, divisions, Affiliates, successors, officers, directors, managers, attorneys, agents or Executives.

\*\*\*

(g) If Executive breaches any of the Restrictive Covenants, the Company shall be entitled to the following relief, each of which shall be independent of the other and severally enforceable, and each of which is in addition to, and not in lieu of, any other relief available to the Company at law or in equity; (1) specific enforcement of the Restrictive Covenants by any court of competent jurisdiction (without posting a bond), it be agreed that any breach or threatened breach of the Restrictive Covenants would cause irreparable injury to the Company and its Subsidiaries and that money damages would not provide an adequate remedy to the Company; (ii) an order requiring Executive to account for, and pay over to the Company and its Subsidiaries, any profits, monies, accruals, increments or other benefits derived as the result of any transactions constituting a breach of the Restrictive Covenants. In the event of any breach or violation by Executive of any of the Restrictive Covenants, the time period of such covenant with respect to such Person shall be tolled until such breach or violation is resolved.

10. Dr. Mintas, however, failed to abide by the aforementioned Restrictive Covenants in the Agreement.

11. Dr. Mintas Agreement is due to expire on November 30, 2021. *See* Simic Affidavit.

12. While PlayUp and Dr. Mintas have been in negotiations regarding the renewal of the Agreement for the last 4-6 weeks, the parties have not been able to reach an agreement as to the terms of the renewal. *See* Simic Affidavit.

13. In negotiations, Dr. Mintas requested the following items:

   a. Her annual remuneration to be increased from USD $500,000 to USD $1,000,000;

   b. Her shareholding in PlayUp be increased to a net 15% non-dilutable holding;

   c. She be appointed Global Chief Executive Officer of PlayUp; and

        d.        Director, Daniel Matthew Simic's ("Mr. Simic"), employment with PlayUp, in every respect, be summarily terminated.

*See* Simic Affidavit.

14.        In response to PlayUp's refusal to Dr. Mintas's renewal terms, she has engaged in the following conduct:

        a.        Made contact with Mr. Sam Bankman-Fried, proprietor of third-party company FTX, and advised him that there is a conflict within management of PlayUp, and in so doing has caused the failure of the sale to FTX;

        b.        ade threats to immediately approach gaming regulators and make statements, which are false, about PlayUp and or PlayUp Inc. with the hope that it will damage the reputation and standing of PlayUp and PlayUp Inc.;

        c.        Made threats to immediately approach the gaming regulators with the hope that the licenses or application for licenses are terminated;

        d.        Made threats to immediately approach the various commercial, trading, and business partners or associates of PlayUp and PlayUp Inc. and destroy those relationships by making false publications about PlayUp and PlayUp Inc. and or Mr. Simic;

        e.        Made threats to immediately approach customers of PlayUp and PlayUp Inc. and damage their relationship with PlayUp and PlayUp Inc.; and

        f.        Made threats to take immediate injurious steps to PlayUp and PlayUp Inc. that would cause it to be placed into liquidation or bankruptcy.

*See* Simic Affidavit.

15.        Dr. Mintas has communicated to multiple individuals including Mr. Simic, PlayUp's solicitor, Farshad Amirbeaggi, and the Ross Benson, Managing Director of PlayUp's major shareholder, Investor Link, that she will carry out the above mentioned threats immediately if her demands are not met by November 30, 2021. *See* Simic Affidavit; *See also* Ross Benson Affidavit ("<u>Benson Affidavit</u>") attached hereto as **Exhibit "3"**; *See also* Farshad Amirbeaggi Affidavit ("<u>Amirbeaggi Affidavit</u>") attached hereto as **Exhibit "4".**

16.        To date, PlayUp has not acceded to Dr. Mintas demands. *See* Simic Affidavit.

17.        In her capacity as Chief Executive Officer of PlayUp Inc. and her directorship in PlayUp, Dr. Mintas attends monthly board meetings with PlayUp during which time all the financial statements and affairs of PlayUp are discussed, and during which copies of the financial

3993 Howard Hughes Parkway, Suite 600  
Las Vegas, NV 89169  
LEWIS ROCA

records of PlayUp are made available to her. *See* Simic Affidavit.

