1

2

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PLAYUP, INC.,

     Plaintiff(s),

v.

DR. LAILA MINTAS,

     Defendant(s).

Case No. 2:21-cv-02129-GMN-NJK

**Order**

[Docket Nos. 83, 84, 115]

12      Pending before the Court is Defendant's motion to quash and motion for protective order

13 related to a subpoena to Sportradar US.  Docket Nos. 83, 84.  Plaintiff filed a response in

14 opposition.  Docket No. 109.  Defendant filed a reply.  Docket No. 111.[1,2]  The motions are

15 properly decided without a hearing.  *See* Local Rule 78-1.  For the reasons discussed more fully

16 below, the motions to quash and for protective order are **DENIED** in part and **DENIED** without

17 prejudice in part.

18 **I.**    **BACKGROUND**

19      PlayUp is an online sports betting platform.  First Amended Complaint (Docket No. 134)

20 at ¶ 21.  Defendant Dr. Laila Mintas was the Chief Executive Officer of PlayUp's American entity.

21

22
23
     [1] Plaintiff filed a motion for leave to supplement.  Docket No. 115.  Defendant filed a notice of non-opposition.  Docket No. 126.  The motion to supplement is **GRANTED**.

24
25
26
27
28
     [2] Replies are limited to 12 pages.  Local Rule 7-3(b).  Exhibits are excluded from that limit, but the pages in the motion and memorandum are included.  Local Rule 7-2(a).  Although its pagination begins on the second page, the reply violates the local rules because it is 13 pages long.  Docket No. 111.  Moreover, there should not have been a need for pushing the page limitations in this motion practice.  The Court is at a loss as to why Defendant's motion includes roughly two pages of argument, Docket No. 83 at 9-11, but the reply contains more than nine pages of argument, Docket No. 111 at 4-13.  Particularly as the party bearing the burden of persuasion, *see* Section II, Defendant should have included fulsome argument in support of her request for relief in the motion itself, *cf. Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996).  The Court expects strict compliance with the page limitations moving forward.

1    *See id.* at ¶ 27.  That employment ended on November 30, 2021.  *Id.* at ¶ 95.  The parties have

2    drastically different accounts as to how that employment ended.  Plaintiff brought suit alleging

3    contractual and tort claims against Defendant.  Defendant responded with her own contractual and

4    tort counterclaims.

5         The parties have repeatedly turned to the Court with respect to their discovery disputes.

6    *See* Docket No. 131 at 1 n.1.  The instant motion involves Defendant's attempt to quash Plaintiff's

7    subpoena for documents from her prior employer (Sportradar) regarding the circumstances of her

8    employment there.  Docket Nos. 83, 84.

9    **II.     STANDARDS**

10        "[B]road discretion is vested in the trial court to permit or deny discovery."  *Hallett v.*

11   *Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598

12   (1998).  Discovery is limited to any nonprivileged matter that is relevant to any party's claim or

13   defense and is proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1); *see also ATS Prods.,*

14   *Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 530 (N.D. Cal. 2015) (the scope of third-party

15   discovery is subject to the same limitations).  The movant seeking to quash a subpoena bears the

16   burden of showing why that discovery should not be permitted.  *Goodman v. United States*, 369

17   F.2d 166, 169 (9th Cir. 1966); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.

18   1975) (party seeking a protective order bears the burden of showing why discovery should be

19   denied).

20   **III.    ANALYSIS**

21        The Court will begin by parsing the particular documents being sought here.  The subpoena

22   requests broad categories of documents from Sportradar regarding or related to Defendant, Docket

23   No. 83-4 at 8, and the parties often refer to these documents as generally constituting Sportradar's

24   "personnel file" for Defendant.  Nonetheless, Defendant does at times highlight the request for

25   documents concerning her visa status, *see, e.g.*, Docket No. 111 at 4-5, and the Court begins by

26   addressing that aspect of the subpoena.

27

28

A.    Visa Documents

The subpoena at issue seeks documents concerning, referring, or relating to Defendant's visa status and/or visa application.  Docket No. 83-4 at 8.  Without citation to legal authority or meaningfully developed argument specific to these visa documents, Defendant argues that such documents are irrelevant and constitute a fishing expedition.  *See, e.g.*, Docket No. 83 at 9; Docket No. 111 at 4-5.  Without citation to legal authority or meaningfully developed argument specific to these visa documents, Plaintiff argues that the documents are relevant and discoverable because they may be used to attack Defendant's credibility.  Docket No. 109 at 9.[3]

Obviously, competing arguments detached from meaningful legal analysis is unhelpful. That is especially true here given that there appears to be a significant body of case law, including from the Ninth Circuit itself, that bears on whether a party may seek civil discovery on an opponent's immigration status.  *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004); *Guillen v. B.J.C.R. LLC*, ___ F.R.D. ____, 2022 WL 980236, at *5-8 (D. Nev. Mar. 31, 2022) (discussing *Rivera* and numerous other cases regarding discovery on immigration status).  The Court declines to address that issue in this case without proper briefing from the parties.

Accordingly, this aspect of the motions will be denied without prejudice.  Counsel must conduct appropriate legal research particular to this issue, engage in cooperative conferral efforts, and either agree to limit the subpoena at issue without further Court involvement or file well-developed motion practice on this issue.[4]

B.    Personnel File

The subpoena also seeks documents that are more typical of personnel records, such as discipline and reasons for separation, which will be referred to generally as Defendant's "personnel

---

[3] Rather than providing meaningful discussion based on legal authority, the motion practice often resorts to heated rhetoric lacking substance.  For example, the reply decries the "offensive" and "inflammatory" assertion that this discovery is sought to determine whether Defendant committed fraud in the US visa application process.  *See, e.g.*, Docket No. 111 at 4-5.  Regardless of whether Defendant and/or her counsel find the discovery to be improper, parties obtain relief from the Court solely upon a showing that the application of the law to the facts of the case warrant that relief.

