**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PLAYUP, INC., <br><br> Plaintiff, <br> vs. <br><br> LAILA MINTAS, <br><br> Defendant. | Case No.: 2:21-cv-02129-GMN-NJK <br><br> **ORDER** |
| LAILA MINTAS, <br><br> Counter-Claimant, <br> vs. <br><br> PLAYUP INC., *et al.*, <br><br> Counter-Defendants. | |

Pending before the Court is Counter-Defendant PlayUp Ltd.'s ("PlayUp AUS's") Motion to Dismiss, (ECF No. 143). Defendant and Counter-Claimant Laila Mintas ("Mintas") filed a Response, (ECF No. 168), to which PlayUp AUS filed a Reply, (ECF No. 174).

Further pending before the Court is Counter-Defendant Daniel Simic's ("Simic's") Motion to Dismiss, (ECF No. 144). Mintas filed a Response, (ECF No. 166), to which Simic filed a Reply, (ECF No. 172).

Further pending before the Court is Mintas's Motion to Supplement, (ECF No. 196), which seeks to supplement her Response to Simic's Motion to Dismiss. Simic filed a Response, (ECF No. 204), to which Mintas filed a Reply, (ECF No. 206).

///

For the reasons discussed below, the Court **GRANTS** PlayUp US's Motion to Dismiss, **DENIES** Simic's Motion to Dismiss, and **GRANTS** Mintas's Motion to Supplement.

**I.      BACKGROUND**

This action arises from a dispute between a company and its former CEO. (*See generally* First Am. Compl. ("FAC"), ECF No. 134).  Defendant and Counter-Claimant Laila Mintas ("Mintas") was the CEO for PlayUp Inc. ("PlayUp US"), a Delaware corporation, from 2019 to 2021. (Second Am. Counterclaim ("SAC") ¶¶ 7, 29, 86, ECF No. 133).  Near the end of her two-year employment contract, Mintas started negotiating for a new employment contact.[1] (SAC ¶¶ 40, 52–61).

Around the same time, PlayUp US's Australian parent company, PlayUp Ltd. ("PlayUp AUS"), was discussing possible business deals with another company, FTX, including FTX's possible acquisition of PlayUp AUS (the "FTX deal"). (FAC ¶ 31).  For reasons bitterly disputed amongst the parties, the FTX deal fell through. (*See* FAC ¶ 75); (SAC ¶ 99).

On November 30, 2021, PlayUp US filed this suit against Mintas, alleging tort and contract claims relating to her employment with PlayUp US. (*See* Compl., ECF No. 1).[2]  On December 1, 2021, PlayUp AUS filed a related claim in the Federal Court of Australia against Mintas alleging that she disparaged PlayUp AUS, resulting in FTX's withdrawal of its acquisition offer. (Australia Court Compl., Ex. A to PlayUp AUS's MTD, ECF No. 143-3).  In response to the instant lawsuit, Mintas filed counterclaims against PlayUp US, as well as PlayUp AUS and its CEO Daniel Simic, who were not initially parties to this case. (*See generally* SAC).  PlayUp AUS and Simic (collectively, the "Australian Counter-Defendants")

///

---

[1] Mintas's initial two-year employment contract was later superseded by a new contract governing the remainder of her two-year term. (*See* SAC ¶ 40).
[2] The Court later granted PlayUp US leave to amend its Complaint. The operative complaint at this stage is located at ECF No. 134.

1  now move to dismiss the counterclaims against them for lack of personal jurisdiction.[3] (PlayUp

2  AUS's MTD, ECF No. 143); (Simic's MTD, ECF No. 144).  PlayUp AUS additionally argues

3  that the claims against it should be dismissed under principles of *forum non conveniens* and

4  international comity. (PlayUp AUS's MTD 15:27–28).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2).  When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, a plaintiff need only establish a prima facie showing of jurisdictional facts to withstand a motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  District courts take the uncontroverted allegations in a complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* NRS § 14.065; *Galatz v. Eighth Judicial Dist. Court*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d

---

[3] Mintas and PlayUp US have lobbed numerous motions at each other.  Because the instant Motions relate to the Australian Counter-Defendants only, the procedural history between Mintas and PlayUp US is unnecessary here.

