# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| PLAYUP, INC., ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:21-cv-02129-GMN-NJK |
| vs. ) | |
| ) | **ORDER** |
| LAILA MINTAS, ) | |
| ) | |
| Defendant. ) | |
| LAILA MINTAS ) | |
| ) | |
| Counter-Claimant, ) | |
| vs. ) | |
| ) | |
| PLAYUP INC., *et al.*, ) | |
| ) | |
| Counter-Defendants. ) | |

Pending before the Court is the Motion to Dismiss and/or Strike, (ECF Nos. 147, 148),[1] filed by Plaintiff and Counter-Defendant PlayUp Inc. ("PlayUp US"). Defendant and Counter-Claimant Laila Mintas ("Mintas") filed a Response, (ECF No. 167), to which PlayUp US filed a Reply, (ECF No. 173).

For the reasons discussed below, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss and/or Strike.[2]

///

---

[1] ECF Nos. 147 and 148 are identical. The Court cites to only ECF No. 147 throughout the rest of this Order, but the Order applies to ECF Nos. 147 and 148 equally.

[2] PlayUp US and Mintas each filed Motions to Exceed Page Limit, (ECF Nos. 146, 165). The parties do not object to each other's Motions. (*See* Mintas's Mot. Exceed Page Limit 2:24–26, ECF No. 165). For good cause appearing, the Court GRANTS the Motions to Exceed Page Limits.

# I. BACKGROUND

This action arises from a dispute between a company and its former CEO. (*See generally* First Am. Compl. ("FAC"), ECF No. 134). Defendant and Counter-Claimant Dr. Laila Mintas ("Mintas") served as the CEO for PlayUp Inc. ("PlayUp US"), a Delaware corporation, from 2019 to 2021. (Second Am. Counterclaim ("SACC") ¶¶ 7, 29, 86, ECF No. 133). Mintas's Second Amended Counterclaim (the "SACC") alleges that she never received any monetary compensation during her first year of employment with PlayUp US. (SACC ¶ 33). During her second year of employment, Mintas accepted a salary of $500,000, which was approximately half of the market value of her work. (*Id.* ¶ 38). When Mintas's two-year employment contract[3] neared its end, Mintas and PlayUp Inc. began negotiating a new contract. (*Id.* ¶ 52). Mintas requested a salary increase from $500,000 to $1 million. (*Id.* ¶ 53). During the process of finalizing the agreement, Daniel Simic, the CEO of PlayUp US's Australian parent company, PlayUp Ltd. ("PlayUp AUS"), reassured Mintas that the contract would be completed. (*Id.* ¶ 61). In the end, however, Mintas's contract was not renewed. (*Id.*).

Around the same time, PlayUp AUS was discussing possible business deals with another company, FTX, including FTX's possible acquisition of PlayUp AUS (the "FTX deal"). (FAC ¶ 31). Simic sent Mintas a proposal he wanted to present to FTX that included acquiring another, unrelated company. (*Id.* ¶ 63). Mintas expressed concerns that Simic's and other board members of PlayUp AUS's positions as board members of both PlayUp AUS and this other company created a conflict of interest. (*Id.* ¶ 65). Mintas alleges that PlayUp US and PlayUp AUS then froze Mintas out of the FTX negotiations. (*Id.* ¶ 76). FTX ultimately backed out of the deal because of conflicts between PlayUp AUS leadership and other business activities. (*Id.* ¶ 93). FTX expressed concern regarding the mistrust and lack of communication

---

[3] Mintas's initial employment agreement was effective December 1, 2019, but this agreement was later superseded by a new employment agreement effective September 30, 2020, which allowed her to receive an equity interest in PlayUp AUS earlier. (SACC ¶ 32).

between PlayUp AUS and PlayUp US, stating that the "current US team [which consisted solely of Mintas] has been incredibly important." (*Id.*). Mintas tried to save the deal with FTX, but the board of PlayUp AUS continued to impede her efforts. (*Id.* ¶¶ 100–08). PlayUp AUS blamed Mintas for the demise of the FTX deal; Mintas alleges that Simic caused the deal to fall through. (*See* FAC ¶ 75); (SACC ¶ 99).

