UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PLAYUP, INC.,<br><br>　　　　Plaintiff(s),<br><br>v.<br><br>DR. LAILA MINTAS,<br><br>　　　　Defendant(s). | Case No. 2:21-cv-02129-GMN-NJK<br><br>**Order**<br><br>[Docket Nos. 337, 343] |

Pending before the Court are two orders to show cause arising out of the withdrawal of counsel for PlayUp and Simic. Docket Nos. 337, 343. PlayUp, Simic, and their counsel filed responses to the orders to show cause. Docket Nos. 341, 356, 358-61. Mintas also filed responses. Docket Nos. 363, 364. A reply and a supplement were filed thereafter. Docket Nos. 369, 370.

**I.　BACKGROUND**

PlayUp is an online sports betting platform. First Amended Complaint (Docket No. 134) at ¶ 21. Defendant Dr. Laila Mintas was the Chief Executive Officer of PlayUp's American entity. *See id.* at ¶ 27. That employment ended on November 30, 2021. *Id.* at ¶ 95. Plaintiff brought suit alleging contractual and tort claims against Defendant. Defendant responded with her own contractual and tort counterclaims against PlayUp and its parent company's Chief Executive Officer, Daniel Simic.[1]

The pretrial process in this case, particularly discovery, has devolved into a sandbox fight.[2] Counterclaimant Simic had delayed his discovery obligations in light of his motion to dismiss; however, on September 29, 2022, Simic was ordered to engage in the discovery process. *See* Docket No. 220; *see also* Docket No. 232 (denying motion to stay order). On February 21, 2023,

---

[1] A more fulsome recounting of some of the allegations in the case are recounted elsewhere, such as Judge Navarro's order at Docket No. 324.

[2] Neither side has a monopoly on the blame for this situation.

Simic's deposition was noticed for March 7, 2023. Docket No. 314-9. On February 27, 2023, defense counsel filed an emergency motion for protective order seeking, *inter alia*, to limit the deposition questioning of Simic and to require coordination on deposition scheduling. *See* Docket No. 312 at 11-13, 14. On February 28, 2023, the Court denied that emergency motion for protective order. Docket No. 316.

Less than 24 hours later, on March 1, 2023, attorneys for the law firm of Zumpano Patricios Popok & Helsten, PLLC filed a motion to withdraw as counsel for Simic and PlayUp. Docket No. 317. That motion to withdraw made clear that granting relief would necessitate delay of Simic's deposition. *See id.* at 3; *see also* Docket No. 319 at 2. Nonetheless, the motion sought immediate withdrawal predicated on the assertion that, "[w]ithout violating attorney-client privilege, [PlayUp's] counsel can represent to the Court that it [sic] has irreconcilable differences with its [sic] Clients that Counsel has attempted to resolve but has not been able to, despite diligent efforts." Docket No. 317-1 at ¶ 5. Despite serial assertions of "irreconcilable differences," no other details were provided. In an accommodation to Simic being located in Australia and in an effort to not probe privileged information unnecessarily, the Court allowed withdrawal without holding a hearing by taking counsel at their word that irreconcilable differences had arisen. Docket No. 323.

The Court ordered PlayUp and Simic to obtain new counsel by April 4, 2023. *Id.* at 1. PlayUp and Simic violated that order. On April 20, 2023, the Court ordered PlayUp and Simic to show cause why case-dispositive sanctions should not be imposed. Docket No. 337. The deadline to respond to the order to show cause was set for May 4, 2023, at which time the previously-withdrawn counsel filed a notice of re-appearance, Docket No. 339, and a response to the order to show cause, Docket No. 341. The response to the order to show cause indicates that the earlier withdrawal had been predicated on "purely economic" issues, *id.* at 6, and that "[i]t was never PlayUp US' or Mr. Simic's desire to replace counsel," *id.* at 4.

These representations rang alarm bells given the history of this case, the procedural posture when counsel was allowed to withdraw (*e.g.*, in the lead-up to Simic's deposition), and the tension with the assertions made earlier in the motion to withdraw. On May 8, 2023, the Court issued a second order to show cause expressing concern:

2

> These circumstances are troubling. Nowhere in the motion to withdraw does it identify any sort of financial dispute as the basis for withdrawal. Instead, the motion to withdraw indicates that there are irreconcilable differences, the details of which were omitted since they implicate attorney-client privilege issues. No explanation has been advanced as to how an "economic dispute" that counsel and the clients were trying to resolve could constitute an "irreconcilable difference." No explanation has been advanced as to how withdrawal of counsel (with a pending deposition) is appropriate to discuss resolution of an economic dispute between an attorney and client. Moreover and significantly, although the current response to the pending order to show cause asserts that there is no dilatory or bad faith motivation, that is the implication from the circumstances. In short, the circumstances show the potential of a lack of candor and misrepresentations in the prior motion to withdraw.