18. Additionally, Dr. Mintas is usually provided with any information or records she requests either on the same day, or the next day by the management of PlayUp, and she otherwise has open access to the PlayUp Registry Direct file/information sharing platform where all records of PlayUp are held and available in real time *See* Simic Affidavit.

19. Based upon Dr. Mintas's conduct and threats, PlayUp reasonably believes she has sufficient access to the data, records, regulators, customers, affiliates and trading partners of PlayUp to carry out the threats she is making immediately in violation of the Confidentiality and Non-Disparagement provisions of her Agreement. *See* Simic Affidavit.

20. Dr. Mintas has also communicated an intent to work directly with FTX in violation of the Non-Competition provision in her Agreement. *See* Benson Affidavit.

21. As a result of the foregoing, PlayUp will sustain irreparable damages if Dr. Mintas is not enjoined.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

22. PlayUp incorporates the foregoing paragraphs here as if fully set forth.

23. Dr. Mintas entered into the Agreement with PlayUp which is a valid and enforceable contract.

24. PlayUp performed its obligations under the Agreement.

25. Dr. Mintas materially breached the Agreement by, including but not limited to, the following:

   a. Made contact with Mr. Sam Bankman-Fried, proprietor of FTX, and advised him that there is a conflict within management of PlayUp, and in so doing has caused the failure of the sale to FTX;

   b. Made threats to immediately approach gaming regulators and make statements, which are false, about PlayUp and or PlayUp Inc. with the hope that it will damage the reputation and standing of PlayUp and PlayUp Inc.;

   c. Made threats to immediately approach the gaming regulators with the hope that the licenses or application for licenses are terminated;

      d.      Made threats to immediately approach the various commercial, trading, and business partners or associates of PlayUp and PlayUp Inc. and destroy those relationships by making false publications about PlayUp and PlayUp Inc. and or Mr. Simic;

      e.      Made threats to immediately approach customers of PlayUp and PlayUp Inc. and damage their relationship with PlayUp and PlayUp Inc.; and

      f.      Made threats to take immediate injurious steps to PlayUp and PlayUp Inc. that would cause it to be placed into liquidation or bankruptcy.

26. Such conduct is a direct violation of the terms in the Agreement, including the Confidentiality, Non-Competition and Non-Disparagement provisions.

27. As a direct and proximate result of Dr. Mintas breach of contract, PlayUp will suffer damages, the exact amount to be determined at trial.

28. PlayUp has been forced to retain attorneys to prosecute this action and is entitled to recover the attorney fees incurred.

## SECOND CLAIM FOR RELIEF

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

29. PlayUp incorporates the foregoing paragraphs here as if fully set forth.

30. Through Dr. Mintas's contractual relationship with PlayUp as Chief Executive Officer, Dr. Mintas owes a duty to PlayUp to engage in good faith and fair dealing.

31. Dr. Mintas breached that duty by performing the Agreement in a manner that was unfaithful to the purpose of the Agreement and PlayUp's justified expectations under the Agreement were thus denied.

32. As a direct and proximate result of Dr. Mintas breach of the implied covenant of good faith and fair dealing, PlayUp will suffer damages, the exact amount to be determined at trial.

33. PlayUp is informed and believes and thereupon alleges that the conduct of Dr. Mintas was and is oppressive, malicious, or fraudulent and was carried out in bad faith and with conscious disregard for the rights and wellbeing of PlayUp, thereby warranting the assessment of exemplary and punitive damages against Dr. Mintas.

34. PlayUp has been forced to retain attorneys to prosecute this action and is entitled to recover the attorney fees incurred.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

35. PlayUp incorporates the foregoing paragraphs here as if fully set forth.

36. Through her executive and directorship position with PlayUp, Dr. Mintas owed fiduciary duties to PlayUp, including but not limited, preserving the confidentiality of PlayUp's trade secrets and other confidential information and restraining from any disparaging communications about the company, its subsidiaries or employees.