[4] Any such motion practice must be complete and must meaningfully address all pertinent considerations, including the issues regarding standing.

1  file." Docket No. 83-4 at 8. Defendant seeks to prevent the discovery of her personnel file on two

2  grounds: irrelevance and confidentiality. *E.g.*, Docket No. 83 at 9-11. Neither argument is

3  persuasive.

4              1.       Relevance

5         Defendant argues that her personnel file is not relevant. *See id.*

6         As noted above, discovery must be relevant to a claim or defense. Fed. R. Civ. P. 26(b)(1);

7  *see also in re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563-64 (D. Ariz. 2016). The

8  concept of relevance in the discovery concept remains broad in nature. *V5 Techs. v. Switch, Ltd.*,

9  334 F.R.D. 306, 309 (D. Nev. 2019).

10        In this case, Defendant herself brought counterclaims for various intentional torts by which

11  she seeks to recover damages. In so doing, Defendant alleges that she had a stellar business

12  reputation predicated specifically on her prior work in the industry, *see, e.g.*, Second Amended

13  Counterclaims (Docket No. 133) at ¶ 23 ("Since 2006[,] Dr. Mintas has worked in the industry and

14  has built an excellent reputation"), and that Plaintiff besmirched her reputation through its conduct,

15  *see, e.g.*, *id.* at ¶ 154 (alleging conduct designed "to harm Dr. Mintas' reputation in the industry").

16  These are allegations central to Defendant's counterclaims. Defendant's personnel file is well

17  within the scope of relevant discovery so that Plaintiff can probe Defendant's allegations regarding

18  her business reputation.[5]

19              2.       Confidentiality

20        Defendant also argues that her personnel files "potentially contain[] sensitive information"

21  and that she has "an inherent privacy interest" in them. Docket No. 83 at 10.[6]

22

23

24        [5] The bulk of Defendant's discussion does not relate to the particular claims brought here
    in which Defendant has squarely placed her business reputation at issue. *See* Docket No. 111 at
25  5-11. Moreover, the short section in reply on these particular claims, *see id.* at 10-11, does not
    persuade the Court that the personnel file is not relevant for discovery purposes in this case.
26

        [6] The Court notes that a stipulated protective order has been issued in this case. Docket
27  No. 61. The briefing does not address whether the documents at issue could be subject to that
    stipulated protective order such that the use of the documents may limit unnecessary disclosure to
28  the public. The Court expresses no opinion herein on that issue.

"[T]here is no absolute privilege for confidential information." *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 619 (C.D. Cal. 2007). The Ninth Circuit has held that personnel files can be discoverable notwithstanding claims of privilege. *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975); *see also Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 605 (C.D. Cal. 1995) ("[B]y its very nature, litigation has a tendency to make public the sort of information that individuals otherwise would prefer to keep private").[7] A party's personnel files are subject to protection from discovery upon a showing of specific prejudice or harm in the event of disclosure. *Shakespear v. Wal-Mart Stores, Inc.*, 2012 WL 13055159, at *7 (D. Nev. Nov. 5, 2012); *see also U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (describing need for specific showing for protective orders). "[C]onclusory allegations of embarrassment, potential exposure to annoyance or harassment and unwarranted intrusions are insufficient" to disallow the discovery of personnel files. *Shakespear*, 2012 WL 13055159, at *7 (internal quotations omitted).

As discussed above, Defendant's counterclaims are predicated on her having had a stellar business reputation that Plaintiff besmirched, so Plaintiff has a significant need to obtain discovery on whether Defendant did enjoy a stellar reputation. Moreover, although Defendant makes accusations of a "fishing expedition" and overly aggressive litigation tactics designed to "harass" her, Docket No. 83 at 9, 10, she has provided nothing more than conclusory assertions of potential harm in Plaintiff obtaining the personnel files. Such generalized concerns are insufficient to show that Defendant's privacy interests outweigh Plaintiff's need for the information.[8]

---

[7] As Plaintiff notes in the opposition brief, even attorney-client privileged communications are discoverable when a litigant puts them at issue in the litigation. *See* Docket No. 109 at 12 (citing *Copper Sands Homeowners Ass'n, Inc. v. Copper Sands realty, LLC*, 2014 WL 12782269 (D. Nev. June 20, 2014)).

[8] In a few sentences, Defendant argues in her motion that the subpoena is an improper end run around the party's discovery process. Docket No. 83 at 11. No legal authority is cited. *Id.* Although Defendant attempts to add meat to the bones in reply, Docket No. 111 at 12-13, the Court is not persuaded by this argument. As a threshold matter, it does not appear that the universe of responsive documents in Sportradar's possession is necessarily the same as those within Defendant's possession. Moreover, other than with respect to the visa documents, the Court has addressed Defendant's objections that the discovery is not relevant or proper. There has been no circumvention of Defendant's objections because they were considered and rejected.

5

**IV.    CONCLUSION**

For the reasons discussed more fully above, the motions to quash and for protective order are **DENIED** in part and **DENIED** without prejudice in part.  Except for the visa documents discussed in Section III.A., Sportradar must comply with the subpoena by June 3, 2022.

IT IS SO ORDERED.

Dated: May 20, 2022

_____
Nancy J. Koppe
United States Magistrate Judge

6