1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise[] out of" or "relate[] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id.*

### III.   DISCUSSION

PlayUp AUS and Simic both assert that the Court does not have personal jurisdiction over them. (PlayUp AUS's MTD 3:15); (Simic's MTD 8:18). Mintas responds that the Court has specific jurisdiction over both Australian Counter-Defendants.[4] (Resp. PlayUp AUS's MTD 8:7, ECF No. 166); (Resp. Simic's MTD 12:14, ECF No. 168). Additionally, Mintas argues that PlayUp AUS waived any objections to the exercise of personal jurisdiction by a court in Nevada by virtue of the forum selection clauses in Mintas's employment agreements with PlayUp US. (Resp. PlayUp AUS's MTD 8:17–18). The Court begins by addressing whether PlayUp AUS waived any objections to the exercise of personal jurisdiction in this state before determining whether the Court has specific personal jurisdiction over the Australian Counter-Defendants.

**A. PlayUp AUS Did Not Waive Objections to Personal Jurisdiction**

Mintas argues that the Court may exercise specific jurisdiction over PlayUp AUS because PlayUp AUS has already consented to personal jurisdiction, and waived any objections to such personal jurisdiction that might otherwise exist, by virtue of the forum selection clauses in Mintas's employment agreements. (*Id.* 8:15–24). Mintas maintains this argument even though PlayUp AUS was not a signatory to the agreements. (*Id.*).

---

[4] Although Mintas suggests that the "Court arguably could assert general personal jurisdiction over Simic," Mintas does not refute the Australian Counter-Defendants' arguments that the Court lacks general jurisdiction over them. (*See* Resp. Simic's MTD at 12 n.7); (*see generally* Resp. PlayUp AUS's MTD). Accordingly, the Court will only assess whether the Australian Counter-Defendants are subject to specific jurisdiction.

"A defendant may consent to personal jurisdiction through a forum-selection clause." *Andrade v. Dillman*, Case No.: 2:20-cv-01021-JAD-NJK, 2021 WL 1033209 at *2 (D. Nev. Mar. 17, 2021) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)). This rule extends from the general notion that personal jurisdiction is a waivable right. *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-00669-YGR, 2017 WL 201703, at *4 (N.D. Cal. Jan. 18, 2017).

Thus, "[a] defendant may waive objections to personal jurisdiction through a forum selection clause 'provided that the defendant agrees to be so bound.'" *My Daily Choice, Inc. v. Hunter*, No. 2:20-cv-00809-APG-DJA, 2020 WL 4370548, at *2 (D. Nev. July 30, 2020) (quoting *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007)). But a non-signatory may also be bound by a forum selection clause, thereby waiving objections to personal jurisdiction in the forum. *See, e.g.*, *Prod. & Ventures Int'l*, 2017 WL 201703, at *7–8. "In determining whether a non-signatory can enforce or be subject to a forum selection clause, the court looks to general contract and agency principles." *Nav N Go Kft. v. Mio Tech. USA, Ltd.*, No. 2:08-cv-01384-LRH-LRL, 2009 WL 10693414, at *7–8 (D. Nev. June 11, 2009).

A non-signatory may be bound by a forum-selection clause when the non-signatory knowingly exploits and directly benefits from the agreement or when the non-signatory is closely related to the contractual relationship. *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 947 (S.D. Cal. 2019); *see also Prod. & Ventures Int'l*, 2017 WL 201703, at *7 (finding non-signatories bound by forum-selection clause when one non-signatory personally negotiated agreement, signed on behalf of signatory, and owned significant interests in signatory and other non-signatory had active role in managing signatory). A non-signatory's position as an affiliate of a signatory is not sufficient to enforce forum-selection clause against the non-signatory. *Nav N Go Kft.*, 2009 WL 10693414, at *7–8.