After FTX pulled out of the deal, PlayUp US shut off Mintas's access to her email account and falsely told people attempting to contact her that she was on vacation. (*Id.* ¶ 112). Mintas did not tell people in the industry that she was no longer with PlayUp US because she did not want to damage its reputation. (*Id.* ¶ 122). Despite her efforts to help PlayUp, the media has falsely reported that Mintas sabotaged the FTX deal because she was unhappy over her own compensation. (*Id.* ¶ 131). Mintas also alleges that PlayUp US and Simic have disparaged Mintas to third parties. (*Id.* ¶¶ 153–61).

On November 30, 2021, PlayUp US filed this suit against Mintas, alleging tort and contract claims relating to her employment with PlayUp US. (*See* Compl., ECF No. 1). PlayUp US immediately filed an Ex Parte Motion for Temporary Restraining Order ("TRO"), and shortly thereafter, filed an Emergency Motion for Preliminary Injunction. (*See* Mot. TRO, ECF No. 2); (Emergency Mot., ECF No. 4). The Court initially granted in part and denied in part the TRO without the benefit of any briefing or argument from Plaintiff. (*See* TRO, ECF No. 11). Following briefing and argument, however, the Court denied PlayUp US's Motion for Preliminary Injunction. (*See* Trans. 61:3–10, ECF No. 33).

Mintas then filed counterclaims against PlayUp US, as well as PlayUp AUS's CEO Daniel Simic.[4] (*See generally* Answer, ECF No. 34); (*see also* First Am. Counterclaim, ECF No. 52). In addition to claims arising from the facts surrounding Mintas's employment with

---

[4] Plaintiff later amended her counterclaim to add PlayUp AUS as a counter-defendant. (*See* First Am. Counterclaim, ECF No. 52). All counterclaims against PlayUp AUS have been dismissed for lack of personal jurisdiction. (*See* Order, ECF No. 301).

PlayUp US and events leading up to and following the demise of the FTX deal, Mintas alleges that PlayUp US has engaged in fraud upon the Court during this litigation, which was brought to use Mintas as a scapegoat for the failed FTX deal. (*Id.* ¶¶ 140–52).  PlayUp US now moves to dismiss all counterclaims against it except Mintas's counterclaim for breach of contract.[5]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  But the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir. 2008).  Rule 8(a)(2) requires that a plaintiff's

///

///

---

[5] Simic has not joined this Motion.  Accordingly, this Order has no effect on Mintas's claims against Simic.

complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).[6]

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged, *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), so that the complaint may not simply "lump multiple defendants together." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). In other words, the complaint "must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)) (internal quotations omitted). Rule 9(b)'s particularity requirement ensures that the defendants are on "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment.[7] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

---

[6] PlayUp US argues that the SACC is "deficient and subject to dismissal because it is presented in shotgun fashion." (Mot. Dismiss 4:15–18). The Court declines to dismiss any aspect of the SACC on this ground.

[7] PlayUp US argues that the Court should dismiss all deficient claims with prejudice because this is now Mintas's second attempt at pleading claims to survive a motion to dismiss, and Mintas had the benefit of reviewing PlayUp US's prior motion to dismiss before filing the SACC. (Mot. Dismiss 4:5–8). But Mintas has not had the benefit of reviewing the Court's reasoning for dismissing her claims. The Court therefore denies PlayUp US's request to dismiss all insufficient claims with prejudice.

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

PlayUp US now moves to dismiss and/or strike the following thirteen of the fourteen counterclaims against it: (1) Abuse of Process; (2) Defamation Per Se; (3) False Light; (4) Intentional Infliction of Emotional Distress; (5) Promissory Estoppel; (6) Fraud; (7) Declaratory Judgment; (8) Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing; (9) Unjust Enrichment; (10) Violation of 29 U.S.C. §§ 206, 207; (11) Violation of NRS §§ 608.016, 608.140; (12) Violation of Nev. Const. Art. 15, § 16 and NRS 608.250; (13) Violation of NRS §§ 608.018, 608.140.[8] Additionally, PlayUp US seeks to dismiss and/or strike Mintas's prayer for punitive damages. The Court will address each claim in turn.