Docket No. 343 at 3 (footnotes omitted).[3]

## II.  FIRST ORDER TO SHOW CAUSE

The first order to show cause addresses the failure to comply with the deadline for new counsel established in the order granting the motion to withdraw as counsel. Docket No. 337.[4]

As required by controlling Ninth Circuit precedent, the Court required unambiguously that PlayUp must retain counsel and that counsel must file a notice of appearance by April 4, 2023. Docket No. 323 at 1. The Court also required unambiguously that Simic must either retain counsel and have a notice of appearance filed by April 4, 2023, or alternatively file a notice that he intended to proceed *pro se* by that date. *Id.* PlayUp and Simic violated that order. Instead, PlayUp and Simic only complied with the requirement for new counsel weeks after the deadline expired and after the first order to show cause issued.

The response to the first to order to show cause indicates essentially that PlayUp and Simic needed more time to re-retain their prior counsel so that they would not need to retain new counsel. *See, e.g.*, Docket No. 341 at 3. While such reasoning may account for why PlayUp and Simic had

---

[3] The second order to show cause ignited a serious of requests for secrecy, including for *in camera* treatment and sealing. The Court addresses the pending motions on that front in a separate order. The information discussed herein is derived primarily from the public docket. The limited information discussed herein derived from filings submitted in secrecy has been deemed not appropriate for *in camera* treatment or sealing.

[4] The first order to show cause is predicated on the requirement that corporations appear in federal court with licensed counsel, *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993), and that sanctions may be imposed for violating an order, Fed. R. Civ. P. 16(f).

difficulty meeting the court-ordered deadline, it fails to explain why they did not request an extension to that deadline rather than ignoring it. *U.S. Bank N.A. v. SFR Invs. Pool 1, LLC*, 2018 WL 701816, at *4 (D. Nev. Feb. 2, 2018) ("If a deadline cannot be met, the proper course is assuredly not to simply ignore an order").

PlayUp and Simic are **CAUTIONED** that they must strictly comply with all orders.[5]

## III.   SECOND ORDER TO SHOW CAUSE

The second order to show cause arises out of the tension between the representations made in the motion to withdraw as counsel and the later filings in the case. Docket No. 343.[6]

Rather than moving forward with discovery, this case was stopped for two months based on counsel's motion to withdraw. That reprieve was premised on the representation that, "[w]ithout violating attorney-client privilege, [PlayUp's] counsel can represent to the Court that it [sic] has irreconcilable differences with its [sic] Clients that Counsel has attempted to resolve but has not been able to, despite diligent efforts." Docket No. 317-1 at ¶ 5. The record now makes clear that the basis for withdrawal was actually that PlayUp and Simic were not paying their legal bills. *E.g.*, Docket No. 360 at ¶¶ 10-11. The record also makes clear that PlayUp and Simic continued to discuss with their attorneys arrangements that could enable their representation to continue. *E.g.*, Docket No. 341-2 at ¶ 8.

The circumstances as now clarified undermine the prior reference to "irreconcilable differences" as the basis for withdrawing as counsel. As a factual matter, the record shows that any rift in the relationship was not "irreconcilable." To repeat, counsel and the clients were engaged in reconciliation efforts during the pertinent period. *See, e.g.*, Docket No. 341-2 at ¶ 8

---

[5] The law is clear that corporate entities cannot proceed in federal court without a licensed attorney. *E.g.*, Docket No. 323 at 1 (citing *High Country Broadcasting*, 3 F.3d at 1245). When a corporate entity fails to retain licensed counsel as ordered, entry of case dispositive sanctions may be warranted. *High Country Broadcasting*, 3 F.3d at 1245 (finding entry of default judgment "perfectly appropriate"). Nonetheless, the Court declines to impose such sanctions against PlayUp given the circumstances of this case.

[6] The second order to show cause is predicated on the requirement that representations be made with a reasonable basis in fact and law, and not for an improper purpose, Fed. R. Civ. P. 11, the prohibition on unreasonably and vexatiously multiplying proceedings, 28 U.S.C. § 1927, and based on the Court's inherent authority to address litigation abuses, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

4

("Since that time and through today, we have been working diligently and in good faith alongside the then former Clients to resolve the economic issues – the irreconcilable differences – that arose so that the Firm, the Clients' law firm of choice, could continue its representation"). Indeed, "[i]t was never PlayUp US' or Mr. Simic's desire to replace counsel." Docket No. 341 at 4. Although counsel now attempt to backtrack on such attestations, it is obvious that the nonpayment of fees was not "irreconcilable."