37. Dr. Mintas breached those duties by, including but not limited to the following:

   a. Made contact with Mr. Sam Bankman-Fried, proprietor of FTX, and advised him that there is a conflict within management of PlayUp, and in so doing has caused the failure of the sale to FTX;

   b. Made threats to immediately approach gaming regulators and make statements, which are false, about PlayUp and or PlayUp Inc. with the hope that it will damage the reputation and standing of PlayUp and PlayUp Inc.;

   c. Made threats to immediately approach the gaming regulators with the hope that the licenses or application for licenses are terminated;

   d. Made threats to immediately approach the various commercial, trading, and business partners or associates of PlayUp and PlayUp Inc. and destroy those relationships by making false publications about PlayUp and PlayUp Inc. and or Mr. Simic;

   e. Made threats to immediately approach customers of PlayUp and PlayUp Inc. and damage their relationship with PlayUp and PlayUp Inc.; and

   f. Made threats to take immediate injurious steps to PlayUp and PlayUp Inc. that would cause it to be placed into liquidation or bankruptcy.

38. As a direct and proximate result of Dr. Mintas wrongful and unlawful acts, PlayUp will suffer damages, the exact amount to be determined at trial

39. PlayUp is informed and believes and thereupon alleges that the conduct of Dr. Mintas was and is oppressive, malicious, or fraudulent and was carried out in bad faith and with conscious disregard for the rights and wellbeing of PlayUp, thereby warranting the assessment of exemplary and punitive damages against Dr. Mintas.

116137221.1

- 7 -

40. PlayUp has been forced to retain attorneys to prosecute this action and is entitled to recover the attorney fees incurred.

### FOURTH CLAIM FOR RELIEF

### (Violation of Nevada Trade Secrets (NRS Chapter 600A))

41. PlayUp incorporates the foregoing paragraphs here as if fully set forth.

42. PlayUp reasonably believes that Dr. Mintas immediately may steal, take, copy, use, or misappropriate PlayUp's confidential information that includes valuable trade secrets in violation of the Nevada Uniform Trade Secrets Act and for the purpose of damaging PlayUp for PlayUp's refusal to acquiesce to her demands.

43. Dr. Mintas's misappropriation of trade secrets is in further of her violation of the Agreement and the breach of her fiduciary duties.

44. As a direct and proximate result of Dr. Mintas acts, PlayUp will suffer damages, the exact amount to be determined at trial.

45. PlayUp is informed and believes and thereupon alleges that the conduct of Dr. Mintas was and is oppressive, malicious, or fraudulent and was carried out in bad faith and with conscious disregard for the rights and wellbeing of PlayUp, thereby warranting the assessment of exemplary and punitive damages against Dr. Mintas, including any punitive damages available under NRS 600A.050.

46. PlayUp has been forced to retain attorneys to prosecute this action and is entitled to recover the attorney fees incurred.

**WHEREFORE**, PlayUp prays for the following relief:

    a. Specific enforcement of the Restrictive Covenants in accordance with section 6(g) of the Agreement;

    b. A temporary restraining order and injunctive relief enjoining Dr. Mintas from engaging in the following:

        i. making any communications which criticize, ridicule or make any statement which disparages, or is derogatory of, PlayUp or any of its subsidiaries or any of their respective directors, managers, or officers;

   ii. directly or indirectly take commercial or proprietary advantage of, profit from, use or disclose to any Person PlayUp's Confidential Information as the terms are defined in the Agreement; and

   iii. for a period of six months from the date of the termination of her Agreement, Dr. Mintas shall not own, manage, finance, operate, control or otherwise engage or participate in any manner or fashion in an employment, business, or other activity competitive with PlayUp.

 c. Preliminary and permanent injunctions consistent with the terms of the temporary restraining order;

 d. For declaratory relief;

 e. For costs of suits;

 f. For reasonable attorney fees; and

 g. For such other and further relief as the Court deems just and proper.

DATED this 30th day of November, 2021.

        LEWIS ROCA ROTHGERBER CHRISTIE LLP


        By: */s/ Jennifer Hostetler*
         Jennifer Hostetler, Bar No. 11994
         JHostetler@lewisroca.com
        3993 Howard Hughes Parkway, Suite 600
        Las Vegas, NV  89169
        Tel.: 702.949.8200
        Fax: 702.949.8398

        *Attorneys for PlayUp, Inc.*