Mintas argues that PlayUp AUS consented to personal jurisdiction in Nevada because it is bound by the forum-selection clause in the employment agreements between PlayUp US and Mintas. Specifically, Mintas asserts that PlayUp AUS "has clearly received and exploited the benefits of Mintas' work under her employment agreements" because her employment with PlayUp US included her role as a member of the board of PlayUp AUS. (Resp. PlayUp AUS's MTD 13:11–14). PlayUp AUS replies that it has not received and exploited the benefits of Mintas's employment because Mintas worked for PlayUp US, not PlayUp AUS. (Reply PlayUp AUS's MTD 2:19–24, ECF No. 174). If any benefit to PlayUp AUS existed, PlayUp AUS contends, it flowed only indirectly from Mintas's employment agreements. (*Id.* 2:21–28).

The Court is not persuaded that PlayUp AUS consented to personal jurisdiction in Nevada by virtue of the forum selection clause in Mintas's employment agreements with PlayUp US. Mintas offers conclusory statements devoid of any citations to the record to explain why PlayUp AUS should be bound by agreements it did not sign. (*See* Resp. PlayUp AUS's MTD 3:11–16). Without any specific evidence demonstrating that PlayUp AUS agreed to be bound by the forum selection clause, the Court cannot find that PlayUp AUS waived its objection to personal jurisdiction. Thus, the Court must determine whether it can assert personal jurisdiction over PlayUp AUS independent of any forum selection clause.

**B. Specific Jurisdiction**

Specific personal jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Personal jurisdiction must arise out of "contacts that the 'defendant *himself*' creates with the forum State" and cannot be established from the conduct of a plaintiff or third parties within the forum. *Waldon v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475). In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Courts utilize a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenneger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Menken*, 503 F.3d at 1057. If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* However, "[i]f the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* The Court first discusses whether it has specific jurisdiction over Counter-Defendant PlayUp AUS.

**1. PlayUp AUS**

The Court finds that Mintas fails to satisfy the purposeful availment prong of the test for specific jurisdiction over PlayUp AUS. Mintas alleges that PlayUp AUS has minimum contacts with Nevada because PlayUp AUS's agents traveled to Nevada to negotiate and execute Mintas's employment agreements with PlayUp US and PlayUp AUS received the benefits flowing from these agreements. (Resp. PlayUp AUS's MTD 14:7–15).

"The purposeful availment prong of the minimum contacts test for personal jurisdiction requires a qualitative evaluation of the defendant's contact with the forum state, in order to determine whether [the defendant's] conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there." *Harris Rutsky & Co.*

*Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003). Standing alone, the mere act of contracting with a party who is a resident of a forum state does not establish sufficient contact to warrant a court's exercise of jurisdiction. *Burger King*, 471 U.S. at 478. The court's exercise of jurisdiction must be linked to the defendant's relationship with the forum state itself. *Walden*, 134 S. Ct. at 1123. Although a defendant's connection with the forum state will often be related to his connection with residents thereof, relationships with residents of the forum state, without more, is not sufficient. *Id.*

Here, the Court cannot find that PlayUp AUS purposefully established minimum contacts in Nevada. The only alleged connection PlayUp AUS has with Nevada stems from the employment agreements between PlayUp US and Mintas, to which PlayUp AUS was not a signatory. Entering into a contract itself is insufficient to establish minimum contacts. *Burger King*, 471 U.S. at 478. The existence of a contract to which a defendant is not bound is even more tenuous—that is, if it can be construed as a contact with the forum at all. Because Mintas offers no other evidence that PlayUp AUS purposefully availed itself of the privilege of conducting activities in Nevada, the Court finds that it lacks personal jurisdiction over PlayUp AUS.[5] The Court therefore GRANTS PlayUP AUS's Motion to Dismiss.

**2. Daniel Simic**

   *a. Motion to Supplement*

Before addressing whether the Court has personal jurisdiction over Simic, the Court must decide whether to consider the supplemental evidence offered in Mintas's Motion to Supplement, (ECF No. 196). The Court may grant a motion to supplement for good cause. D. Nev. Local R. 7-2(g). Mintas seeks to submit an excerpt of a deposition transcript in which

---

[5] PlayUp AUS's Motion asserted two additional grounds for dismissal based on the doctrine of *forum non conveniens* and principles of international comity. (PlayUp AUS's MTD ii:1–3). Because the Court GRANTS PlayUp AUS's Motion to Dismiss for lack of personal jurisdiction, the Court does not reach these alternative grounds for dismissal.