#### A. Abuse of Process

A claim for abuse of process is a compulsory counterclaim to an underlying substantive action. *McCart-Pollak v. On Demand Direct Response LLC*, No. 2:20-cv-01624-GMN-VCF, 2022 WL 6200115, at *4 (D. Nev. Oct. 6, 2022). To state a claim for abuse of process, the claimant must allege two elements: (l) an ulterior purpose by the opposing party other than resolving a legal dispute, and (2) a willful act in the use of the legal process that is "not proper in the regular conduct of the proceeding." *Kovacs v. Acosta*, 787 P.2d 368, 369 (Nev. 1990). PlayUp US argues that Mintas fails to allege both an ulterior motive and a subsequent improper willful act. (Mot. Dismiss 5:1–7:25).

///

///

---

[8] The instant Motion does not challenge Plaintiff's claim for breach of contract. (*See generally* Mot. Dismiss, ECF No. 147).

### 1. Ulterior Purpose

An ulterior purpose is "any improper motive underlying the issuance of legal process." *Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993). Mintas's SACC alleges that "[PlayUp US] commenced this lawsuit and sought an ex parte temporary restraining order against Dr. Mintas not for the purpose of resolving a legitimate legal dispute but to use Dr. Mintas as the public scapegoat for the failed FTX deal in front of their shareholders." (SACC ¶ 165). This allegation satisfies the first element of the abuse of process claim. *See Abbott v. United Venture Cap., Inc.*, 718 F. Supp. 828, 835 (D. Nev. 1989) (finding that allegations suggesting defendants sued plaintiff "in order to gain some favorable publicity and in the hope of coercing a settlement" satisfied first element of abuse of process claim).

### 2. Willful Act

An ulterior purpose is not alone sufficient; the claimant must allege facts plausibly indicating how the defendant willfully misused legal process to further the improper purpose. *See Land Baron Invs. Inc. v. Bonnie Springs Family Ltd.*, 356 P.3d 511, 519 (Nev. 2015). The willful, improper act must be "so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Momot v. Mastro*, No. 2:09-cv-00975-RLH, 2010 WL 2696635, at *4 (D. Nev. July 6, 2010) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 882 (Ariz. App. 1982)).

Here, the SACC alleges that PlayUp US "engaged in numerous willful acts in the use of this litigation not proper in the regular course of the proceedings." (SACC ¶ 174). Specifically, the SACC alleges that PlayUp US filed affidavits that are "demonstrably false based on the documentary evidence," failed to provide the Court with certain emails regarding the FTX deal, wrongfully sought a temporary restraining order, wrongfully sought a preliminary injunction, and wrongfully appealed the denial of the preliminary injunction. (*Id.*).

///

Filing motions for temporary restraining orders and preliminary injunctions, as well as appealing unfavorable orders, are not "willful acts" demonstrating an abuse of process. *See Momot*, 2010 WL 2696635, at *5 ("[F]iling suit for an improper motive does not constitute an improper act lacking a legitimate function as a litigation procedure.") (citation omitted) (cleaned up). Additionally, allegations of discovery violations alone do not constitute an abuse of process. *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 907 (E.D. Cal. 2006). Moreover, Mintas's Response to the instant Motion fails to articulate how her allegations in the SACC satisfy the second element of her abuse of process claim. (*See* Resp. 8:25–11:18). Instead, Mintas restates the allegations in the SACC and posits, without explanation or elaboration, that she "has alleged multiple specific allegations of ulterior purposes and willful acts to support [PlayUp US's ulterior] purpose." (*Id.*). The Court finds that Mintas's allegations fail to satisfy the second element of the abuse of process claim. Accordingly, the Court DISMISSES Mintas's abuse of process counterclaim against PlayUp US without prejudice.