At any rate, a scenario in which attorneys seek to withdraw because a client fails to pay legal bills is covered by a specific provision in the governing rules. Such circumstances would entail withdrawal of counsel because "[t]he client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services." Nev. R. Prof. Cond. 1.16(b)(5). Rather than relying on the plainly applicable provision, counsel sought to shoehorn their withdrawal request into a category of irreconcilable differences. Docket No. 317-1 at ¶ 5.[7] Counsel now insist that they legitimately believed that their clients' failure to pay their legal bills was properly characterized as

---

[7] The term irreconcilable differences refers to a withdrawal where "[a] client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement." Nev. R. Prof. Cond. 1.16(b)(4). Much of the argument and authority cited in responding to the order to show cause reenforces that reading. For example, counsel rely on out-of-circuit case law indicating that the term "irreconcilable differences" is used as a "euphemism to mean that the lawyer can no longer *ethically and fairly* represent the client." *See* Docket No. 356 at 13 (emphasis added). The response fails to connect the dots, however, as to why it would be unethical for a lawyer to represent a client who has failed to pay fees. To the contrary, there have been repeated assertions that the withdrawal (for failure to pay fees) was not based on an ethical concern. *E.g.*, Docket No. 341 at 4, 22. Indeed, counsel represented PlayUp and Simic for months without payment, Docket No. 360 at ¶¶ 10-11, presumably demonstrating that such a situation would not be unethical.

The citation and discussion of other cases that counsel contend support their use of "irreconcilable differences" also hurts their overarching position that their representation in seeking to withdraw was appropriate. *See, e.g.*, Docket No. 256 at 4-6. In the cases cited, a failure to pay fees was explicitly identified to the Court as a reason for withdrawal (usually accompanied with other reasons). Counsel in those cases did not rely on a bald assertion of "irreconcilable differences" that they did not want to identify with particularity given potential privilege issues. Those attorneys, instead, recognized that the fact of non-payment of fees is not privileged and provided that information to the Court in seeking to withdraw. The representations made by those attorneys stand in stark contrast to the representation made in this case.

an "irreconcilable difference." *See, e.g.*, Docket No. 256 at 4-6, 12-13.[8] Viewed most charitably to counsel, however, their representations in seeking withdrawal were misleading.

This distinction is not merely an issue of semantics, either. Correctly identifying the circumstances is important given that the decision whether to allow withdrawal of counsel is an issue entrusted to the broad discretion of the Court. *LaGrand v. Stewart*, 133 F.3d 1253, 1269 (9th Cir. 1998); *see also Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999). In exercising that discretion, courts may consider a number of factors, including: "(1) *the reasons why withdrawal is sought*; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case." *Williams v. Cnty. of Fresno*, 562 F. Supp. 3d 1032, 1035 (E.D. Cal. 2021) (emphasis added).[9] An insinuation that an attorney and client have a fundamental disagreement as to how to proceed with litigation is a much different scenario than a request to withdraw

---

[8] The problem here is not simply the use of the term "irreconcilable differences," but also the surrounding context. The representation of irreconcilable differences was prefaced with the suggestion that the circumstances implicated the attorney-client privilege. Docket No. 317-1 at ¶ 5. Despite providing counsel ample opportunity to do so, *see* Docket No. 343 at 3 n.6 (second order to show cause discussing *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988)), the Court has not received any reasonable basis for a privilege assertion as to the fact of a client's failure to pay legal bills. To the contrary, courts routinely note in public orders addressing motions to withdraw that the reason for the withdrawal was nonpayment of fees. *See, e.g.*, *Sanford v. Maid-Rite Corp.*, 816 F.3d 546, 550 (8th Cir. 2016); *Brandon v. Blech*, 560 F.3d 536, 539 (6th Cir. 2009); *T1 Payments LLC v. Beyond Wealth Pte LLC*, 2021 WL 408089, at *2 (D. Nev. Feb. 5, 2021); *Bank of N.Y. Mellon v. Ravenstar Invs., LLC*, 2018 U.S. Dist. Lexis 52691, at *2 (D. Nev. Mar. 29, 2018); *Travelers Cas. & Sur. Co. of Am. v. Williams Bros., Inc.*, 2014 U.S. Dist. Lexis 44547, at *4 (D. Nev. Mar. 31, 2014); *Travelers Cas. & Sur. Co. of Am. v. Big Town Mech., LLC*, 2013 U.S. Dist. Lexis 122923, at *4 (D. Nev. Aug. 27, 2013); *21st Century Cmtys. v. Muzlink, LLC*, 2013 U.S. Dist. Lexis 84721, at *2 (D. Nev. June 17, 2013); *Chan v. Pan Western Corp.*, 2011 WL 2976793, at *1 (D. Nev. July 21, 2011). The motion to withdraw here also indicated that the circumstances were of such significance that counsel required an "immediate[]" withdrawal in the days leading up to Simic's deposition. Docket No. 322 at 3; *see also* Docket No. 363 at 9, 13 (identifying this language as problematic). Such a request is puzzling for a withdrawal based on nonpayment of fees, particularly when nonpayment had been an issue for months. Docket No. 360 at ¶¶ 10-11. Hence, even were the Court persuaded that a failure to pay fees could in some way constitute an irreconcilable difference, the Court has been given no justification for the particular representation made in this case in light of the larger context of that statement.