a third-party witness, Christopher Cheung, testified to being present at a dinner in Las Vegas during which Simic allegedly defamed Mintas. (Mot. Supp. 1:26–2:11, ECF No. 196). Simic opposes the Motion to Supplement, arguing that Mintas failed to show good cause to supplement her Response to his Motion to Dismiss, that Mintas's Motion to Supplement improperly seeks to supplement her SAC, and that the proposed supplement makes no substantive difference.[6] (Resp. Mot. Supp. 4:4–11:3, ECF No. 204).

The Court first notes that Simic cites to case law concerning motions to supplement briefings in support of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* Resp. Mot. Supp. 8:1–9:11). Simic, however, brought his Motion to Dismiss under Rule 12(b)(2). Unlike when deciding motions to dismiss for failure to state a claim under Rule 12(b)(6), "the [C]ourt can consider extrinsic evidence when determining whether or not the [C]ourt has personal jurisdiction over defendants." *Righthaven, LLC v. Virginia Citizens Def. League, Inc.*, No. 2:10-cv-01683-GMN, 2011 WL 2550627, at *6 (D. Nev. June 23, 2011). Thus, Mintas's Motion to Supplement is not an improper attempt to supplement her SAC.

Second, the Court disagrees with Simic that Mintas's proposed supplement makes no substantive difference. "Generally, '[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].'" *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)). A defamatory statement made in Nevada is one such intentional tort that may give rise to personal jurisdiction in this state. *Id.* Thus, the Court turns to whether good cause exists to permit Mintas's supplement.

---

[6] Simic further argues that the Court should deny the Motion to Supplement because the Motion does not contain the memorandum of points and authorities required by Local Rule 7-2. (Resp. Mot. Supp. at 4 n.7). The Court declines to deny the Motion on this ground. Any deficiencies in Mintas's Motion were cured by her Reply. (*See* Reply Mot. Supp., ECF No. 206).

1      Courts generally find that good cause exists if the party seeking good cause was reasonably diligent. *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 849 (D. Nev. 2021). Mintas argues that she was reasonably diligent in filing her Motion to Supplement because she filed the Motion four days after the deposition she seeks to submit was taken. (Reply Mot. Supp. 5:14–17, ECF No. 206). Simic argues that Mintas's Motion is untimely because Mintas knew or should have known about the information revealed in the deposition before filing her SAC, or at the very least before filing her Response to Simic's Motion to Dismiss. (Resp. Mot. Supp. 6:4–9).

     Simic is correct that Mintas knew about the substance of the deposition she now seeks to submit before filing her SAC: the SAC alleges that "Simic was in Nevada in November/December 2021 and upon information and belief further defamed Dr. Mintas to others while here." (SAC ¶ 13). Mintas now seeks to admit evidence supporting this allegation uncovered in discovery. The Court finds good cause to admit the evidence because—Simic's accusations of gamesmanship notwithstanding—Mintas could not have submitted this deposition evidence before the deposition was taken. Accordingly, the Court GRANTS Mintas's Motion to Supplement.

### a. Motion to Dismiss

     Finally, the Court considers whether it has personal jurisdiction over Simic. As stated above, a plaintiff establishes the first two prongs of the minimum contacts test when he or she alleges that a defendant committed an intentional tort within the forum state. *Freestream Aircraft,* 905 F.3d at 603. Here, Mintas alleges—with evidence—that Simic defamed her while he was in Las Vegas, Nevada. (SAC ¶ 13); (Resp. Simic's MTD 14:3–5); (*see generally* Reply

///
///
///

Mot. Supp.). Accordingly, the Court finds that Mintas has satisfied the first two prongs of the test.[7]

The burden now "shifts to [Simic] to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 800 (quoting *Burger King*, 471 U.S. at 477–78). Courts in the Ninth Circuit generally consider the following seven factors in assessing the reasonableness of the exercise of jurisdiction:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 745 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015).