### B. Defamation *Per Se*

To succeed on a defamation claim in Nevada, a plaintiff must prove four elements: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)). If the statement "imputes a person's lack of fitness for trade, business, or profession, or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (internal quotation marks omitted).

A statement may be defamatory only if it contains a factual assertion that can be proven false. *See Flowers v. Carville*, 112 F.Supp.2d 1202, 1210 (D. Nev. 2000). Whether a statement

is capable of a defamatory construction is a question of law. *Branda v. Sanford*, 637 P.2d 1223, 1225–26 (Nev. 1981). "In reviewing an allegedly defamatory statement, the words must be viewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning." *Lubin v. Kunin*, 17 P.3d 422, 425–26 (Nev. 2001) (internal quotations omitted). Generally, "only assertions of fact, not opinion, can be defamatory. However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false." *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001) (citing *K–Mart Corporation v. Washington*, 866 P.2d 274, 281 (Nev.1993)). Further, "statements of belief are defamatory if they imply the existence of defamatory facts that are not disclosed to the listener . . . for example, the statement 'I think he must be an alcoholic' is actionable because a jury might find that it implied that the speaker knew undisclosed facts justifying his opinion." Restatement (Second) Torts, § 556; *see also Gordon v. Dalrymple*, No. 3:07-cv-00085-LRH-RAM, 2008 WL 2782914, *4 (D. Nev. July 8, 2008) ("Any statement which presupposes defamatory facts unknown to the interpreter is defamatory.").

PlayUp US argues that the SACC "fail[s] to allege any specific statements made about Mintas, and fails to address how any of them are false." (Mot. Dismiss 9:2–4). But the SACC alleges that PlayUp US made statements falsely "accusing Dr. Mintas of blowing the deal with FTX, extorting other people, stealing confidential documents from [PlayUp US], breaking corporate laws, [and] having been 'stood down from [one of her former employers].'" (SACC ¶ 189). Although the SACC lacks the exact, quoted statements underlying the defamation per se claim, the Court finds that Mintas has adequately alleged facts that, accepted as true, plausibly suggest that PlayUp US made false and defamatory statements about her. The statements are capable of being proven false: Mintas either did or did not extort people, steal confidential documents, break the law, blow the FTX deal, etc. Indeed, the truth or falsity of

these statements, especially regarding whether Mintas is responsible for "blowing" the FTX deal, is at the core of this case. Although PlayUp US alleges facts suggesting these statements are true, Mintas alleges facts plausibly showing that these statements are false. (*Compare* FAC *with* SACC). Accordingly, Mintas has adequately plead the first element of defamation per se.

The SACC further alleges that PlayUp US made these statements to FTX and others in their industry. (*Id.*). Additionally, Mintas contends that PlayUp US "knew what they were saying was false and had evidence they withheld from the Court disproving the statements." (*Id.* ¶ 190). Thus, Mintas alleges that PlayUp US "at a minimum acted negligently in publishing these false and defamatory statements." (*Id.* ¶ 191). Lastly, Mintas alleges damages resulting from the allegedly defamatory statements. (*Id.* ¶¶ 193–94). Accordingly, the Court DENIES PlayUp US's Motion as to Mintas's defamation per se counterclaim.

### C. False Light

To succeed in a false light claim, a plaintiff must show that the defendant's conduct: (1) "gives publicity to a matter concerning another that places the other before the public in a false light," (2) "the false light in which the [plaintiff] was placed would be highly offensive to a reasonable person," and (3) "the [defendant] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter in which the [plaintiff] would be placed." *Fulkerson v. Public Utilities Commission of Nevada*, No. 3:20-cv-00007, 2020 WL 5644879, at *5 (D. Nev. Sept. 22, 2020) (citation omitted). "False light, like defamation, requires at least an implicit false statement of objective fact." *Flowers*, 310 F.3d at 1132. But "[t]he false light privacy action differs from a defamation action in that the injury in privacy actions is mental distress from having been exposed to public views, while the injury in defamation actions is damage to reputation." *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1273 n.4 (Nev. 1995), *overruled in part on other grounds*, *City of Las Vegas Downtown*

///

*Redevelopment Agency v. Hecht*, 940 P.2d 127 (Nev. 1997) (quoting *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir.1983)).

Here, Mintas appears to base her false light claim on the publicity that this case has generated based on PlayUp US's failure to file this lawsuit without placing the documents under seal. (SACC ¶ 199). To the extent Mintas bases her claim on publicity resulting from this case, the claim must fail. *See Randazza v. Cox*, No. 2:12-cv-2040-JAD, 2014 WL 2123228, at *3 (D. Nev. May 21, 2014) ("Nevada recognizes 'the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged.'") (quoting *Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002)).

Mintas also alleges that PlayUp US and Simic "made false and inflammatory accusations against Dr. Mintas, calling her irrational, corrupt, incapable and incompetent." (SACC ¶ 200). These accusations, however, are no more than opinions; without an allegation of a false statement of objective fact, Mintas's false light claim cannot continue on this basis either. *See Flowers*, 310 F.3d at 1132. The SACC further alleges that "Dr. Mintas was quoted by the most respected media outlets in her industry but also beyond her industry and globally as the person that 'sabotaged' the FTX deal because PlayUp would not pay her the salary and give her the stock she requested." (SACC ¶ 201). But this allegation does not refer to PlayUp US's conduct, and therefore fails to allege a false light claim against PlayUp US. Moreover, although Mintas alleges that she has suffered "irreparable harm to her reputation, loss of income, devaluation of her shares, among other damages," Mintas fails to allege that she suffered mental distress. Accordingly, the Court DISMISSES Mintas's false light counterclaim against PlayUp US without prejudice.

**D.     Intentional Infliction of Emotional Distress**

The elements of a cause of action for intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for,

causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999).  "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotations omitted).  Persons must be expected and required to tolerate occasional acts that are inconsiderate and unkind. *Id.* "Liability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 46 cmt. d).

Furthermore, except in the case of assault, Nevada courts have required a plaintiff to demonstrate that he or she has suffered some physical manifestation of emotional distress to support an award for emotional damages. *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010); *see also Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) ("[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented.").

Here, Mintas alleges that PlayUp US's conduct, such as disparaging Mintas to others in the industry, lying about Mintas being on vacation, shutting off her email access, and telling others she breached her employment agreement, caused Mintas extreme or severe emotional distress. (SACC ¶¶ 209–12).  Such conduct "does not rise to a level which is outside all possible bounds of decency and utterly intolerable in a civilized community." *Tuggle v. Las Vegas Sands Corp.*, No. 2:15-cv-01827-GMN-NJK, 2016 WL 3456912, at *2 (D. Nev. June 16, 2016) (dismissing IIED claim because conduct including "regularly belittling plaintiff, calling her a 'piece of shit,' moving her desk to keep an eye on her, falsely telling her other supervisors

disapproved of her work, and berating her for taking approved and legally-protected medical leave," though "certainly inconsiderate and unkind," represented "insults, indignities, threats, annoyances, petty oppressions, or other trivialities, to which liability for emotional distress will not extend"). Moreover, the SACC fails to allege any physical manifestations of severe emotional distress. Accordingly, the Court DISMISSES Mintas's IIED counterclaim against PlayUp US without prejudice.

### E. Promissory Estoppel

"To establish promissory estoppel, four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must have relied to his detriment on the conduct of the party to be estopped." *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984). "The promise giving rise to a cause of action for promissory estoppel must be clear and definite, unambiguous as to essential terms, and the promise must be made in a contractual sense." *Torres v. Nev. Direct Ins. Co.*, 353 P.3d 1203, 1209 (Nev. 2015) (quoting 31 C.J.S. Estoppel and Waiver § 116).

Here, Mintas alleges that PlayUp US "repeatedly reassured Dr. Mintas that it would enter into a new contract with her." (SACC ¶ 218). PlayUp US argues that Mintas fails to allege a clear and definite promise with particularity. (Mot. Dismiss 15:15–24, 16:16–25). The SACC specifies the terms of Mintas's new employment contract and alleges that Simic approved the contract terms and told Mintas that PlayUp US "would move forward with her contract extension and wanted to get 'joint board approval.'" (SACC ¶¶ 52–57). The SACC further alleges specific instances in which Simic reassured Mintas that the new contract would get a joint board approval and told Mintas that he would speak to PlayUp US's general counsel to finalize the contract. (*Id.* ¶¶ 57–61). But the SACC does not allege any specific promise

made by PlayUp US, nor does the SACC allege that Simic's conduct may be attributed to PlayUp US. (*See generally id.*); *see Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (affirming dismissal of claims sounding in fraud when complaint "[did] not attribute specific conduct to individual defendants"). The Court therefore DISMISSES Mintas's promissory estoppel counterclaim against PlayUp US without prejudice.

### F. Fraud

Under Nevada law, the elements of a common law fraud cause of action are: (1) the defendant made a false representation; (2) the defendant knew or believed the representation was false or the defendant had an insufficient basis for making the representation; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) damage to the plaintiff resulted from such reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992); *see also Daou v. Abelson*, No. 2:11-cv-01385-PMP-GWF, 2014 WL 938508, at *4 (D. Nev. Mar. 10, 2014). Rule 9 of the Federal Rules of Civil Procedure additionally requires that fraud is plead with particularity. Fed. R. Civ. P. 9(b).

Mintas's fraud claim is based upon the same facts as her promissory estoppel claim: "[PlayUp US] engaged in fraudulent conduct when it intentionally misrepresented that it would enter into a new contract with Dr. Mintas with her deal terms, all the while knowing it would not do so." (SACC ¶ 227). But as with Mintas's promissory estoppel claim, Mintas fails to allege that *PlayUp US* made a false representation. "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz*, 476 F.3d at 765 (quoting *Moore*, 885 F.2d at 541). Accordingly, the Court DISMISSES Mintas's fraud counterclaim against PlayUp US without prejudice.

///

### G.   Declaratory Judgment

"[D]eclaratory relief is merely a remedy, not a stand-alone cause of action." *Herrera v. Nationstar Mortg., LLC*, No. 2:16-cv-01043-GMN-GWF, 2017 WL 1091788, at *4 (D. Nev. Mar. 22, 2017) (citations omitted). Accordingly, the Court DISMISSES Mintas's independent cause of action for declaratory judgment WITH prejudice. Mintas, however, may still seek declaratory relief as a remedy.[9]

### H.   Contractual Breach of the Implied Covenant

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe Cty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the Plaintiffs' justified expectations under the contract were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991)).

A contractual breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes [sic] the intention and spirit of the contract." *Hilton Hotels*, 808 P.2d at 923–24. This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract. *See Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010). "A contractual breach of the implied covenant,

---

[9] PlayUp US further argues that Mintas's claim for declaratory relief should be dismissed because granting her request for a declaration that an Australian order has no force and effect against her "would violate comity and international jurisprudence." (Mot. Dismiss 20:11–15). The Court declines to consider whether a certain remedy would be appropriate at this stage.

however, cannot be based on the same conduct as a breach of contract." *Sahinov v. GEICO Advantage Ins. Co.*, No. 2:21-cv-919-JCM-VCF, 2021 WL 4954311, at *2 (D. Nev. Oct. 25, 2021).

PlayUp US argues that Mintas's counterclaim for contractual breach of the implied covenant should be dismissed because Mintas relies on the same conduct for this counterclaim as she does for her breach of contract counterclaim. (Mot. Dismiss 21:25–22:7). Indeed, Mintas's counterclaim for contractual breach of the implied covenant fails to allege a breach beyond a mere recitation of the elements. (*See* SACC ¶¶ 253–257). The SACC does not specify how "[PlayUp US] failed to act in good faith and to the best of their ability, and also failed to deal fairly with Dr. Mintas, thereby breaching their duties to so conduct themselves and injuring Dr. Mintas." (*Id.* ¶ 255). Accordingly, the Court DISMISSES Mintas's counterclaim for contractual breach of the implied covenant against PlayUp US without prejudice.

### I. Unjust Enrichment

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nevada Indus. Dev., Inc. v. Benedetti*, 741 P.2d 802, 804 n.2 (Nev. 1987). In Nevada, the elements of an unjust enrichment claim are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant; (4) in circumstances where it would be inequitable to retain the benefit without payment." *Ames v. Caesars Ent. Corp.*, No. 2:17-cv-02910, 2019 WL 1441613, at *5 (D. Nev. April 1, 2019) (quoting *Leasepartners Corp., Inc. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997)).

Unjust enrichment is an equitable remedy, and as such, a claim for unjust enrichment "is not available where the plaintiff has a full and adequate remedy at law." *See Small v. Univ.*

*Med. Ctr. of S. Nevada*, No. 2:13-cv-00298, 2016 WL 4157309, at *3 (D. Nev. Aug. 3, 2016). "A party cannot recover under a theory of unjust enrichment when an express agreement governs the rights and obligations of the parties to the lawsuit." *P.F. Chang's China Bistro, Inc. v. OpBiz, L.L.C.*, No. 2:08-cv-01253-RLH-LRL, 2010 WL 11578973, at *6 (D. Nev. Jan. 20, 2010).

PlayUp US argues that the existence of a valid, enforceable agreement—Mintas's employment agreement—is fatal to her claim for unjust enrichment. (Mot. Dismiss 22:9–12). Mintas responds that her unjust enrichment claim is pled in the alternative to her breach of contract claim. (Resp. 26:12–13). Although Mintas is correct that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically," *Winnemucca Farms, Inc. v. Eckersell*, No. 3:05-cv-385-RAM, 2010 WL 1416881, at *6 (D. Nev. Mar. 31, 2010) (quoting Fed. R. Civ. P. 8(d)(2)), a claim for unjust enrichment must be "premised on the nonexistence of a valid contract." *Id.* (granting summary judgment in favor of counterclaim defendant when counterclaim for unjust enrichment was predicated on express agreement). That is, a prayer for equitable relief states a claim only if the pleading alleges the inadequacy of a legal remedy. *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021).

Here, Mintas does not allege the inadequacy of a legal remedy. (*See* SACC ¶¶ 258–263). Furthermore, neither Mintas nor PlayUp US have, at any time during these proceedings, denied the existence or validity of Mintas's employment contract. Accordingly, the Court DISMISSES Mintas's unjust enrichment counterclaim against PlayUp US without prejudice.

**J.    Wage and Hour Claims**

Mintas brings four "wage and hour" counterclaims under the Fair Labor Standards Act ("FLSA") and its state-law equivalent, NRS Chapter 608. (*See* SACC ¶¶ 264–95). PlayUp US argues that Mintas's status as a highly skilled, senior executive exempted her from these wage

///

and hour statutes. (Mot. Dismiss 23:4–28:1). Additionally, PlayUp US argues that the wage and hour claims are time-barred. (*Id.* 28:4–20).

### 1. Exemption

Under the FLSA, employers are required to pay minimum wages and overtime compensation to employees. *See* 29 U.S.C. §§ 206–207. But "the FLSA does not require employers to pay overtime wages to employees that fall under the highly compensated exemption." *Kennedy v. Las Vegas Sands Corp.*, No. 2:17-cv-880-JCM-VCF, 2019 WL 12043525, at *3 (D. Nev. July 22, 2019) (citing 29 C.F.R. § 541.601(c)). Employees are exempt from the FLSA if they "(1) have a total annual compensation of at least $100,000.00; (2) customarily and regularly perform any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee; and (3) have a primary duty that includes office or non-manual work."[10] *Id.* (citing 29 C.F.R. §§ 541.601(a), (c)-(d)).

Some courts have categorized nonexempt workers as hourly employees, as opposed to exempt salaried employees. *Miller v. Infinite Percent Partners LLC*, No. 20-CV-02253-HSG, 2021 WL 2474440, at *2 (N.D. Cal. June 17, 2021). In *Miller*, the plaintiff "was hired to perform professional functions" and "was to be paid a monthly salary, not an hourly wage." *Id.* The court found that the plaintiff failed to plausibly allege a violation of the FLSA's minimum wage provisions. *Id.*

But the plain language of the FLSA and relevant CFR provisions appears to exempt certain employees when they are "compensated on a salary basis." 29 C.F.R. § 541.100; *see* 29 U.S.C. § 213(1) The SACC alleges that Mintas "never received any monetary compensation during her first year of employment." (SACC ¶ 33). That is, according to the SACC, Mintas

---

[10] The FLSA exempts "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The CFR further defines "employee employed in a bona fide executive capacity" and specifies that an employee falls into this category when, among other things, the employee is "[c]ompensated on a salary basis . . . at a rate of not less that $684 per week." 29 C.F.R. § 541.100.

was not "compensated on a salary basis." Although the Court acknowledges that Mintas's employment status appears analogous to the plaintiff's employment status in *Miller*, it is at least facially plausible that a high-level executive could state a claim under the FLSA if she was not compensated for her work.[11]

### 2. Statute of Limitations

Wage and hour claims brought under the FLSA and NRS Chapter 608 generally have a two-year statute of limitations. 29 U.S.C. § 255(a); NRS 608.260. Claims brought under the FLSA may be commenced within three years if the cause of action arises "out of a willful violation." 29 U.S.C. § 255(a). "[T]he statute of limitations for an FLSA claim accrues the day the employee's paycheck is normally issued, but isn't." *Keating-Traynor v. AC Square*, 343 F. App'x 214, 215 (9th Cir. 2009) (internal quotation marks omitted).

Here, Mintas alleges that she did not receive any monetary compensation during her first year of employment, which continued into September, 2020. (SACC ¶¶ 33–34). Mintas brought her wage and hour claims on May 13, 2022. Thus, Mintas's wage and hour claims are not barred by the statute of limitations. Whether Mintas is entitled to recover unpaid minimum wages for labor predating May 13, 2020, if she is successful on these claims, is a question for a later stage in this litigation. Accordingly, the Court DENIES PlayUp US's Motion to Dismiss as to Mintas's wage and hour counterclaims.

### K. Punitive Damages

In Nevada, courts can award punitive damages when a plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." NRS § 42.005(1). Because the Court has dismissed with leave to amend several

///

---

[11] The Nevada equivalent to the FLSA uses similar language exempting "[e]mployees who are employed in bona fide executive, administrative, or professional capacities." NRS § 608.018(3)(d). PlayUp US did not separately argue that Mintas is exempt under Nevada law.

claims implicating fraud, it is premature at this stage to determine as a matter of law whether Mintas's prayer for punitive damages is proper.[12]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motions to Dismiss and/or Strike, (ECF Nos. 147, 148), are **GRANTED in part and DENIED in part**.  The Court **DISMISSES** the following counterclaims against PlayUp US **WITHOUT prejudice**: Abuse of Process; False Light; Intentional Infliction of Emotional Distress; Promissory Estoppel; Fraud; Contractual Breach of the Implied Covenant; Unjust Enrichment.  The Court **DISMISSES** the Declaratory Judgment counterclaim against PlayUp US **WITH prejudice**.  The Court **DENIES** the Motion as to the following counterclaims: Defamation Per Se; Violation of 29 U.S.C. §§ 206, 207; Violation of NRS §§ 608.016, 608.140; Nev. Const. Art. 15, § 16 and NRS § 608.250; Violation of NRS §§ 608.018, 608.140.

**IT IS FURTHER ORDERED** that the Motions for Leave to File Excess Pages, (ECF Nos. 146, 165), are **GRANTED**.

Dated this  24  day of March, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[12] PlayUp US requests that the Court dismiss Mintas's prayer for punitive damages, but there is no independent claim for punitive damages, nor did Mintas allege such a non-existent claim for the Court to dismiss. *See Russo v. Duracell, Inc.*, No. 2:21-CV-1403-GMN-DJA, 2022 WL 960591, at *3 (D. Nev. Mar. 29, 2022).