[9] Counsel suggest that an accurate recitation of the circumstances matters only when a motion to withdraw is opposed. *See, e.g.*, Docket No. 356 at 6, 7, 21. Not so. The Court's discretion to deny a motion to withdraw as counsel is not limited to opposed motions. *See, e.g.*, Local Rule IA 11-6(e) ("Except for good cause shown, *no withdrawal* . . . will be approved if it will result in delay of discovery . . ." (emphasis added)).

premised on a failure to pay legal bills. *Cf. Rophaiel v. Alken Murray Corp.*, 1996 WL 306457, at *1-2 (S.D.N.Y. June 7, 1996). Such distinction is particularly acute when withdrawal would delay an imminent deposition of a central figure in the litigation. *See, e.g.*, *S.E.C. v. Zufelt*, 2015 WL 7176366, at *1 (D. Utah Nov. 13, 2015) (denying request to withdraw as counsel before upcoming depositions). Quite plainly, had the circumstances been portrayed accurately in the motion to withdraw, the Court may not have permitted the withdrawal on the eve of Simic's deposition.

In short, the record makes clear that counsel were not forthright in their motion to withdraw on a material issue. They predicated that motion on the "existence of irreconcilable differences," insinuating the details of which were privileged and that withdrawal was needed immediately, when the basis for the motion to withdraw was actually the non-privileged, non-urgent scenario that their clients failed for months to pay bills for legal services rendered. The most recent declarations attest that the representations were not meant as a means to delay Simic's deposition or other proceedings. *See, e.g.*, Docket No. 356 at 13. The inference from the papers is, instead, that counsel sought to avoid disclosing their client's failure to pay legal bills as a means to (1) avoid giving fodder to the other side and (2) avoid tarnishing the public reputation of the clients. *See, e.g.*, Docket No. 356 at 3, 5, 6, 14, 21; Docket No. 369 at ¶¶ 57-58. Attorneys are free to try to protect the reputations of their clients,[10] but they are not permitted to do so by fudging their representations to the Court.

Notwithstanding the above, the Court declines to exercise its discretion to impose sanctions for a variety of reasons. First, as noted above, counsel attest that the motion to withdraw was not filed for the purpose of delay. While the timing and other circumstances of the motion certainly raise concern to the contrary, the Court will take counsel at their word. Second, as also noted above, counsel attest that they believed a failure to pay legal bills could be characterized as an "irreconcilable difference" with the client. While this reasoning is strained, the Court will take

---

[10] Such efforts are generally in vain because the potential disclosure of information that may harm a party's reputation is inherent in the litigation process. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records"); *see also Allegiant Travel Co. v. Kinzer*, 2022 WL 2819734, at *4 n.11 (D. Nev. July 19, 2022).

7

counsel at their word as to their belief in the accuracy of their prior statements.[11]  Lastly, the circumstances on their face appear to show prejudice to Mintas, as unreasonable discovery delays are presumptively prejudicial.  *See, e.g.*, *in re: Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).  Nonetheless, Mintas herself has delayed depositions and other discovery.  *E.g.*, Docket No. 369 at ¶ 42.  The Court declines to impose sanctions based on potential prejudice to Mintas for rescheduling Simic's deposition when she has herself voluntarily delayed depositions and other discovery.

Although the Court is declining to impose sanctions, it must stress that this is a serious situation and it will not look kindly on similar issues arising in the future.  To that end, the Court **CAUTIONS** Attorney Popok and Attorney Brookhyser.

**IV.   CONCLUSION**

For the reasons discussed above, PlayUp, Simic, and their attorneys are **CAUTIONED**, and the pending orders to show cause are otherwise **DISCHARGED**.  Counsel must confer on a schedule to move this case forward and must file a joint proposed schedule by July 27, 2023.

IT IS SO ORDERED.

Dated: July 19, 2023

_____
Nancy J. Koppe
United States Magistrate Judge

---

[11] To be clear, the Court is not suggesting that bad faith or intentional misconduct is necessarily required before sanctions may be imposed. *See, e.g.*, *Harper v. Nev. Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1052 n.23 (D. Nev. 2021).  Nonetheless, the Court considers these facts as part of the totality of the circumstances in exercising its discretion not to impose sanctions.