Simic argues that each of the factors militates in favor of finding that it would be unreasonable for the Court to exert personal jurisdiction over him. (Simic's MTD 18:18–20). Specifically, Simic argues that he has not purposefully interjected himself into Nevada's affairs because he does not reside here, has no real or personal property here, and does no business here. (*Id.* 18:22–27). Indeed, Simic claims that he has only been in Nevada for a total of six days in three years.[8] (*Id.* 18:25–26).

Simic further argues that having to defend himself in Nevada would be overly burdensome and conflict with the sovereignty of his home of Australia. (*Id.* 18:2–15). Moreover, he argues that Nevada does not have a compelling interest in litigating the dispute

---

[7] Mintas offers several other "contacts" between Simic and the forum state to argue that Simic has purposefully availed himself of the privilege of conducting activities in Nevada. (*See* Resp. Simic's MTD 13:19–14:2). Because the Court finds the first two prongs are met based on Simic's alleged tortious conduct in Nevada, the Court does not address these other alleged contacts.

[8] Simic further claims that he did not conduct any activities in or directed at Mintas in the State. (Simic's MTD 18:27–19:1).

1  because Mintas now lives in the Bahamas and none of the corporate parties are authorized to do
2  business in Nevada. (*Id.* 18:16–20). Because no party lives in Nevada, Simic argues that the
3  forum of Nevada is not important to Mintas's interest in convenient and effective relief. (*Id.*
4  19:25–26). Lastly, Simic argues that the alternative forum of Australia, where Mintas is
5  already a party to a related lawsuit, provides the most efficient judicial resolution of the
6  controversy. (*Id.* 19:21–20:10).

7  Mintas concedes that the third factor, the extent of possible conflict with the sovereignty
8  of Simic's country of Australia, weighs in Simic's favor. (Resp. Simic's MTD 18:1–5). But
9  Mintas argues that the remaining six factors suggest that the assertion of jurisdiction over Simic
10 is reasonable. (*Id.* 17:21–18:22). Specifically, Mintas contends that Nevada has an important
11 interest in adjudicating the dispute because most of the witnesses to Simic's allegedly
12 defamatory comments were in Nevada and are Nevada residents. For this same reason,
13 litigation in Nevada would provide the most efficient judicial resolution of the controversy. (*Id.*
14 18:10–12). Moreover, Mintas's employment agreement, the basis of several of Mintas's
15 counterclaims, provides that the District of Nevada will have jurisdiction over any disputes
16 concerning the agreement. (*Id.* 18:19–22).

17 On balance, the Court finds that exercising personal jurisdiction over Simic is
18 reasonable. Although asserting jurisdiction over Simic could conflict with Australia's
19 sovereignty, this factor is not given controlling weight. *See Ballard*, 65 F.3d at 1501.
20 Additionally, despite the burden of litigating a case in Nevada from Australia, Simic appears
21 able to travel to Nevada when needed and is represented by counsel already involved in this
22 suit.

23 The remaining factors weigh in Mintas's favor. Simic has interjected himself into
24 Nevada's affairs by allegedly committing an intentional tort in this state. Even if none of the
25 parties currently reside in Nevada, many witnesses likely do. The Court finds that adjudicating

Mintas's counterclaims in this suit here in Nevada for conduct that allegedly occurred in Nevada is more efficient than adjudicating the counterclaims in an Australian court or elsewhere. Moreover, Nevada has an interest in adjudicating disputes over conduct that allegedly occurred within its borders, and Mintas has an interest in having her Nevada state law claims adjudicated in Nevada. The Court is not persuaded that the existence of a pending case between Mintas and PlayUp AUS in an Australian court makes it unreasonable to exercise personal jurisdiction over Simic here in Nevada. Because the Court finds that the assertion of jurisdiction over Simic does not offend traditional notions of fair play and substantial justice, the Court DENIES Simic's Motion to Dismiss.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that PlayUp AUS's Motion to Dismiss, (ECF No. 143), is **GRANTED**.

**IT IS FURTHER ORDERED** that Simic's Motion to Dismiss, (ECF No. 144), is **DENIED**.

**IT IS FURTHER ORDERED** that Mintas's Motion to Supplement, (ECF No. 196), is **GRANTED**.

**DATED** this __13__ day of February, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT