**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PLAYUP, INC.,

      Plaintiff(s),

v.

DR. LAILA MINTAS,

      Defendant(s).

Case No. 2:21-cv-02129-GMN-NJK

**Order**

[Docket No. 464]

Pending before the Court is Laila Mintas' motion for issuance of letters rogatory. Docket No. 264; *see also* Docket No. 469 (errata). PlayUp, Inc. and Daniel Simic filed a response. Docket No. 478. The Court does not require a reply or a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motion for issuance of letters rogatory is **GRANTED**.

## I.   BACKGROUND

This case arises from a soured business relationship, resulting in the termination of Mintas as CEO, competing allegations of wrongful conduct, and competing claims for tens of millions of dollars in damages. These circumstances are no doubt personal for all involved—and the case involves a lot of money—which has spawned a contentious and messy discovery process.

On February 6, 2024, Defendant and Counter-claimant Laila Mintas filed a motion seeking letters rogatory for depositions and documents from Australian residents Ashley Kerr, Farshad Amirbeaggi, Brooke Maniscalco, Ross Benson, and Sally McDow. Docket No. 478. That is the matter currently before the Court.

## II.   STANDARDS

"[A] letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004). Private parties in U.S. litigation may seek the issuance of letters rogatory in civil lawsuits.

*See in re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 562 (9th Cir. 2011).  A deposition may be taken in a foreign country "under a letter of request, whether or not captioned a 'letter rogatory.'"  Fed. R. Civ. P. 28(b)(1)(B).  A letter rogatory may also include a request for the production of documents.  *Viasat, Inc. v. Space Systems/Loral, Inc.*, 2013 WL 12061801, at *2 (S.D. Cal. Jan. 14, 2013).

The standards governing such requests have been succinctly stated as follows:

> A court has inherent authority to issue letters rogatory.  28 U.S.C. § 1781 also implicitly provides federal courts with authority to issue letters rogatory.  Whether to issue such a letter is a matter of discretion for the court.  When determining whether to exercise its discretion, a court will generally not weigh the evidence sought from the discovery request nor will it attempt to predict whether that evidence will actually be obtained.  A court's decision whether to issue a letter rogatory, though, does require an application of Rule 26(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure.  "Under Rule 26(b), parties may obtain discovery regarding nonprivileged matter that is relevant to any party's claim or defense."

*Dish Network LLC v. Jadoo TV, Inc.*, 2020 WL 6528425, at *2 (N.D. Cal. June 29, 2020) (internal citations omitted).

## III.    ANALYSIS

The Court finds that issuance of a letter rogatory is appropriate in this case.  Mintas has made a showing that the recipients have relevant information in this case.  *See* Docket No. 464 at 7-8 (Ashley Kerr); *id.* at 8-9 (Farshad Amirbeaggi and Brooke Maniscalco); *id.* at 9-10 (Ross Benson); *id.* at 10 (Sally McDow).  Moreover, PlayUp, Inc. and Simic do not oppose the request on its merits.  Instead, they argue that the Court should make clear that it is not extending the discovery cutoff set for April 1, 2024.  *See* Docket No. 478.  The Court has not been presented with a request to extend discovery.  To the contrary, Mintas' filing appears to contemplate completing this foreign discovery before the current cutoff.  *See, e.g.*, Docket No. 464-2 at 2 (letter

rogatory for Amirbeaggi noting discovery cutoff of April 1, 2024).  As such, there is no current dispute regarding extending the discovery cutoff.[1]

Given that Ashley Kerr, Farshad Amirbeaggi, Brooke Maniscalco, Ross Benson, and Sally McDow are Australian residents, the letters rogatory are a necessary and appropriate mechanism to request the desired discovery.

**IV.    CONCLUSION**

Accordingly, the Court **GRANTS** the motion for issuance of letters rogatory to take the deposition of and compel documents from Australian residents Ashley Kerr, Farshad Amirbeaggi, Brooke Maniscalco, Ross Benson, and Sally McDow.

IT IS SO ORDERED.

Dated: February 21, 2024

_____
Nancy J. Koppe
United States Magistrate Judge

---

[1] Lastly, the Court notes Mintas' reference to the fact that Kerr and Amirbeaggi are attorneys, *see* Docket No. 464 at 13-14, but it does not appear that either are attorneys for PlayUp, Inc. or Simic.  Moreover, PlayUp, Inc. has itself identified both as percipient fact witnesses expected to have discoverable information.  Docket No. 464-1 at 44, 47.  As such, the Court has been provided no reason to believe that the attorney status of these witnesses would act to block an attempt to obtain discovery from them.

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE
HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS TO OBTAIN RELEVANT
PHYSICAL EVIDENCE AND TESTIMONY FROM FARSHAD AMIRBEAGGI**

The Honorable Nancy J. Koppe, United States Magistrate Judge, of the District Court for the District of Nevada, presents her compliments to the Central Authority of Australia, and requests international judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Evidence Convention"), to obtain evidence to be used in the above-captioned civil proceeding before this Court. This Court has determined that it would further the interests of justice if Farshad Amirbeaggi ("Amirbeaggi") provided documents in its possession and deposition testimony relevant to the issues in this case.

This Request has been made upon the motion of Defendant and Counter-Plaintiff Dr. Laila Mintas, who has advised the Court that the evidence sought from Amirbeaggi as to the issues in this case is relevant and necessary for the due determination of the matters in dispute between the parties in this case involving allegations of breaches of contract, breaches of the implied covenant of good faith and fair dealing, breaches of fiduciary duty, violations of the Nevada Uniform Trade Secrets Act, tortious interference with contractual relations, tortious interference with prospective economic advantage, abuse of process, defamation per se, false light, promissory estoppel, fraud, unjust enrichment, violations of the Fair Labor Standards Act, violations of the Nevada Constitution, and violations of Nevada Revised Statute §§ 608.018 and 608.140. Having considered the submissions of the parties, this Court has found that this Request is necessary in the interests of justice and for the purpose of a full and fair determination of the matters in issue among the parties to the pending proceeding.

## SECTION I

**1.      Sender**

The Honorable Nancy J. Koppe
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**2.      Central Authority of the Requested State:**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**3.      Persons to Whom the Executed Request Is to Be Returned**

William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
United States of America

Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America

Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America

Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America

**4. Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request**

March 8, 2024

**Reason for urgency:**

Discovery in this litigation closes on April 1, 2024.

**SECTION II**

**In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the undersigned applicant has the honor to submit the following request:**

**5.**
**(a)      Requesting Judicial Authority (Article 3(a))**

The Honorable Nancy J. Koppe
United States Magistrate Judge

District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**(b)      To the Central Authority of Australia**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**(c)      Name of the Case and any Identifying Number**

*PlayUp, Inc. v. Mintas*, Case No. 2:21-cv-02129-GMN-NJK, United States District Court for the
District of Nevada.

**6.      Names and Addresses of the Parties and Their Representatives (Article 3(b))**

**(a)      Plaintiff / Counter-Defendant**

PlayUp, Inc.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

PlayUp, Inc.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**(b)      Defendant / Counter-Plaintiff**

Dr. Laila Mintas
c/o William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606

United States of America
Tel. (312) 883-5500
wjq@quinlanfirm.com

Dr. Laila Mintas
c/o Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America
Tel. (702) 420-7000
jbraster@nblawnv.com

**(c)      Counter-Defendants**

Daniel Simic
PlayUp, Ltd.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

Daniel Simic
PlayUp, Ltd.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**7.      Nature and Purpose of the Proceedings and a Summary of the Case (Article 3(c)):**

**(a)      Nature of the Action**

The above-captioned case is a civil proceeding in the United States District Court for the District of Nevada. The litigation arises primarily out of allegations between the parties that the other party caused a deal between PlayUp and FTX Trading Limited ("FTX") to fail, in addition to other disputes regarding Dr. Mintas' employment contract with PlayUp, defamation, violations of wage-and-hour laws, and breaches of fiduciary duty (among other claims).

### (b)     Summary of Complaint

In its complaint, PlayUp Inc. primarily alleges that in and around November 2021, Dr. Mintas breached fiduciary duties, the confidentiality clause of her employment contract with PlayUp, and the non-disparagement clause of her employment contract—and tortiously interfered with PlayUp Inc.'s business—by sharing confidential information about PlayUp Inc. with third parties, including FTX, disparaging PlayUp and its officers to third parties like FTX, and otherwise causing a potential acquisition of PlayUp by FTX to fail. PlayUp Inc. alleges that Dr. Mintas misappropriated trade secrets as well around this time. PlayUp Inc. also claims that Dr. Mintas breached her non-compete with the company by working for a purported competitor of PlayUp. Finally, PlayUp Inc. alleges that Dr. Mintas tortiously interfered with contractual relations by interfering with its separation negotiations with former PlayUp employee Adrianna Samuels Cuccinello in winter 2022.

### (c)     Summary of Defenses and Counterclaims

Dr. Mintas generally denies PlayUp Inc.'s allegations against her. She alleges that PlayUp Inc.'s officers Daniel Simic and Michael Costa—not her—caused the potential acquisition by FTX to fail by demanding unreasonable and unethical terms, including adding $105 million to the purchase price by asking FTX to buy a company in which they are directors and of which they are beneficiaries (PlayChip) and demanding an additional $65 million in incentives from FTX. Dr. Mintas also alleges that FTX passed on the deal with PlayUp because it discovered that critical U.S. employees, like her, were not part of PlayUp's future business plans. Dr. Mintas denies that she disclosed any trade secrets or confidential information to third parties, denies disparaging PlayUp and its officers, and denies breaching her non-compete. She also contends that PlayUp Inc. cannot establish that it suffered damages as a result of her alleged actions.

Dr. Mintas brings 11 counterclaims against PlayUp Inc., PlayUp Ltd., and Simic. She claims that PlayUp Inc. has abused the U.S. District Court for the District of Nevada's process throughout this litigation and that PlayUp and Simic defamed her and placed her in a false light. Moreover, she claims that PlayUp's officers and employees, including Kerr, fraudulently and misleadingly stating that it would enter into a new employment contract with Dr. Mintas, opening itself to liability for promissory estoppel and fraud. Finally, in claims for breach of contract and employment-law claims under federal and Nevada law, Dr. Mintas alleges that PlayUp failed to pay her compensation owed to her and unjustly enriched itself.

### (d)     Other Necessary Information

PlayUp Ltd., an Australian company, has moved to dismiss the counterclaims against it on the ground that the Court lacks personal jurisdiction over it. Dr. Mintas opposes this motion. PlayUp Ltd.'s motion to dismiss remains pending as of the date of this letter.

**8.**

**(a)     Evidence to be Obtained or Other Judicial Act to be Performed (Article 3(d)):**

Dr. Mintas seeks to depose Amirbeaggi under oath for testimony to be used in the *PlayUp Inc. v. Mintas* proceeding in the U.S. District Court for the District of Nevada.

Dr. Mintas also asks that her request for documents, enumerated in part 11 below, be duly enforced by the Central Authority of Australia against Amirbeaggi. Dr. Mintas contends that the documents in the possession of Amirbeaggi are necessary to defend against essential elements of PlayUp Inc.'s claims against her and to establish certain elements of her counterclaims regarding her employment contract. Accordingly, the assistance of the Central Authority of Australia is hereby sought. It is respectfully requested that, in the interest of justice and for the purpose of discovering evidence for use in the judicial proceeding now being litigated before this Court and for the due determination of the matters in dispute between the parties hereto, the Central Authority of Australia direct, through competent authority, the entry of such orders as the law of Australia permits, compelling Amirbeaggi to be deposed and compelling the production of documents responsive to Dr. Mintas' requests.

**(b)     Purpose of the Evidence or Judicial Act Sought:**

This evidence is intended for use in the above-captioned proceeding between PlayUp Inc., Dr. Mintas, Simic, and PlayUp Ltd. Dr. Mintas wishes to use Amirbeaggi's testimony and information gathered from the documents in Amirbeaggi's possession to establish her counterclaims and to defend against PlayUp Inc.'s claims.

**9.     Identity and Address of Any Person to Be Examined (Article 3(e))**

Farshad Amirbeaggi
Yates Beaggi Lawyers
Level 17
123 Pitt St
Sydney NSW 2000

**10.    Questions to Be Put to the Persons to Be Examined or Statement of the Subject-Matter About Which They Are to Be Examined (Article 3(f))**

Dr. Mintas anticipates questioning Amirbeaggi under oath about the following subject matters:
- Alleged statements made by Dr. Mintas to him in and/or around November 2021, including but not limited to:
    - That Daniel Simic "is a criminal, and he should be charged";
    - That Daniel Simic "[is] a no one" who "is blacklisted in Australia, and he has no credentials";
    - That Daniel Simic "is dodgy" and "a fraud";
    - That she would "make sure they [PlayUp] go into bankruptcy"; and

      o   That she would "burn PlayUp to the ground and make it bankrupt."

- Conversation(s) between Amirbeaggi and Dr. Mintas in and/or around November 2021 concerning the renewal of her employment contract with PlayUp Inc. and/or PlayUp Ltd.

## 11.  Documents or Other Property to be Inspected (Article 3(g))

The following requests for production are requested to be answered pursuant to and modeled on U.S. Federal Rule of Civil Procedure 34 ("Rule 34"). Rule 34 permits a party to request that another party produce relevant documents, provided that those documents are described with particularity and specify when and how they should be produced. Parties typically have 30 days to respond as to whether they will produce such documents or object to their production. In order to fulfill the purpose of these questions for the U.S. proceedings, the executing Court is requested to execute this request in a manner similar to the one provided for in Rule 34.

Nothing in the requests shall call for the disclosure of information that is protected from disclosure under United States or Australian law, including but not limited to, the attorney-client privilege and work-product doctrine. The following are the requested definitions and instructions for the document requests Dr. Mintas seeks to present to Amirbeaggi. Each request is followed by a short explanation of its relevance to the proceedings in the United States.

### <u>INSTRUCTIONS</u>

1.  In each response to these Requests, you are requested to provide not only such documents and electronically stored information as is in your possession, but also documents and electronically stored information as is reasonably available. In the event that you are able to provide only part of the documents and electronically stored information called for by any particular Request, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

2.  If any Request is objectionable, please contact counsel for Dr. Mintas before objecting, in order to attempt to narrow the question or avoid the objectionable portion or aspect.

3.  If you object to or otherwise decline to answer any portion of a Request, please provide all documents or electronically stored information called for by that portion of the Request to which you do not object or to which you do not decline to answer. For those portions of a Request to which you object or to which you decline to answer, state the reason for such objection or declination.

4.  The plural shall mean the singular and vice versa.

5.  The terms "each" and "every" are used inclusively.

6.  The terms "any" and "all" are used inclusively.

7.  If you are asserting a privilege or making an objection to a Request, specifically assert the privilege and basis for the assertion in the written response, and identify as to each privileged communication or document:

    a.   Its date;

    b.   Its author(s);

    c.   The business title or position of its author(s);

    d.   Its recipient(s);

    e.   The business title or position of its recipient(s);

    f.   Its number of pages;

    g.   Its stated subject matter;

h.     The legal basis upon which you claim privilege; and

i.     The specific portion of the Request or document to which the communication or document is responsive.

8.     Produce the documents in native format, including metadata. If native format is not available, produce the documents in Multi-page Portable Document Format ("PDF) images allowing page-level beginning and ending Bates numbering. Each image will be labeled with a production number on the corresponding page. The image file should be uniquely named in accordance with the production number (e.g., BATES000001.PDF). The producing party will provide a document image load file defining document breaks for each set of pages or images produced. For documents with attachments, Beg Attach and End Attach fields should also be included. For any emails, retain family relationships between email and attachment, or identify the family bates range. Provide a load file that includes, at a minimum, the following metadata: Document/Item Date, From, To, CC, BCC, Subject, Attachments, Name/FileName, Author, Custodian, DateCreated, DateModified, MD5Hash, and any confidentiality designation.

9.     Unless otherwise designated, these Requests shall apply to the time period of September 1, 2020, to the present.

### <u>DEFINITIONS</u>

1.     "<u>Affidavit</u>" refers to the affidavit attached as **Exhibit A**.

2.     "<u>Alameda Research LLC</u>" shall refer to Alameda Research LLC, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

3.     "<u>Alameda Ventures Ltd.</u>" shall refer to Alameda Ventures Ltd. and/or Alameda Ventures LTD, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

4.     "<u>Amirbeaggi</u>" shall refer to Farshad Amirbeaggi, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

5.     "<u>Communication</u>" or "<u>communications</u>" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes, telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

6.     "<u>Document</u>," "<u>documents</u>," and "<u>writing</u>" means all records, papers, and books, transcriptions, pictures, drawings or diagrams of every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection with which it is used and includes originals, all file copies, all other copies, not matter how prepared and all drafts prepared in connection with such writing, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; accounts; canceled checks;

catalogues; price lists; video, audio and other electronic recordings; memoranda (including writings regarding conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; spreadsheets; charts; graphs; schedules; letters; handbooks; correspondence; drafts; bulletins; email (including attachments); facsimiles; forms; pamphlets; notices; statements; journals; postcards; letters; publications; inter- and intra-office communications; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; voicemail messages; text messages; WhatsApp messages; instant messages; all electronic data, including that stored on PDAs, smartphones, laptop computers, pagers, desktop computers, cloud computers, hard drives, servers, discs (including CDs and DVDs), flash or thumb drives, and any other data from which information can be obtained through detection devices and translated into reasonably usable form.

7.      "Document" includes every version of every such item.

8.      "Drafted" means drafted, edited, prepared, outlined, and/or wrote.

9.      "FTX" shall refer to FTX Trading Limited and/or FTX Trading Ltd., including but not limited to any employees, officers, or affiliates of it (including but not limited to Alameda Ventures Ltd.); its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

10.      "Mintas" shall refer to Defendant and Counter-Claimant Dr. Laila Mintas, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

11.      "PlayUp Inc." shall refer to PlayUp, Inc., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

12.      "PlayUp Ltd." shall refer to PlayUp Ltd., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

13.      "Person," "persons," "people," and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

14.      "Produce" and "provide" mean to provide a legible true copy of the original of any document and/or communication.

15.      "Relate to," "relating to," "regarding," "concerning," "pertain," and "pertaining to," mean referencing, consisting of, referring to, reflecting, or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

16.      "You" and/or "Your(s)", unless otherwise noted, shall refer to Amirbeaggi.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce all Documents and Communications referring to the "telephone conversation" referenced in Paragraph 2 of Your Affidavit, including any Documents and

Communications with any employees or officers of PlayUp Inc. and/or PlayUp Ltd. about this conversation.

**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing PlayUp Inc.'s and Dr. Mintas' claims relating to the failure of the potential deal between FTX and PlayUp and allegations that Dr. Mintas made disparaging statements about PlayUp, thus providing relevant evidence for PlayUp Inc.'s claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and tortious interference with prospective economic advantage. This evidence is also relevant to Dr. Mintas' claims for abuse of process, defamation per se, and false light.

**12.     Special Methods or Procedures to be Followed (Article 3(i))**

It is respectfully requested that Amirbeaggi be directed to produce the documents identified in Section 11 above and that the responses to the requests for production of documents follow the prescribed methods in the instructions above, which are pursuant to United States procedural guidelines, most notably Federal Rule of Procedure 34. Furthermore, Dr. Mintas requests that Amirbeaggi provide general information regarding responsive documents in his possession over which it claims privilege separately in a privilege log. All documents are requested to be provided in either their original physical or original electronic format.

Furthermore, Amirbeaggi is to be examined in an oral deposition under oath in a form requiring him to attest under penalty of perjury that the testimony he gives is true. A transcript of his testimony will be taken. This Court respectfully requests that the Central Authority direct Amirbeaggi to appear for a deposition on or before January 17, 2024. This Court respectfully requests that attorneys for Dr. Mintas, PlayUp Inc., Simic, and PlayUp Ltd. each be permitted to examine and cross examine Amirbeaggi. This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure of the United States. This Court respectfully requests that the examination be conducted via video conference.

**13.     Request for Notification of the Time and Place of the Execution of the Request and Identity and Address of Any Person to Be Notified (Article 7)**

This Court respectfully requests that the Central Authority notify this Court, the representatives of the parties as identified above, and the witness from whom evidence is requested as identified above.

**14.     Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8)**

No judicial personnel of the requesting authority will attend or participate.

**15.     Specification of the Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11):**

Under the laws of the United States, any person has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that person and that person's

attorney that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly. This attorney-client privilege belongs to the client and can be invoked by the client. A witness also may refuse to give evidence that discloses any information that constitutes the work product of attorneys created during or in anticipation of litigation. If any documents are withheld on such grounds, a statement to that effect should be contemporaneously produced indicating what documents are withheld or redacted and the nature of the privilege claimed.

**16.     Reimbursement (Article 14)**

The fees and costs incurred pursuant to this Request that are reimbursable under the second paragraph of Article 14, or under any other article of, the Hague Evidence Convention that is applicable to Australia will be borne by Dr. Mintas, in care of her attorneys, The Quinlan Law Firm, LLC and Naylor & Braster. Dr. Mintas' payment of any such fees and costs is without prejudice to her making a subsequent request to be reimbursed for these costs by other parties in the matter.

## <u>CLOSING</u>

The Court expresses its appreciation to the Central Authority of Australia for its courtesy and assistance in this matter. It is the understanding of this Court that the granting of assistance of the type herein requested is authorized by the law of Australia and, in particular, by the Hague Evidence Convention.

Date of Request:   <u>February 21, 2024</u>

_____
The Honorable Nancy J. Koppe
United States Magistrate Judge
United States District Court
District of Nevada

**Exhibit A**

1

Form 59
Rule 29.02(1)

**Affidavit**

No.    of 2021

Federal Court of Australia

District Registry: New South Wales

Division: General

**Playup Limited (A.C.N. 612 529 307)**

Applicant

**Laila Mintas**

Respondent

| Affidavit of: | **Farshad Amirbeaggi** |
|---|---|
| Address: | Level 25, 88 Phillip Street Sydney NSW 2000 |
| Occupation: | Principal lawyer |
| Date: | 1 December 2021 |

**Contents**

| Document number | Details | Paragraph | Pages |
|---|---|---|---|
| 1 | Email from Farshad Amirbeaggi dated 27 November 2021 Annexure "A". | 3 | 1-3 |

I, Farshad Amirbeaggi, affirm:

1.      I am a Principal of Yates Beaggi Lawyers (**YBL**). I am from time to time engaged by

---

Filed on behalf of:       Applicant
Prepared by:       Farshad Amirbeaggi       Lawyer's code 37021
Name of law firm:       Yates Beaggi Lawyers
Address for service in Australia:       Level 25, 88 Phillip Street, SYDNEY
                                                    State:   NSW      Postcode:   2000
Email:    farshad@yatesbeaggi.com.au            DX:
Tel:   02 9261 8899         Fax:    02 9261 1779         Attention:   Farshad Amirbeaggi

2

PlayUp Limited A.C.N. 612 529 307 (**PlayUp**) to act as its solicitor.

2.    On 26 November 2021, I had a telephone conversation with the Respondent with words to the following effect:

> **Me:**            *I've had a brief discussion with Daniel and Ross Benson about some disagreement between you and Daniel, that is or has caused the sale of PlayUp to fail. I thought I'd have your side of the story so I can see whether I can help resolve it. As lawyers we always say there are 3 sides to every story, his, yours and then what the other party heard. Can you tell me what's happened?*

> **Respondent:** *Yes. It's been about 2 years since you and I spoke. That was when you were negotiating my contract. My contract expires at the end of November, and Daniel will not agree to my terms. And then many things have happened that confirm to me that Daniel should not even be involved in the company anymore, he should be stood down, and I should be made the Global CEO. Daniel is a criminal, and he should be charged.*

> **Me:**            *Let's break this down a little, and deal with your issues step by step. I know it is Thanks Giving, I have more than 100 family members who reside in the States, so if you want to do this tomorrow, or Sunday, just let me know what time or day works and we can do it another time.*

> **Respondent:** *No no I'm happy to talk to you now, and tell you my concerns.*

> **Me:**            *Good, so then take your time, slow it down, explain it to me like I'm a 5 year old, and let me understand it.*

> **Respondent:** *I have asked for my salary to be increased to $1mil per annum, I've asked for my shareholding to increase to 15%, and to be made Global CEO. I don't want Daniel to have anything to do with PlayUp. He can receive his money for the sale of his shares and go off and do something else. He's a pest controller, so he can go off and start a pest control business again. Who is Daniel, he's a no one. Who is Mick? He's a no one. No one in the States wants to deal with Daniel. We know that he is black listed in Australia, and he has no credentials. No one here trusts him here. They don't even want to deal with him. He's the reason PlayUp couldn't list on the Australian Stock Exchange. When we had the meetings with FTX, Sam would not meet with him and sent two of his people to meet with Daniel because Sam won't sit in the same room as*

3

*Daniel. He doesn't trust him. Daniel is dodgy. That is what they think of him. Sam told me that, and I'm having continuous discussions with Sam about PlayUp and they don't want to deal with Daniel. They want me to take over and run it for them. Not Daniel. They don't even want the Australian business. Daniel has put terms to FTX that none of us agreed to, and he's put his own interests ahead of PlayUp. He's asked for 8 of the Australian team to be signed on with the deal, all with over $1mil salaries, and huge $25mil sign on bonuses for him and I. I didn't ask him to negotiate on my behalf. He has no right to negotiate on my behalf. And then he's asked FTX to pay $105mil for PlayChip. No one agreed to him putting that in as part of the deal, and he's done that to prefer his own interests over PlayUp. And I've asked Ross and Richard about it many   times and they just ignore me so they must also be in on it or own PlayChip with Daniel. I've asked for details of ownership of PlayChip and I am being ignored. Does PlayChip have a shareholding in PlayUp? I don't know. But no one is telling me. I can't even get financial reporting or accounts for PlayUp from Daniel. I have no idea what the financial position is. He raised $12.5mil and we didn't see a cent of it over here. He never pays the bills, and when he finally does its late and causes embarrassment. I don't even know what my shareholding is. I had 11% and now Ross tells me I have 7.5%. I've asked for a shareholders' register, and they can't even send me that month after months of asking. I've had to invest $1.2mil US of my own money into PlayUp to make it work because Daniel and the whole Australian team are unreliable. No one in the States even wants the Australian team or respects them. Who are they? Just a bunch of unqualified people who aren't worth anything. FTX didn't even want to buy the Australian business, and they don't value it. When I started, the Australian business was worth $40mil. The business is now worth $450mil. That is all because of me. Professor Doctor Laila Mintas. A lawyer, and leader in sports gaming. You know my profile. You know who I am. I am PlayUp. Not Daniel. He's a fraud. He should be charged with criminal offences. I've asked Richard to stand Daniel down, and he agrees Daniel should stand down. Ross thinks he should stand down. They all agree that Daniel is not right for the business, and cannot be trusted, so why isn't he being removed? His own staff in Australia don't even respect him. They can't take their concerns to HR because Daniel has had an affair with the HR Manager.*



4

*He can't even manage his own team. It's just a joke. He doesn't deserve to be involved and either he is removed, and I am made the Global CEO, or I'll burn it all to the ground. It's not about the money for me. Me and my husband have a lot of money, so we don't care about the shares and value of PlayUp. If I don't get what I want by 30 November 2021, in my inbox, then I'll burn it all to the ground. I'll contact all the regulators and tell them that the company is delinquent and unreliable and can't be trusted and is run by frauds and request that they undo the licencing. I've got 20 market access agreements that will travel with me. They were given to me. Not to PlayUp. I have everything I need, and I am PlayUp. I'll contact all my contacts in the industry and tell them not to deal with PlayUp. Daniel and the Australian's just don't seem to get that without me they have nothing. Worse, I'll make sure they go into bankruptcy. I have a request from the New Jersey regulator that I need to respond to by 3 December. I will write to them and tell them to pull the licence. Farshad, like the Italian gangster movies you know, I'm just cutting off and posting you guys the fingers. Soon it will be the whole body. I'm just warming up. You will get to see the real Laila Mintas very soon. I will burn it all to the ground and make sure PlayUp goes into bankruptcy. I'm sick of all the Australians ringing me and asking me to calm down and to be sensible when Daniel is the criminal. The answer is simple. Do as I ask, and get rid of Daniel, or watch me burn PlayUp to the ground and make it bankrupt.*

**Me:**     *I'm sure a lot of this is being said in anger Laila. And it might be that you all have to take a 14 day breather or moratorium, and revisit it when the dust has settled and with cool heads. And a lot of this sounds like decisions for shareholders, and not two directors who are having an argument. You might even need an interim CEO whilst you two are in contest. But neither of you can take steps that harm the shareholders, and your language of burning it to the ground is unnecessary. I'll need to have a think about the issues you've raised and how this can be advanced, and then come back to you. But none of it is positive, nor presently acceptable. I'll be suggesting a brief extension to give you both some breathing space and time to visit this without fighting  words    and threats of acts of war. Can I have some time to consider and come back to you?*

**Respondent:**   *We don't have time. Unless I have what I want in my inbox by 30*

5

|  |  |
|---|---|
|  | *November 2021, I will burn it to the ground.* |
| **Ferry Mintas (Laila's husband):** | *listen Farshad, I'm Turkish, and my name is Farsi, so we have things in common. Daniel and the Australians are lucky they are not here because I'd take care of them. My wife has put her last 2 years into this, and I've had to take care of our two daughters. Mum, where's Mum. She's given her life to this, and its only because of her that the business is going somewhere and worth what it is. This is a family decision, and if they don't respect her, then we will do what Laila says. We'll finish them off.* |
| **Me:** | *Guys, you need to take a breath. Laila has been paid to do what she has done for the last 2 years. You need to recognise that. It's obvious there are bottled up, deep rooted, issues that are all coming out now, but you need to calm this down, and open up a dialogue to resolve these issues. Saying you'll burn it to the ground is not a solution, and just not an acceptable position to take. For my part, it requires thought. You need to leave it with me to discuss with Daniel and Ross, and come back to you with any possible way of resolving these issues. I'll try and give it that thought, have those discussions, and come back to you in the next 24 hours.* |
| **Respondent:** | *Anyway, I have told you what my position is. I am happy to see if you can get this resolved for me.* |

3.   Annexed to my affidavit and marked as "**A**" is a copy of an email sent by me to Daniel Simic, Dennis Drazin, (directors of the Applicant), and Ross Benson (director of major shareholder in Applicant) dated 27 November 2021, providing a record of my conversation with the Respondent described in the preceding paragraph.

Affirmed by the deponent            )
at SYDNEY                               )
in New South Wales                    )    _____
on 1 December 2021                   )    Signature of deponent

Before me:

Name of witness          Matthew Gradidge
Address of witness       25/88 Phillip Street, Sydney NSW 2000
Capacity of witness      Solicitor

6

And as a witness, I certify the following matters concerning the person who made this affidavit (the **deponent**):

1        I saw the face of the deponent.

2        I have confirmed the deponent's identity using the following identification
         document:

*NSW    Drivers    Licence*
_____

Identification document relied on (may be original or certified copy)[1]

Signature of witness

_____

If applicable, this affidavit:

- was signed pursuant to direction 5 of the *FCFCOA Practice Direction - COVID-19 Special Measures re-issued 7 September 2021*;
- was signed pursuant to direction 4 of the Federal Court of Australia *Special Measures in Response to Covid-19 (SMIN-1)* updated 21 March 2020.
- signed and witnessed over audio visual link in accordance with section 14G of the *Electronic Transactions Act 2000* (NSW).

1

Form 59
Rule 29.02(1)

**Affidavit**

No.       of 2021

Federal Court of Australia

District Registry: Sydney

Division: General

**Playup Limited (A.C.N. 612 529 307)**
Applicant

**Laila Mintas**
Respondent

| | | |
|---|---|---|
| Affidavit of: | **Farshad Amirbeaggi** | |
| Address: | Level 25, 88 Phillip Street Sydney NSW 2000 | |
| Occupation: | Principal lawyer | |
| Date: | 1 December 2021 | |

**Contents**

| Document number | Details | Paragraph | Pages |
|---|---|---|---|
| - | - | - | - |

I, Farshad Amirbeaggi, affirm:

1.      I am a Principal of Yates Beaggi Lawyers (**YBL**). I am from time to time engaged by PlayUp Limited A.C.N. 612 529 307 (**PlayUp**) to act as its solicitor.

| | |
|---|---|
| Filed on behalf of: | Applicant |
| Prepared by: | Farshad Amirbeaggi           Lawyer's code  37021 |
| Name of law firm: | Yates Beaggi Lawyers |
| Address for service in Australia: | Level 25, 88 Phillip Street, SYDNEY |
| | State:   NSW      Postcode:   2000 |
| Email:   farshad@yatesbeaggi.com.au | DX: |
| Tel:   02 9261 8899          Fax:     02 9261 1779          Attention:   Farshad Amirbeaggi | |

2

2.      I refer to my filed affidavit affirmed on 1 December 2021 (**my first affidavit**).

3.      I declare under penalty of perjury under the laws of the United States of America that the contents of my first affidavit and this affidavit is true and correct. Executed on the date affirmed.

| | |
|---|---|
| Affirmed by the deponent | ) |
| at SYDNEY | ) |
| in New South Wales | ) |
| on 1 December 2021 | ) |

Signature of deponent

Before me:

Name of witness      Matthew Gradidge

Address of witness      25/88 Phillip Street SYDNEY NSW 2000

Capacity of witness      Solicitor

And as a witness, I certify the following matters concerning the person who made this affidavit (the **deponent**):

1      I saw the face of the deponent.

2      I have confirmed the deponent's identity using the following identification document:

NSW Drivers Licence

Identification document relied on (may be original or certified copy)[1]

Signature of witness

If applicable, this affidavit:

- was signed pursuant to direction 5 of the *FCFCOA Practice Direction - COVID-19 Special Measures re-issued 7 September 2021*;
- was signed pursuant to direction 4 of the Federal Court of Australia *Special Measures in Response to Covid-19 (SMIN-1)* updated 21 March 2020.
- signed and witnessed over audio visual link in accordance with section 14G of the *Electronic Transactions Act 2000* (NSW).

**Brooke Maniscalco**

**Subject:**                    FW: 2019.11.22 - Laila Employment Agreement signed.pdf

-----Original Message-----
From: Farshad Amirbeaggi <farshad@yatesbeaggi.com.au>
Sent: Saturday, 27 November 2021 1:31 PM
To: Dennis Drazin <DDrazin@DrazinandWarshaw.com>
Cc: Daniel Simic <daniel.simic@playup.com>; Ross Benson <rbenson@investorlink.com.au>; Brooke Maniscalco <brooke@yatesbeaggi.com.au>
Subject: RE: 2019.11.22 - Laila Employment Agreement signed.pdf

*This is Annexure "A" to the Affidavit of Farshad Amirbeaggi Affirmed 1 December 2021, before me* [handwritten annotation]

Record of my discussion (and overheard by Brooke Maniscalco of my office) with Laila, and party her husband Fereidoon (Ferry), on 26 November 2021:

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |BEGINS| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

FA: I've had a brief discussion with Daniel and Ross Benson about some disagreement between you and Daniel, that is or has caused the sale of PlayUp to fail. I thought I'd have your side of the story so I can see whether I can help resolve it. As lawyers we always say there are 3 sides to every story, his, yours and then what the other party heard. Can you tell me what's happened?

LM: Yes. It's been about 2 years since you and I spoke. That was when you were negotiating my contract. My contract expires at the end of November, and Daniel will not agree to my terms. And then many things have happened that confirm to me that Daniel should not even be involved in the company anymore, he should be stood down, and I should be made the Global CEO. Daniel is a criminal, and he should be charged.

FA: Let's break this down a little, and deal with your issues step by step. I know it is Thanks Giving, I have more than 100 family members who reside in the States, so if you want to do this tomorrow, or Sunday, just let me know what time or day works and we can do it another time.

LM: No no I'm happy to talk to you now, and tell you my concerns.

FA: Good, so then take your time, slow it down, explain it to me like I'm a 5 year old, and let me understand it.

LM: I have asked for my salary to be increased to $1mil per annum, I've asked for my shareholding to increase to 15%, and to be made Global CEO. I don't want Daniel to have anything to do with PlayUp. He can receive his money for the sale of his shares and go off and do something else. He's a pest controller, so he can go off and start a pest control business again. Who is Daniel, he's a no one. Who is Mick? He's a no one. No one in the States wants to deal with Daniel. We know that he is black listed in Australia, and he has no credentials. No one here trusts him here. They don't even want to deal with him. He's the reason PlayUp couldn't list on the Australian Stock Exchange. When we had the meetings with FTX, Sam would not meet with him and sent two of his people to meet with Daniel because Sam won't sit in the same room as Daniel. He doesn't trust him. Daniel is dodgy. That is what they think of him. Sam told me that, and I'm having continuous discussions with Sam about PlayUp and they don't want to deal with Daniel. They want me to take over and run it for them. Not Daniel. They don't even want the Australian business. Daniel has put terms to FTX that none of us agreed to, and he's put his own interests ahead of PlayUp. He's asked for 8 of the Australian team to be signed on with the deal, all with over $1mil salaries, and huge $25mil sign on bonuses for him and I. I didn't ask him to negotiate on my behalf. He has no right to negotiate on my behalf. And then he's asked FTX to pay $105mil for PlayChip. No one agreed to him putting that in as part of the deal, and he's done that to prefer his own interests over PlayUp. And I've asked Ross and Richard about it many times and they just ignore me so they must also be in on it or own PlayChip with Daniel. I've asked for details of ownership of PlayChip and I am being ignored. Does PlayChip have a shareholding in PlayUp? I don't know. But no one is telling me. I can't even get financial reporting or accounts for PlayUp from Daniel. I have no idea what the financial position is. He

1

raised $12.5mil and we didn't see a cent of it over here. He never pays the bills, and when he finally does its late and causes embarrassment. I don't even know what my shareholding is. I had 11% and now Ross tells me I have 7.5%. I've asked for a shareholders register, and they can't even send me that month after months of asking. I've had to invest $1.2mil US of my own money into PlayUp to make it work because Daniel and the whole Australian team is unreliable. No one in the States even wants the Australian team or respects them. Who are they? Just a bunch of unqualified people who aren't worth anything. FTX didn't even want to buy the Australian business, and they don't value it. When I started, the Australian business was worth $40mil. The business is now worth $450mil. That is all because of me. Professor Doctor Laila Mintas. A lawyer, and leader in sports gaming. You know my profile. You know who I am. I am PlayUp. Not Daniel. He's a fraud. He should be charged with criminal offences. I've asked Richard to stand Daniel down, and he agrees Daniel should stand down. Ross thinks he should stand down. They all agree that Daniel is not right for the business, and cannot be trusted, so why isn't he being removed? His own staff in Australia don't even respect him. They can't take their concerns to HR because Daniel has had an affair with the HR Manager. He can't even manage his own team. It's just a joke. He doesn't deserve to be involved and either he is removed and I am made the Global CEO or I'll burn it all to the ground. It's not about the money for me. Me and my husband have a lot of money, so we don't care about the shares and value of PlayUp. If I don't get what I want by 30 November 2021, in my inbox, then I'll burn it all to the ground. I'll contact all of the regulators and tell them that the company is delinquent and unreliable and can't be trusted and is run by frauds and request that they undo the licencing. I've got 20 market access agreements that will travel with me. They were given to me. Not to PlayUp. I have everything I need and I am PlayUp. I'll contact all my contacts in the industry, and tell them not to deal with PlayUp. Daniel and the Australian's just don't seem to get that without me they have nothing. Worse, I'll make sure they go into bankruptcy. I have a request from the New Jersey regulator that I need to respond to by 3 December. I will write to them and tell them to pull the licence. Farshad, like the Italian gangster movies you know, I'm just cutting off and posting you guys the fingers. Soon it will be the whole body. I'm just warming up. You will get to see the real Laila Mintas very soon. I will burn it all to the ground and make sure PlayUp goes into bankruptcy. I'm sick of all the Australians ringing me and asking me to calm down and to be sensible when Daniel is the criminal. The answer is simple. Do as I ask, and get rid of Daniel, or watch me burn PlayUp to the ground and make it bankrupt.

FA: I'm sure a lot of this is being said in anger Laila. And it might be that you all have to take a 14 day breather or moratorium, and revisit it when the dust has settled and with cool heads. And a lot of this sounds like decisions for shareholders, and not two directors who are having an argument. You might even need an interim CEO whilst you two are in contest. But neither of you can take steps that harm the shareholders, and your language of burning it to the ground is unnecessary. I'll need to have a think about the issues you've raised and how this can be advanced, and then come back to you. But none of it is positive, or presently acceptable. I'll be suggesting a brief extension to give you both some breathing space and time to visit this without fighting words and threats of acts of war. Can I have some time to consider and come back to you?

LM: We don't have time. Unless I have what I want in my inbox by 30 November 2021, I will burn it to the ground.

FM: (Ferry Mintas) listen Farshad, I'm Turkish, and my name is Farsi, so we have things in common. Daniel and the Australians are lucky they are not here because I'd take care of them. My wife has put her last 2 years into this, and I've had to take care of our two daughters. Mum, where's Mum. She's given her life to this, and its only because of her that the business is going somewhere and worth what it is. This is a family decision, and if they don't respect her, then we will do what Laila says. We'll finish them off.

FA: Guys, you need to take a breath. Laila has been paid to do what she has done for the last 2 years. You need to recognise that. It's obvious there are bottled up, deep rooted, issues that are all coming out now, but you need to calm this down, and open up a dialogue to resolve these issues. Saying you'll burn it to the ground is not a solution, and just not an acceptable position to take. For my part, it requires thought. You need to leave it with me to discuss with Daniel and Ross, and come back to you with any possible way of resolving these issues. I'll try and give it that thought, have those discussions, and come back to you in the next 24 hours.

LM: Anyway I have told you what my position is. I am happy to see if you can get this resolved for me.

||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||ENDS||||||||||||||
||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

f

Farshad Amirbeaggi | Principal
Yates Beaggi Lawyers | Incorporated Legal Practice

Level 25, 88 Phillip Street Sydney NSW 2000 | T +61 2 9261 8899 | M +61 418 102 068 | www.yatesbeaggi.com.au

Disclaimer: This message contains privileged and confidential information. If you are not the intended recipient you must not disseminate, copy or take any action in reliance on it, and we request that you notify Yates Beaggi Lawyers immediately. Any views expressed in this message are those of the individual sender, except where they are specifically stated to be the views of Yates Beaggi Lawyers. Liability limited by a scheme approved under Professional Standards Legislation.

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE  CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS TO OBTAIN RELEVANT PHYSICAL EVIDENCE AND TESTIMONY FROM ROSS KENNETH BENSON

The Honorable Nancy J. Koppe, United States Magistrate Judge, of the District Court for the District of Nevada, presents her compliments to the Central Authority of Australia, and requests international judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Evidence Convention"), to obtain evidence to be used in the above-captioned civil proceeding before this Court. This Court has determined that it would further the interests of justice if Ross Kenneth Benson ("Benson") provided documents in its possession and deposition testimony relevant to the issues in this case.

This Request has been made upon the motion of Defendant and Counter-Plaintiff Dr. Laila Mintas, who has advised the Court that the evidence sought from Benson as to the issues in this case is relevant and necessary for the due determination of the matters in dispute between the parties in this case involving allegations of breaches of contract, breaches of the implied covenant of good faith and fair dealing, breaches of fiduciary duty, violations of the Nevada Uniform Trade Secrets Act, tortious interference with contractual relations, tortious interference with prospective economic advantage, abuse of process, defamation per se, false light, promissory estoppel, fraud, unjust enrichment, violations of the Fair Labor Standards Act, violations of the Nevada Constitution, and violations of Nevada Revised Statute §§ 608.018 and 608.140. Having considered the submissions of the parties, this Court has found that this Request is necessary in the interests of justice and for the purpose of a full and fair determination of the matters in issue among the parties to the pending proceeding.

### SECTION I

**1.      Sender**

The Honorable Nancy J. Koppe
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**2.      Central Authority of the Requested State:**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**3.      Persons to Whom the Executed Request Is to Be Returned**

William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
United States of America

Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America

Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America

Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America

**4. Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request**

March 8, 2024

**Reason for urgency:**

Discovery in this litigation closes on April 1, 2024.

**SECTION II**

**In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the undersigned applicant has the honor to submit the following request:**

**5.**
**(a)      Requesting Judicial Authority (Article 3(a))**

The Honorable Nancy J. Koppe
United States Magistrate Judge

District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**(b)**      **To the Central Authority of Australia**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**(c)**      **Name of the Case and any Identifying Number**

*PlayUp, Inc. v. Mintas*, Case No. 2:21-cv-02129-GMN-NJK, United States District Court for the
District of Nevada.

**6.**      **Names and Addresses of the Parties and Their Representatives (Article 3(b))**

**(a)**      **Plaintiff / Counter-Defendant**

PlayUp, Inc.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

PlayUp, Inc.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**(b)**      **Defendant / Counter-Plaintiff**

Dr. Laila Mintas
c/o William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606

United States of America
Tel. (312) 883-5500
wjq@quinlanfirm.com

Dr. Laila Mintas
c/o Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America
Tel. (702) 420-7000
jbraster@nblawnv.com

**(c)      Counter-Defendants**

Daniel Simic
PlayUp, Ltd.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

Daniel Simic
PlayUp, Ltd.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**7.      Nature and Purpose of the Proceedings and a Summary of the Case (Article 3(c)):**

**(a)      Nature of the Action**

The above-captioned case is a civil proceeding in the United States District Court for the District of Nevada. The litigation arises primarily out of allegations between the parties that the other party caused a deal between PlayUp and FTX Trading Limited ("FTX") to fail, in addition to other disputes regarding Dr. Mintas' employment contract with PlayUp, defamation, violations of wage-and-hour laws, and breaches of fiduciary duty (among other claims).

### (b)    Summary of Complaint

In its complaint, PlayUp Inc. primarily alleges that in and around November 2021, Dr. Mintas breached fiduciary duties, the confidentiality clause of her employment contract with PlayUp, and the non-disparagement clause of her employment contract—and tortiously interfered with PlayUp Inc.'s business—by sharing confidential information about PlayUp Inc. with third parties, including FTX, disparaging PlayUp and its officers to third parties like FTX, and otherwise causing a potential acquisition of PlayUp by FTX to fail. PlayUp Inc. alleges that Dr. Mintas misappropriated trade secrets as well around this time. PlayUp Inc. also claims that Dr. Mintas breached her non-compete with the company by working for a purported competitor of PlayUp. Finally, PlayUp Inc. alleges that Dr. Mintas tortiously interfered with contractual relations by interfering with its separation negotiations with former PlayUp employee Adrianna Samuels Cuccinello in winter 2022.

### (c)    Summary of Defenses and Counterclaims

Dr. Mintas generally denies PlayUp Inc.'s allegations against her. She alleges that PlayUp Inc.'s officers Daniel Simic and Michael Costa—not her—caused the potential acquisition by FTX to fail by demanding unreasonable and unethical terms, including adding $105 million to the purchase price by asking FTX to buy a company in which they are directors and of which they are beneficiaries (PlayChip) and demanding an additional $65 million in incentives from FTX. Dr. Mintas also alleges that FTX passed on the deal with PlayUp because it discovered that critical U.S. employees, like her, were not part of PlayUp's future business plans. Dr. Mintas denies that she disclosed any trade secrets or confidential information to third parties, denies disparaging PlayUp and its officers, and denies breaching her non-compete. She also contends that PlayUp Inc. cannot establish that it suffered damages as a result of her alleged actions.

Dr. Mintas brings 11 counterclaims against PlayUp Inc., PlayUp Ltd., and Simic. She claims that PlayUp Inc. has abused the U.S. District Court for the District of Nevada's process throughout this litigation and that PlayUp and Simic defamed her and placed her in a false light. Moreover, she claims that PlayUp's officers and employees, fraudulently and misleadingly stating that it would enter into a new employment contract with Dr. Mintas, opening itself to liability for promissory estoppel and fraud. Finally, in claims for breach of contract and employment-law claims under federal and Nevada law, Dr. Mintas alleges that PlayUp failed to pay her compensation owed to her and unjustly enriched itself.

### (d)    Other Necessary Information

PlayUp Ltd., an Australian company, has moved to dismiss the counterclaims against it on the ground that the Court lacks personal jurisdiction over it. Dr. Mintas opposes this motion. PlayUp Ltd.'s motion to dismiss remains pending as of the date of this letter.

8.

**(a)      Evidence to be Obtained or Other Judicial Act to be Performed (Article 3(d)):**

Dr. Mintas seeks to depose Benson under oath for testimony to be used in the *PlayUp Inc. v. Mintas* proceeding in the U.S. District Court for the District of Nevada.

Dr. Mintas also asks that her request for documents, enumerated in part 11 below, be duly enforced by the Central Authority of Australia against Benson. Dr. Mintas contends that the documents in the possession of Benson are necessary to defend against essential elements of PlayUp Inc.'s claims against her and to establish certain elements of her counterclaims regarding her employment contract. Accordingly, the assistance of the Central Authority of Australia is hereby sought. It is respectfully requested that, in the interest of justice and for the purpose of discovering evidence for use in the judicial proceeding now being litigated before this Court and for the due determination of the matters in dispute between the parties hereto, the Central Authority of Australia direct, through competent authority, the entry of such orders as the law of Australia permits, compelling Benson to be deposed and compelling the production of documents responsive to Dr. Mintas' requests.

**(b)      Purpose of the Evidence or Judicial Act Sought:**

This evidence is intended for use in the above-captioned proceeding between PlayUp Inc., Dr. Mintas, Simic, and PlayUp Ltd. Dr. Mintas wishes to use Benson's testimony and information gathered from the documents in Benson's possession to establish her counterclaims and to defend against PlayUp Inc.'s claims.

**9.      Identity and Address of Any Person to Be Examined (Article 3(e))**

Ross Benson
Level 26
56 Pitt Street
Sydney, NSW 2000

**10.     Questions to Be Put to the Persons to Be Examined or Statement of the Subject-Matter About Which They Are to Be Examined (Article 3(f))**

Dr. Mintas anticipates questioning Benson under oath about the following subject matters:

- The negotiation and potential renewal of Dr. Mintas' employment contract with PlayUp in 2021, including all communications about the renewal of her contract observed or participated in by Benson and the terms of the negotiations between PlayUp and Dr. Mintas about her contract;
- All board meetings regarding executive compensation, the terms of Dr. Mintas' new contract proposed by PlayUp and/or Dr. Mintas, and/or the renewal of Dr. Mintas' employment contract with PlayUp that Benson attended or has knowledge about;
- The business of PlayUp Inc. and PlayUp Ltd., including the composition and role of any boards of directors, any subsidiaries and affiliated companies, and the roles of officers such as Daniel Simic and Dr. Mintas;

- Allegedly disparaging statements made by Dr. Mintas to Benson about PlayUp Inc., PlayUp Ltd., and/or Simic, including any alleged statements on or about November 25, November 27, November 28, and/or December 1, 2021; and
- The proposed deal between PlayUp Inc. and/or PlayUp Ltd. and FTX which FTX rejected, including PlayUp Inc. and/or PlayUp Ltd.'s response to FTX's rejection of the proposed transaction between it and PlayUp Inc. and/or PlayUp Ltd.

**11.    Documents or Other Property to be Inspected (Article 3(g))**

The following requests for production are requested to be answered pursuant to and modeled on U.S. Federal Rule of Civil Procedure 34 ("Rule 34"). Rule 34 permits a party to request that another party produce relevant documents, provided that those documents are described with particularity and specify when and how they should be produced. Parties typically have 30 days to respond as to whether they will produce such documents or object to their production. In order to fulfill the purpose of these questions for the U.S. proceedings, the executing Court is requested to execute this request in a manner similar to the one provided for in Rule 34.

Nothing in the requests shall call for the disclosure of information that is protected from disclosure under United States or Australian law, including but not limited to, the attorney-client privilege and work-product doctrine. The following are the requested definitions and instructions for the document requests Dr. Mintas seeks to present to Benson. Each request is followed by a short explanation of its relevance to the proceedings in the United States.

## <u>INSTRUCTIONS</u>

1.    In each response to these Requests, you are requested to provide not only such documents and electronically stored information as is in your possession, but also documents and electronically stored information as is reasonably available. In the event that you are able to provide only part of the documents and electronically stored information called for by any particular Request, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

2.    If any Request is objectionable, please contact counsel for Dr. Mintas before objecting, in order to attempt to narrow the question or avoid the objectionable portion or aspect.

3.    If you object to or otherwise decline to answer any portion of a Request, please provide all documents or electronically stored information called for by that portion of the Request to which you do not object or to which you do not decline to answer. For those portions of a Request to which you object or to which you decline to answer, state the reason for such objection or declination.

4.    The plural shall mean the singular and vice versa.

5.    The terms "each" and "every" are used inclusively.

6.    The terms "any" and "all" are used inclusively.

7.    If you are asserting a privilege or making an objection to a Request, specifically assert the privilege and basis for the assertion in the written response, and identify as to each privileged communication or document:

a.    Its date;

b.    Its author(s);

c.    The business title or position of its author(s);

d.    Its recipient(s);

e.    The business title or position of its recipient(s);

f.    Its number of pages;

g.    Its stated subject matter;

h.    The legal basis upon which you claim privilege; and

i.    The specific portion of the Request or document to which the communication or document is responsive.

8.    Produce the documents in native format, including metadata. If native format is not available, produce the documents in Multi-page Portable Document Format ("PDF) images allowing page-level beginning and ending Bates numbering. Each image will be labeled with a production number on the corresponding page. The image file should be uniquely named in accordance with the production number (e.g., BATES000001.PDF). The producing Party will provide a document image load file defining document breaks for each set of pages or images produced. For documents with attachments, Beg Attach and End Attach fields should also be included. For any emails, retain family relationships between email and attachment, or identify the family bates range. Provide a load file that includes, at a minimum, the following metadata: Document/Item Date, From, To, CC, BCC, Subject, Attachments, Name/FileName, Author, Custodian, DateCreated, DateModified, MD5Hash, and any confidentiality designation.

9.    Unless otherwise designated, these Requests shall apply to the time period of July 1, 2019, to the present.

## **DEFINITIONS**

1.    "Alameda Research LLC" shall refer to Alameda Research LLC, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

2.    "Alameda Ventures Ltd." shall refer to Alameda Ventures Ltd. and/or Alameda Ventures LTD, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

3.    "Benson" shall refer to Ross Benson, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

4.    "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes, telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

5.    "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams of every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection with which it is used and includes originals, all file copies, all other copies, not matter how prepared and all drafts

prepared in connection with such writing, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including writings regarding conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; spreadsheets; charts; graphs; schedules; letters; handbooks; correspondence; drafts; bulletins; email (including attachments); facsimiles; forms; pamphlets; notices; statements; journals; postcards; letters; publications; inter- and intra-office communications; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; voicemail messages; text messages; WhatsApp messages; instant messages; all electronic data, including that stored on PDAs, smartphones, laptop computers, pagers, desktop computers, cloud computers, hard drives, servers, discs (including CDs and DVDs), flash or thumb drives, and any other data from which information can be obtained through detection devices and translated into reasonably usable form.

6. "Document" includes every version of every such item.

7. "Drafted" means drafted, edited, prepared, outlined, and/or wrote.

8. "FTX" shall refer to FTX Trading Limited and/or FTX Trading Ltd., including but not limited to any employees, officers, or affiliates of it (including but not limited to Alameda Ventures Ltd.); its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

9. "Kerr" shall refer to Ashley Kerr, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

10. "Mintas" shall refer to Defendant and Counter-Claimant Dr. Laila Mintas, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

11. "PlayUp Inc." shall refer to PlayUp, Inc., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

12. "PlayUp Ltd." shall refer to PlayUp Ltd., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

13. "Person," "persons," "people," and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

14. "Produce" and "provide" mean to provide a legible true copy of the original of any document and/or communication.

15. "Relate to," "relating to," "regarding," "concerning," "pertain," and "pertaining to," mean referencing, consisting of, referring to, reflecting, or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

16.    "<u>You</u>" and/or "<u>Your(s)</u>", unless otherwise noted, shall refer to Benson.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    Produce all Documents and Communications between October 1, 2021, and December 31, 2021, referring to the negotiations between PlayUp Inc. and/or PlayUp Ltd., on the one hand, and Dr. Mintas, on the other hand, to renew her employment contract.

**Relevance:**    The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud.

2.    Produce all Documents and Communications referring to any conversations (whether oral or otherwise) (a) including You and Dr. Mintas on or about November 25, 2021; November 27, 2021; November 28, 2021; November 30, 2021; December 1, 2021; and/or December 5, 2021; and (b) which referred to FTX, PlayUp Ltd., PlayUp Inc., and/or Simic.

**Relevance:**    The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud and PlayUp Inc.'s claims of breach of contract and breach of fiduciary duty.

## 12.    Special Methods or Procedures to be Followed (Article 3(i))

It is respectfully requested that Benson be directed to produce the documents identified in Section 11 above and that the responses to the requests for production of documents follow the prescribed methods in the instructions above, which are pursuant to United States procedural guidelines, most notably Federal Rule of Procedure 34. Furthermore, Dr. Mintas requests that Benson provide general information regarding responsive documents in his possession over which it claims privilege separately in a privilege log. All documents are requested to be provided in either their original physical or original electronic format.

Furthermore, Benson is to be examined in an oral deposition under oath in a form requiring him to attest under penalty of perjury that the testimony he gives is true. A transcript of his testimony will be taken. This Court respectfully requests that the Central Authority direct Benson to appear for a deposition on or before January 19, 2024. This Court respectfully requests that attorneys for Dr. Mintas, PlayUp Inc., Simic, and PlayUp Ltd. each be permitted to examine and cross examine Benson. This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure of the United States. This Court respectfully requests that the examination be conducted via video conference.

## 13.    Request for Notification of the Time and Place of the Execution of the Request and Identity and Address of Any Person to Be Notified (Article 7)

This Court respectfully requests that the Central Authority notify this Court, the representatives of the parties as identified above, and the witness from whom evidence is requested as identified above.

14.  **Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8)**

No judicial personnel of the requesting authority will attend or participate.

15.  **Specification of the Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11):**

Under the laws of the United States, any person has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that person and that person's attorney that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly. This attorney-client privilege belongs to the client and can be invoked by the client. A witness also may refuse to give evidence that discloses any information that constitutes the work product of attorneys created during or in anticipation of litigation. If any documents are withheld on such grounds, a statement to that effect should be contemporaneously produced indicating what documents are withheld or redacted and the nature of the privilege claimed.

16.  **Reimbursement (Article 14)**

The fees and costs incurred pursuant to this Request that are reimbursable under the second paragraph of Article 14, or under any other article of, the Hague Evidence Convention that is applicable to Australia will be borne by Dr. Mintas, in care of her attorneys, The Quinlan Law Firm, LLC and Naylor & Braster. Dr. Mintas' payment of any such fees and costs is without prejudice to her making a subsequent request to be reimbursed for these costs by other parties in the matter.

## <u>CLOSING</u>

The Court expresses its appreciation to the Central Authority of Australia for its courtesy and assistance in this matter. It is the understanding of this Court that the granting of assistance of the type herein requested is authorized by the law of Australia and, in particular, by the Hague Evidence Convention.

Date of Request:  <u>February 21, 2024</u>

<u> </u>
The Honorable Nancy J. Koppe
United States Magistrate Judge
United States District Court
District of Nevada

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE
HAGUE  CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS TO OBTAIN RELEVANT
PHYSICAL EVIDENCE AND TESTIMONY FROM ASHLEY KERR**

The Honorable Nancy J. Koppe, United States Magistrate Judge, of the District Court for the District of Nevada, presents her compliments to the Central Authority of Australia, and requests international judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Evidence Convention"), to obtain evidence to be used in the above-captioned civil proceeding before this Court. This Court has determined that it would further the interests of justice if Ashley Kerr ("Kerr") provided documents in its possession and deposition testimony relevant to the issues in this case.

This Request has been made upon the motion of Defendant and Counter-Plaintiff Dr. Laila Mintas, who has advised the Court that the evidence sought from Kerr as to the issues in this case is relevant and necessary for the due determination of the matters in dispute between the parties in this case involving allegations of breaches of contract, breaches of the implied covenant of good faith and fair dealing, breaches of fiduciary duty, violations of the Nevada Uniform Trade Secrets Act, tortious interference with contractual relations, tortious interference with prospective economic advantage, abuse of process, defamation per se, false light, promissory estoppel, fraud, unjust enrichment, violations of the Fair Labor Standards Act, violations of the Nevada Constitution, and violations of Nevada Revised Statute §§ 608.018 and 608.140. Having considered the submissions of the parties, this Court has found that this Request is necessary in the interests of justice and for the purpose of a full and fair determination of the matters in issue among the parties to the pending proceeding.

## SECTION I

1.      **Sender**

The Honorable Nancy J. Koppe
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

2.      **Central Authority of the Requested State:**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**3.     Persons to Whom the Executed Request Is to Be Returned**

William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
United States of America

Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America

Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America

Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America

**4. Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request**

March 8, 2024

**Reason for urgency:**

Discovery in this litigation closes on April 1, 2024.

## SECTION II

**In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the undersigned applicant has the honor to submit the following request:**

**5.**
**(a)     Requesting Judicial Authority (Article 3(a))**

The Honorable Nancy J. Koppe
United States Magistrate Judge

District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**(b)      To the Central Authority of Australia**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**(c)      Name of the Case and any Identifying Number**

*PlayUp, Inc. v. Mintas*, Case No. 2:21-cv-02129-GMN-NJK, United States District Court for the
District of Nevada.

**6.      Names and Addresses of the Parties and Their Representatives (Article 3(b))**

**(a)      Plaintiff / Counter-Defendant**

PlayUp, Inc.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

PlayUp, Inc.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**(b)      Defendant / Counter-Plaintiff**

Dr. Laila Mintas
c/o William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606

United States of America
Tel. (312) 883-5500
wjq@quinlanfirm.com

Dr. Laila Mintas
c/o Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America
Tel. (702) 420-7000
jbraster@nblawnv.com

**(c)**      **Counter-Defendants**

Daniel Simic
PlayUp, Ltd.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

Daniel Simic
PlayUp, Ltd.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**7.**      **Nature and Purpose of the Proceedings and a Summary of the Case (Article 3(c)):**

**(a)      Nature of the Action**

The above-captioned case is a civil proceeding in the United States District Court for the District of Nevada. The litigation arises primarily out of allegations between the parties that the other party caused a deal between PlayUp and FTX Trading Limited ("FTX") to fail, in addition to other disputes regarding Dr. Mintas' employment contract with PlayUp, defamation, violations of wage-and-hour laws, and breaches of fiduciary duty (among other claims).

### (b)   Summary of Complaint

In its complaint, PlayUp Inc. primarily alleges that in and around November 2021, Dr. Mintas breached fiduciary duties, the confidentiality clause of her employment contract with PlayUp, and the non-disparagement clause of her employment contract—and tortiously interfered with PlayUp Inc.'s business—by sharing confidential information about PlayUp Inc. with third parties, including FTX, disparaging PlayUp and its officers to third parties like FTX, and otherwise causing a potential acquisition of PlayUp by FTX to fail. PlayUp Inc. alleges that Dr. Mintas misappropriated trade secrets as well around this time. PlayUp Inc. also claims that Dr. Mintas breached her non-compete with the company by working for a purported competitor of PlayUp. Finally, PlayUp Inc. alleges that Dr. Mintas tortiously interfered with contractual relations by interfering with its separation negotiations with former PlayUp employee Adrianna Samuels Cuccinello in winter 2022.

### (c)   Summary of Defenses and Counterclaims

Dr. Mintas generally denies PlayUp Inc.'s allegations against her. She alleges that PlayUp Inc.'s officers Daniel Simic and Michael Costa—not her—caused the potential acquisition by FTX to fail by demanding unreasonable and unethical terms, including adding $105 million to the purchase price by asking FTX to buy a company in which they are directors and of which they are beneficiaries (PlayChip) and demanding an additional $65 million in incentives from FTX. Dr. Mintas also alleges that FTX passed on the deal with PlayUp because it discovered that critical U.S. employees, like her, were not part of PlayUp's future business plans. Dr. Mintas denies that she disclosed any trade secrets or confidential information to third parties, denies disparaging PlayUp and its officers, and denies breaching her non-compete. She also contends that PlayUp Inc. cannot establish that it suffered damages as a result of her alleged actions.

Dr. Mintas brings 11 counterclaims against PlayUp Inc., PlayUp Ltd., and Simic. She claims that PlayUp Inc. has abused the U.S. District Court for the District of Nevada's process throughout this litigation and that PlayUp and Simic defamed her and placed her in a false light. Moreover, she claims that PlayUp's officers and employees, including Kerr, fraudulently and misleadingly stating that it would enter into a new employment contract with Dr. Mintas, opening itself to liability for promissory estoppel and fraud. Finally, in claims for breach of contract and employment-law claims under federal and Nevada law, Dr. Mintas alleges that PlayUp failed to pay her compensation owed to her and unjustly enriched itself.

### (d)   Other Necessary Information

PlayUp Ltd., an Australian company, has moved to dismiss the counterclaims against it on the ground that the Court lacks personal jurisdiction over it. Dr. Mintas opposes this motion. PlayUp Ltd.'s motion to dismiss remains pending as of the date of this letter.

**8.**

**(a)    Evidence to be Obtained or Other Judicial Act to be Performed (Article 3(d)):**

Dr. Mintas seeks to depose Kerr under oath for testimony to be used in the *PlayUp Inc. v. Mintas* proceeding in the U.S. District Court for the District of Nevada.

Dr. Mintas also asks that her request for documents, enumerated in part 11 below, be duly enforced by the Central Authority of Australia against Kerr. Dr. Mintas contends that the documents in the possession of Kerr are necessary to defend against essential elements of PlayUp Inc.'s claims against her and to establish certain elements of her counterclaims regarding her employment contract. Accordingly, the assistance of the Central Authority of Australia is hereby sought. It is respectfully requested that, in the interest of justice and for the purpose of discovering evidence for use in the judicial proceeding now being litigated before this Court and for the due determination of the matters in dispute between the parties hereto, the Central Authority of Australia direct, through competent authority, the entry of such orders as the law of Australia permits, compelling Kerr to be deposed and compelling the production of documents responsive to Dr. Mintas' requests.

**(b)    Purpose of the Evidence or Judicial Act Sought:**

This evidence is intended for use in the above-captioned proceeding between PlayUp Inc., Dr. Mintas, Simic, and PlayUp Ltd. Dr. Mintas wishes to use Kerr's testimony and information gathered from the documents in Kerr's possession to establish her counterclaims and to defend against PlayUp Inc.'s claims.

**9.    Identity and Address of Any Person to Be Examined (Article 3(e))**

Ashley Kerr
48 Epsom Road
Zetland NSW 2017

**10.    Questions to Be Put to the Persons to Be Examined or Statement of the Subject-Matter About Which They Are to Be Examined (Article 3(f))**

Dr. Mintas anticipates questioning Kerr under oath about the following subject matters:
- The negotiation and potential renewal of Dr. Mintas' employment contract with PlayUp in 2021, including all communications about the renewal of her contract observed or participated in by Kerr and the terms of the negotiations between PlayUp and Dr. Mintas about her contract;
- All steps and efforts taken by Kerr and/or PlayUp to draft a renewed contract and/or to renew the contract;
- All board meetings regarding executive compensation, the terms of Dr. Mintas' new contract proposed by PlayUp and/or Dr. Mintas, and/or the renewal of Dr. Mintas' employment contract with PlayUp;
- The compensation and benefits of Dr. Mintas (whether salary, equity or shares, paid time off, health insurance, or otherwise);

- The business of PlayUp Inc. and PlayUp Ltd., including the composition and role of any boards of directors, any subsidiaries and affiliated companies, and the roles of officers such as Daniel Simic and Dr. Mintas; and
- PlayUp Inc. and/or PlayUp Ltd.'s response to FTX's rejection of the proposed transaction between it and PlayUp Inc. and/or PlayUp Ltd., including Kerr's email to Dr. Mintas on or about November 25, 2021, requesting that she cease making disparaging comments and keep information confidential.

**11.    Documents or Other Property to be Inspected (Article 3(g))**

The following requests for production are requested to be answered pursuant to and modeled on U.S. Federal Rule of Civil Procedure 34 ("Rule 34"). Rule 34 permits a party to request that another party produce relevant documents, provided that those documents are described with particularity and specify when and how they should be produced. Parties typically have 30 days to respond as to whether they will produce such documents or object to their production. In order to fulfill the purpose of these questions for the U.S. proceedings, the executing Court is requested to execute this request in a manner similar to the one provided for in Rule 34.

Nothing in the requests shall call for the disclosure of information that is protected from disclosure under United States or Australian law, including but not limited to, the attorney-client privilege and work-product doctrine. The following are the requested definitions and instructions for the document requests Dr. Mintas seeks to present to Kerr. Each request is followed by a short explanation of its relevance to the proceedings in the United States.

## <u>INSTRUCTIONS</u>

1.    In each response to these Requests, you are requested to provide not only such documents and electronically stored information as is in your possession, but also documents and electronically stored information as is reasonably available. In the event that you are able to provide only part of the documents and electronically stored information called for by any particular Request, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

2.    If any Request is objectionable, please contact counsel for Dr. Mintas before objecting, in order to attempt to narrow the question or avoid the objectionable portion or aspect.

3.    If you object to or otherwise decline to answer any portion of a Request, please provide all documents or electronically stored information called for by that portion of the Request to which you do not object or to which you do not decline to answer. For those portions of a Request to which you object or to which you decline to answer, state the reason for such objection or declination.

4.    The plural shall mean the singular and vice versa.

5.    The terms "each" and "every" are used inclusively.

6.    The terms "any" and "all" are used inclusively.

7.    If you are asserting a privilege or making an objection to a Request, specifically assert the privilege and basis for the assertion in the written response, and identify as to each privileged communication or document:

a.    Its date;

b.    Its author(s);

c.    The business title or position of its author(s);

d.      Its recipient(s);

e.      The business title or position of its recipient(s);

f.      Its number of pages;

g.      Its stated subject matter;

h.      The legal basis upon which you claim privilege; and

i.      The specific portion of the Request or document to which the communication or document is responsive.

8.      Produce the documents in native format, including metadata. If native format is not available, produce the documents in Multi-page Portable Document Format ("PDF) images allowing page-level beginning and ending Bates numbering. Each image will be labeled with a production number on the corresponding page. The image file should be uniquely named in accordance with the production number (e.g., BATES000001.PDF). The producing Party will provide a document image load file defining document breaks for each set of pages or images produced. For documents with attachments, Beg Attach and End Attach fields should also be included. For any emails, retain family relationships between email and attachment, or identify the family bates range. Provide a load file that includes, at a minimum, the following metadata: Document/Item Date, From, To, CC, BCC, Subject, Attachments, Name/FileName, Author, Custodian, DateCreated, DateModified, MD5Hash, and any confidentiality designation.

9.      Unless otherwise designated, these Requests shall apply to the time period of July 1, 2019, to the present.

## <u>DEFINITIONS</u>

1.      "<u>Alameda Research LLC</u>" shall refer to Alameda Research LLC, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

2.      "<u>Alameda Ventures Ltd.</u>" shall refer to Alameda Ventures Ltd. and/or Alameda Ventures LTD, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

3.      "<u>Communication</u>" or "<u>communications</u>" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes, telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

4.      "<u>Document</u>," "<u>documents</u>," and "<u>writing</u>" means all records, papers, and books, transcriptions, pictures, drawings or diagrams of every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection with which it is used and includes originals, all file copies, all other copies, not matter how prepared and all drafts prepared in connection with such writing, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including writings

regarding conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; spreadsheets; charts; graphs; schedules; letters; handbooks; correspondence; drafts; bulletins; email (including attachments); facsimiles; forms; pamphlets; notices; statements; journals; postcards; letters; publications; inter- and intra-office communications; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; voicemail messages; text messages; WhatsApp messages; instant messages; all electronic data, including that stored on PDAs, smartphones, laptop computers, pagers, desktop computers, cloud computers, hard drives, servers, discs (including CDs and DVDs), flash or thumb drives, and any other data from which information can be obtained through detection devices and translated into reasonably usable form.

5.  "Document" includes every version of every such item.

6.  "Drafted" means drafted, edited, prepared, outlined, and/or wrote.

7.  "FTX" shall refer to FTX Trading Limited and/or FTX Trading Ltd., including but not limited to any employees, officers, or affiliates of it (including but not limited to Alameda Ventures Ltd.); its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

8.  "Kerr" shall refer to Ashley Kerr, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

9.  "Mintas" shall refer to Defendant and Counter-Claimant Dr. Laila Mintas, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

10.  "PlayUp Inc." shall refer to PlayUp, Inc., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

11.  "PlayUp Ltd." shall refer to PlayUp Ltd., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

12.  "Person," "persons," "people," and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

13.  "Produce" and "provide" mean to provide a legible true copy of the original of any document and/or communication.

14.  "Relate to," "relating to," "regarding," "concerning," "pertain," and "pertaining to," mean referencing, consisting of, referring to, reflecting, or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

15.  "You" and/or "Your(s)", unless otherwise noted, shall refer to Kerr.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.      Produce all Documents and Communications between October 1, 2021, and December 31, 2021, referring to the negotiations between PlayUp Inc. and/or PlayUp Ltd., on the one hand, and Dr. Mintas, on the other hand, of the renewal of her employment contract.
**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud.

2.      Produce all Documents and Communications referring to the matters discussed in Your email dated November 11, 2021, and Dr. Mintas' response, attached as **Exhibit 4** to the Declaration of Eric Schmitt.
**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud.

3.      Produce all Documents and Communications referring to the matters discussed in Your email dated November 29, 2021, and attached as **Exhibit 5** to the Declaration of Eric Schmitt.
**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud.

4.      Produce all Documents and Communications referring to the matters discussed in Your email dated December 2, 2021, and attached as **Exhibit 6** to the Declaration of Eric Schmitt.
**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud.

5.      Produce all Documents and Communications referring to the matters discussed in Your email dated November 24, 2021, and attached as **Exhibit 7** to the Declaration of Eric Schmitt.
**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud.

6.      Produce all Documents and Communications referring to compensation for Dr. Mintas proposed by Dr. Mintas, PlayUp. Inc., and/or PlayUp Ltd. from October 1, 2021, to December 30, 2021, including all Documents and Communications discussing whether the compensation proposed by either her or PlayUp Inc. and/or PlayUp Ltd. was reasonable.
**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel and fraud.

7.      Produce all Documents and Communications referring to any instruction to Dr. Mintas by You, PlayUp Inc., and/or PlayUp Ltd. to cease making disparaging comments, to keep any information confidential, and/or to cease violating her employment contract.
**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing PlayUp Inc.'s and Dr. Mintas' claims relating to the failure of the potential deal between FTX and PlayUp, including by providing evidence relating to the meeting(s) between FTX and PlayUp and the reasons FTX declined the transaction, thus providing relevant evidence for PlayUp Inc.'s claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and tortious interference with prospective economic advantage. This evidence is also relevant to Dr. Mintas' claims for abuse of process, defamation per se, and false light.

8.      Produce all Documents and Communications referring to the salary paid to Dr. Mintas by PlayUp Inc. and/or PlayUp Ltd. from December 1, 2019, to December 31, 2022.

**Relevance:**   The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel; fraud; breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment; violation of the Fair Labor Standards Act; violation of Nevada Revised Statutes §§ 608.016, 608.140, and 608.250; and violation of article 15, § 16 of the Nevada Constitution.

9.      Produce all Documents and Communications referring to the equity or ownership of Dr. Mintas in PlayUp Ltd.

**Relevance:**   The production of these Documents and Communications will assist the parties and the Court in the United States in assessing Dr. Mintas' claims of promissory estoppel; fraud; breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment; violation of the Fair Labor Standards Act; violation of Nevada Revised Statutes §§ 608.016, 608.140, and 608.250; and violation of article 15, § 16 of the Nevada Constitution.

**12.     Special Methods or Procedures to be Followed (Article 3(i))**

It is respectfully requested that Kerr be directed to produce the documents identified in Section 11 above and that the responses to the requests for production of documents follow the prescribed methods in the instructions above, which are pursuant to United States procedural guidelines, most notably Federal Rule of Procedure 34. Furthermore, Dr. Mintas requests that Kerr provide general information regarding responsive documents in his possession over which it claims privilege separately in a privilege log. All documents are requested to be provided in either their original physical or original electronic format.

Furthermore, Kerr is to be examined in an oral deposition under oath in a form requiring him to attest under penalty of perjury that the testimony he gives is true. A transcript of his testimony will be taken. This Court respectfully requests that the Central Authority direct Kerr to appear for a deposition on or before January 22, 2024. This Court respectfully requests that attorneys for Dr. Mintas, PlayUp Inc., Simic, and PlayUp Ltd. each be permitted to examine and cross examine Kerr. This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure of the United States. This Court respectfully requests that the examination be conducted via video conference.

**13.     Request for Notification of the Time and Place of the Execution of the Request and Identity and Address of Any Person to Be Notified (Article 7)**

This Court respectfully requests that the Central Authority notify this Court, the representatives of the parties as identified above, and the witness from whom evidence is requested as identified above.

**14.     Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8)**

No judicial personnel of the requesting authority will attend or participate.

15.    **Specification of the Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11):**

Under the laws of the United States, any person has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that person and that person's attorney that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly. This attorney-client privilege belongs to the client and can be invoked by the client. A witness also may refuse to give evidence that discloses any information that constitutes the work product of attorneys created during or in anticipation of litigation. If any documents are withheld on such grounds, a statement to that effect should be contemporaneously produced indicating what documents are withheld or redacted and the nature of the privilege claimed.

16.    **Reimbursement (Article 14)**

The fees and costs incurred pursuant to this Request that are reimbursable under the second paragraph of Article 14, or under any other article of, the Hague Evidence Convention that is applicable to Australia will be borne by Dr. Mintas, in care of her attorneys, The Quinlan Law Firm, LLC and Naylor & Braster. Dr. Mintas' payment of any such fees and costs is without prejudice to her making a subsequent request to be reimbursed for these costs by other parties in the matter.

<u>**CLOSING**</u>

The Court expresses its appreciation to the Central Authority of Australia for its courtesy and assistance in this matter. It is the understanding of this Court that the granting of assistance of the type herein requested is authorized by the law of Australia and, in particular, by the Hague Evidence Convention.

Date of Request:    February 21, 2024

_____
The Honorable Nancy J. Koppe
United States Magistrate Judge
United States District Court
District of Nevada

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE
HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS TO OBTAIN RELEVANT
PHYSICAL EVIDENCE AND TESTIMONY FROM BROOKE MANISCALCO**

The Honorable Nancy J. Koppe, United States Magistrate Judge, of the District Court for the District of Nevada, presents her compliments to the Central Authority of Australia, and requests international judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Evidence Convention"), to obtain evidence to be used in the above-captioned civil proceeding before this Court. This Court has determined that it would further the interests of justice if Brooke Maniscalco ("Maniscalco") provided documents in its possession and deposition testimony relevant to the issues in this case.

This Request has been made upon the motion of Defendant and Counter-Plaintiff Dr. Laila Mintas, who has advised the Court that the evidence sought from Maniscalco as to the issues in this case is relevant and necessary for the due determination of the matters in dispute between the parties in this case involving allegations of breaches of contract, breaches of the implied covenant of good faith and fair dealing, breaches of fiduciary duty, violations of the Nevada Uniform Trade Secrets Act, tortious interference with contractual relations, tortious interference with prospective economic advantage, abuse of process, defamation per se, false light, promissory estoppel, fraud, unjust enrichment, violations of the Fair Labor Standards Act, violations of the Nevada Constitution, and violations of Nevada Revised Statute §§ 608.018 and 608.140. Having considered the submissions of the parties, this Court has found that this Request is necessary in the interests of justice and for the purpose of a full and fair determination of the matters in issue among the parties to the pending proceeding.

**SECTION I**

**1.    Sender**

The Honorable Nancy J. Koppe
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**2.    Central Authority of the Requested State:**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**3.    Persons to Whom the Executed Request Is to Be Returned**

William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
United States of America

Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America

Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America

Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America

**4. Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request**

March 8, 2024

**Reason for urgency:**

Discovery in this litigation closes on April 1, 2024.

**SECTION II**

**In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the undersigned applicant has the honor to submit the following request:**

**5.**
**(a)    Requesting Judicial Authority (Article 3(a))**

The Honorable Nancy J. Koppe
United States Magistrate Judge

District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**(b)      To the Central Authority of Australia**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**(c)      Name of the Case and any Identifying Number**

*PlayUp, Inc. v. Mintas*, Case No. 2:21-cv-02129-GMN-NJK, United States District Court for the District of Nevada.

**6.      Names and Addresses of the Parties and Their Representatives (Article 3(b))**

**(a)      Plaintiff / Counter-Defendant**

PlayUp, Inc.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

PlayUp, Inc.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**(b)      Defendant / Counter-Plaintiff**

Dr. Laila Mintas
c/o William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606

United States of America
Tel. (312) 883-5500
wjq@quinlanfirm.com

Dr. Laila Mintas
c/o Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America
Tel. (702) 420-7000
jbraster@nblawnv.com

**(c)    Counter-Defendants**

Daniel Simic
PlayUp, Ltd.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

Daniel Simic
PlayUp, Ltd.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**7.    Nature and Purpose of the Proceedings and a Summary of the Case (Article 3(c)):**

**(a)    Nature of the Action**

The above-captioned case is a civil proceeding in the United States District Court for the District of Nevada. The litigation arises primarily out of allegations between the parties that the other party caused a deal between PlayUp and FTX Trading Limited ("FTX") to fail, in addition to other disputes regarding Dr. Mintas' employment contract with PlayUp, defamation, violations of wage-and-hour laws, and breaches of fiduciary duty (among other claims).

### (b)    Summary of Complaint

In its complaint, PlayUp Inc. primarily alleges that in and around November 2021, Dr. Mintas breached fiduciary duties, the confidentiality clause of her employment contract with PlayUp, and the non-disparagement clause of her employment contract—and tortiously interfered with PlayUp Inc.'s business—by sharing confidential information about PlayUp Inc. with third parties, including FTX, disparaging PlayUp and its officers to third parties like FTX, and otherwise causing a potential acquisition of PlayUp by FTX to fail. PlayUp Inc. alleges that Dr. Mintas misappropriated trade secrets as well around this time. PlayUp Inc. also claims that Dr. Mintas breached her non-compete with the company by working for a purported competitor of PlayUp. Finally, PlayUp Inc. alleges that Dr. Mintas tortiously interfered with contractual relations by interfering with its separation negotiations with former PlayUp employee Adrianna Samuels Cuccinello in winter 2022.

### (c)    Summary of Defenses and Counterclaims

Dr. Mintas generally denies PlayUp Inc.'s allegations against her. She alleges that PlayUp Inc.'s officers Daniel Simic and Michael Costa—not her—caused the potential acquisition by FTX to fail by demanding unreasonable and unethical terms, including adding $105 million to the purchase price by asking FTX to buy a company in which they are directors and of which they are beneficiaries (PlayChip) and demanding an additional $65 million in incentives from FTX. Dr. Mintas also alleges that FTX passed on the deal with PlayUp because it discovered that critical U.S. employees, like her, were not part of PlayUp's future business plans. Dr. Mintas denies that she disclosed any trade secrets or confidential information to third parties, denies disparaging PlayUp and its officers, and denies breaching her non-compete. She also contends that PlayUp Inc. cannot establish that it suffered damages as a result of her alleged actions.

Dr. Mintas brings 11 counterclaims against PlayUp Inc., PlayUp Ltd., and Simic. She claims that PlayUp Inc. has abused the U.S. District Court for the District of Nevada's process throughout this litigation and that PlayUp and Simic defamed her and placed her in a false light. Moreover, she claims that PlayUp's officers and employees, including Kerr, fraudulently and misleadingly stating that it would enter into a new employment contract with Dr. Mintas, opening itself to liability for promissory estoppel and fraud. Finally, in claims for breach of contract and employment-law claims under federal and Nevada law, Dr. Mintas alleges that PlayUp failed to pay her compensation owed to her and unjustly enriched itself.

### (d)    Other Necessary Information

PlayUp Ltd., an Australian company, has moved to dismiss the counterclaims against it on the ground that the Court lacks personal jurisdiction over it. Dr. Mintas opposes this motion. PlayUp Ltd.'s motion to dismiss remains pending as of the date of this letter.

**8.**

### (a)    Evidence to be Obtained or Other Judicial Act to be Performed (Article 3(d)):

Dr. Mintas seeks to depose Maniscalco under oath for testimony to be used in the *PlayUp Inc. v. Mintas* proceeding in the U.S. District Court for the District of Nevada.

Dr. Mintas also asks that her request for documents, enumerated in part 11 below, be duly enforced by the Central Authority of Australia against Maniscalco. Dr. Mintas contends that the documents in the possession of Maniscalco are necessary to defend against essential elements of PlayUp Inc.'s claims against her and to establish certain elements of her counterclaims regarding her employment contract. Accordingly, the assistance of the Central Authority of Australia is hereby sought. It is respectfully requested that, in the interest of justice and for the purpose of discovering evidence for use in the judicial proceeding now being litigated before this Court and for the due determination of the matters in dispute between the parties hereto, the Central Authority of Australia direct, through competent authority, the entry of such orders as the law of Australia permits, compelling Maniscalco to be deposed and compelling the production of documents responsive to Dr. Mintas' requests.

**(b)    Purpose of the Evidence or Judicial Act Sought:**

This evidence is intended for use in the above-captioned proceeding between PlayUp Inc., Dr. Mintas, Simic, and PlayUp Ltd. Dr. Mintas wishes to use Maniscalco's testimony and information gathered from the documents in Maniscalco's possession to establish her counterclaims and to defend against PlayUp Inc.'s claims.

**9.    Identity and Address of Any Person to Be Examined (Article 3(e))**

Brooke Maniscalco
Yates Beaggi Lawyers
Level 17
123 Pitt St
Sydney NSW 2000

**10.    Questions to Be Put to the Persons to Be Examined or Statement of the Subject-Matter About Which They Are to Be Examined (Article 3(f))**

Dr. Mintas anticipates questioning Maniscalco under oath about the following subject matters:

- Alleged statements made by Dr. Mintas to Maniscalco she was allegedly present in and/or around November 2021, including but not limited to:
  - That Daniel Simic "is a criminal, and he should be charged";
  - That Daniel Simic "[is] a no one" who "is blacklisted in Australia, and he has no credentials";
  - That Daniel Simic "is dodgy" and "a fraud";
  - That she would "make sure they [PlayUp] go into bankruptcy"; and
  - That she would "burn PlayUp to the ground and make it bankrupt."

**11.      Documents or Other Property to be Inspected (Article 3(g))**

The following requests for production are requested to be answered pursuant to and modeled on U.S. Federal Rule of Civil Procedure 34 ("Rule 34"). Rule 34 permits a party to request that another party produce relevant documents, provided that those documents are described with particularity and specify when and how they should be produced. Parties typically have 30 days to respond as to whether they will produce such documents or object to their production. In order to fulfill the purpose of these questions for the U.S. proceedings, the executing Court is requested to execute this request in a manner similar to the one provided for in Rule 34.

Nothing in the requests shall call for the disclosure of information that is protected from disclosure under United States or Australian law, including but not limited to, the attorney-client privilege and work-product doctrine. The following are the requested definitions and instructions for the document requests Dr. Mintas seeks to present to Maniscalco. Each request is followed by a short explanation of its relevance to the proceedings in the United States.

## <u>INSTRUCTIONS</u>

1.      In each response to these Requests, you are requested to provide not only such documents and electronically stored information as is in your possession, but also documents and electronically stored information as is reasonably available. In the event that you are able to provide only part of the documents and electronically stored information called for by any particular Request, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

2.      If any Request is objectionable, please contact counsel for Dr. Mintas before objecting, in order to attempt to narrow the question or avoid the objectionable portion or aspect.

3.      If you object to or otherwise decline to answer any portion of a Request, please provide all documents or electronically stored information called for by that portion of the Request to which you do not object or to which you do not decline to answer. For those portions of a Request to which you object or to which you decline to answer, state the reason for such objection or declination.

4.      The plural shall mean the singular and vice versa.

5.      The terms "each" and "every" are used inclusively.

6.      The terms "any" and "all" are used inclusively.

7.      If you are asserting a privilege or making an objection to a Request, specifically assert the privilege and basis for the assertion in the written response, and identify as to each privileged communication or document:

a.      Its date;

b.      Its author(s);

c.      The business title or position of its author(s);

d.      Its recipient(s);

e.      The business title or position of its recipient(s);

f.      Its number of pages;

g.      Its stated subject matter;

h.      The legal basis upon which you claim privilege; and

i.      The specific portion of the Request or document to which the communication or document is responsive.

8.      Produce the documents in native format, including metadata. If native format is not

available, produce the documents in Multi-page Portable Document Format ("PDF") images allowing page-level beginning and ending Bates numbering. Each image will be labeled with a production number on the corresponding page. The image file should be uniquely named in accordance with the production number (e.g., BATES000001.PDF). The producing party will provide a document image load file defining document breaks for each set of pages or images produced. For documents with attachments, Beg Attach and End Attach fields should also be included. For any emails, retain family relationships between email and attachment, or identify the family bates range. Provide a load file that includes, at a minimum, the following metadata: Document/Item Date, From, To, CC, BCC, Subject, Attachments, Name/FileName, Author, Custodian, DateCreated, DateModified, MD5Hash, and any confidentiality designation.

        9.      Unless otherwise designated, these Requests shall apply to the time period of September 1, 2020, to the present.

## DEFINITIONS

        1.      "Affidavit" refers to the affidavit attached as **Exhibit A**.

        2.      "Alameda Research LLC" shall refer to Alameda Research LLC, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

        3.      "Alameda Ventures Ltd." shall refer to Alameda Ventures Ltd. and/or Alameda Ventures LTD, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

        4.      "Maniscalco" shall refer to Brooke Maniscalco, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

        5.      "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes, telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

        6.      "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams of every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection with which it is used and includes originals, all file copies, all other copies, not matter how prepared and all drafts prepared in connection with such writing, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including writings regarding conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; spreadsheets; charts; graphs; schedules; letters; handbooks; correspondence; drafts; bulletins; email (including attachments); facsimiles; forms;

pamphlets; notices; statements; journals; postcards; letters; publications; inter- and intra-office communications; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; voicemail messages; text messages; WhatsApp messages; instant messages; all electronic data, including that stored on PDAs, smartphones, laptop computers, pagers, desktop computers, cloud computers, hard drives, servers, discs (including CDs and DVDs), flash or thumb drives, and any other data from which information can be obtained through detection devices and translated into reasonably usable form.

      7.      "Document" includes every version of every such item.

      8.      "Drafted" means drafted, edited, prepared, outlined, and/or wrote.

      9.      "FTX" shall refer to FTX Trading Limited and/or FTX Trading Ltd., including but not limited to any employees, officers, or affiliates of it (including but not limited to Alameda Ventures Ltd.); its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

      10.      "Mintas" shall refer to Defendant and Counter-Claimant Dr. Laila Mintas, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

      11.      "PlayUp Inc." shall refer to PlayUp, Inc., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

      12.      "PlayUp Ltd." shall refer to PlayUp Ltd., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

      13.      "Person," "persons," "people," and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

      14.      "Produce" and "provide" mean to provide a legible true copy of the original of any document and/or communication.

      15.      "Relate to," "relating to," "regarding," "concerning," "pertain," and "pertaining to," mean referencing, consisting of, referring to, reflecting, or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

      16.      "You" and/or "Your(s)", unless otherwise noted, shall refer to Maniscalco.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

      1.      Produce all Documents and Communications referring to the "telephone conversation" referenced in Paragraph 2 of Your Affidavit, including any Documents and Communications with any employees or officers of PlayUp Inc. and/or PlayUp Ltd. about this conversation.

**Relevance:**    The production of these Documents and Communications will assist the parties and the Court in the United States in assessing PlayUp Inc.'s and Dr. Mintas' claims relating to the

failure of the potential deal between FTX and PlayUp and allegations that Dr. Mintas made disparaging statements about PlayUp, thus providing relevant evidence for PlayUp Inc.'s claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and tortious interference with prospective economic advantage. This evidence is also relevant to Dr. Mintas' claims for abuse of process, defamation per se, and false light.

**12.    Special Methods or Procedures to be Followed (Article 3(i))**

It is respectfully requested that Maniscalco be directed to produce the documents identified in Section 11 above and that the responses to the requests for production of documents follow the prescribed methods in the instructions above, which are pursuant to United States procedural guidelines, most notably Federal Rule of Procedure 34. Furthermore, Dr. Mintas requests that Maniscalco provide general information regarding responsive documents in his possession over which it claims privilege separately in a privilege log. All documents are requested to be provided in either their original physical or original electronic format.

Furthermore, Maniscalco is to be examined in an oral deposition under oath in a form requiring him to attest under penalty of perjury that the testimony he gives is true. A transcript of his testimony will be taken. This Court respectfully requests that the Central Authority direct Maniscalco to appear for a deposition on or before January 17, 2024. This Court respectfully requests that attorneys for Dr. Mintas, PlayUp Inc., Simic, and PlayUp Ltd. each be permitted to examine and cross examine Maniscalco. This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure of the United States. This Court respectfully requests that the examination be conducted via video conference.

**13.    Request for Notification of the Time and Place of the Execution of the Request and Identity and Address of Any Person to Be Notified (Article 7)**

This Court respectfully requests that the Central Authority notify this Court, the representatives of the parties as identified above, and the witness from whom evidence is requested as identified above.

**14.    Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8)**

No judicial personnel of the requesting authority will attend or participate.

**15.    Specification of the Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11):**

Under the laws of the United States, any person has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that person and that person's attorney that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly. This attorney-client privilege belongs to the client and can be invoked by the client. A witness also may refuse to give evidence that discloses any information that constitutes the work product of attorneys created during or in anticipation of litigation. If any

documents are withheld on such grounds, a statement to that effect should be contemporaneously produced indicating what documents are withheld or redacted and the nature of the privilege claimed.

**16.    Reimbursement (Article 14)**

The fees and costs incurred pursuant to this Request that are reimbursable under the second paragraph of Article 14, or under any other article of, the Hague Evidence Convention that is applicable to Australia will be borne by Dr. Mintas, in care of her attorneys, The Quinlan Law Firm, LLC and Naylor & Braster. Dr. Mintas' payment of any such fees and costs is without prejudice to her making a subsequent request to be reimbursed for these costs by other parties in the matter.

## <u>CLOSING</u>

The Court expresses its appreciation to the Central Authority of Australia for its courtesy and assistance in this matter. It is the understanding of this Court that the granting of assistance of the type herein requested is authorized by the law of Australia and, in particular, by the Hague Evidence Convention.

Date of Request:        February 21, 2024

The Honorable Nancy J. Koppe
United States Magistrate Judge
United States District Court
District of Nevada

**Exhibit A**

Jennifer Hostetler, Bar No. 11994
JHostetler@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169
Tel:    702.949.8200
Fax:    702.949.8398

*Attorneys for PlayUp, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| PlayUp, Inc., a Delaware Corporation, | Case No. 2:21-cv-02129-GMN-NJK |
| Plaintiff, | |
| v. | **DECLARATION OF BROOKE LAYLA MANISCALCO** |
| Dr. Laila Mintas, an individual, | |
| Defendant. | |

I, Brooke Layla Maniscalco, declare as follows:

1.      I am over the age of 18.

2.      I am a proprietor of the law practice described as Yates Beaggi Lawyers (**YBL**).

3.      YBL operates a commercial law practice in Sydney, Australia. It employs from time to time approximately 15 staff. I have held the role of General Manager of YBL for approximately 13 years.

4.      The statements made in this declaration are based on my own personal knowledge, except those matters stated on information and belief.  As to those matters stated on information and belief, I believe them to be true.  If called to testify about the matters herein, I could competently do so.

5.      On 26 November 2021, I was present and seated across a work area to Farshad Amirbeaggi when he had a telephone conversation with the Defendant. Farshad Amirbeaggi is the managing proprietor of YBL.

116321242.1

6.      The telephone was on the speaker setting and accordingly I heard what Farshad Amirbeaggi said and what the Defendant said during the telephone conversation.

7.      I heard the conversation between Farshad Amirbeaggi and the Defendant in words to the following effect:

**Farshad:**      *I've had a discussion with Daniel and Ross about the disagreement between you two. I thought I'd ask for your side of the story to see whether I can help resolve it. As lawyers we always say there are 3 sides to every story, his, yours, and then what a bystander hears. So, what happened?*

**Defendant:**      *Yes. It's been what 2 years since we last spoke. That was when you were preparing my employment contract. As you know, my contract expires at the end of November, and they will not agree to my terms. Many things have happened that make me think that Daniel should not even be involved in the company anymore and that he should be stood down, and that I should be made the Global CEO. Daniel is a criminal, and he should be charged.*

**Farshad:**      *Let's break that down, and deal with everything step by step. I know it's Thanks Giving so if you want to do this tomorrow we can reschedule.*

**Defendant:**      *No, no, I can talk to you about it now.*

**Farshad:**      *Ok so then explain it to me like I'm a child. Nice and slow so I understand it all.*

**Defendant:**      *Well with my contract expiring at the end of the month I have been trying to get them to agree to new terms for me to continue on. I have asked for $1mil per annum salary, an increase in my shareholding to 15%, and to be made Global CEO. I also want Daniel to leave PlayUp. I don't care if he sells his shares and does something else but he's a pest controller. He can go off and start a pest control business again for all I care. Danie is a no one. And Mick too. Who is Mick? He's a no one. No one in the States wants to deal with the Australians. Daniel's blacklisted in Australia, and he has no credentials to even do the job.*

116321242.1

- 2 -

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

1    *No one in the US trusts him or wants to deal with him. He's the reason*
2    *PlayUp couldn't list in Australia. Sam from FTX even refused to meet*
3    *with hm and sent his people to meet him instead. Sam doesn't trust him*
4    *because Daniel is dodgy. Sam called him dodgy, not me. If we want FTX*
5    *to go ahead, it can't be with Daniel, and they will only do it if I take the*
6    *lead. Not Daniel. FTX only want the US business anyway. Daniel put*
7    *terms to FTX that are only in his own interests and ahead of PlayUp's*
8    *interests. He's making all the Australian people rich and put forward a*
9    *$25 million bonus for himself. And then Daniel wants FTX to buy*
10   *PlayChip for $105mil. That was never part of the deal, and he's done*
11   *that to prefer his own interests over PlayUp. And I've asked Ross and*
12   *Richard about PlayChip but they don't respond so they're probably in*
13   *on it with Daniel. They won't even give me the details of ownership of*
14   *PlayChip. I am just being ignored. Does PlayUp own PlayChip? I don't*
15   *know. But no one is telling me anything. I can't even get financial*
16   *reporting or accounts from Daniel. I have no idea what our financial*
17   *position is. Apparently, he raised $12.5mil and we didn't see a cent of it*
18   *in the US. He didn't pay the bills with it so everything is always late and*
19   *causes embarrassment. I don't even know my own shareholding. I was*
20   *told that I had 11% and now Ross tells me I have 7.5%. I've had to invest*
21   *$1.2mil US of my own money into PlayUp to make it work because*
22   *Daniel and the whole Australian team are unreliable. No one in the*
23   *States even wants the Australian team or respects them. Who are they?*
24   *Just a bunch of nobodies who aren't worth anything. FTX didn't even*
25   *value the Australian business. When I started, Australian was worth*
26   *$40mil and its now worth over $450mil because of me. Professor Doctor*
27   *Laila Mintas. I am PlayUp. Not Daniel. He's a fraud and a criminal and*
28   *should be charged. Even Richard and Ross agree that Daniel should*
     *stand down and that he is not right for the business. Why isn't he being*
     *removed? His own staff in Australia don't even respect him, well besides*
     *the HR manager he had an affair with. It's just a joke. It's either he is*
     *removed, and I am made the Global CEO, or I'll burn it all to the*

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

1  *ground. It's not about the money for me. Me and my husband have a lot*
2  *of money, so we don't care about that. My husband had a real estate*
3  *company in Germany, and we sold it for a lot of money. We don't need*
4  *the money. Look, If I don't get what I want by 30 November 2021, in my*
5  *inbox by then, then I'll burn PlayUp to the ground. I'll contact all the*
6  *regulators and tell them that the company is dodgy, can't be trusted and*
7  *is run by frauds. And I'll make sure to request that the regulator undo*
8  *the licencing. I have 20 market access agreements that will travel with*
9  *me, in my personal name. Not PlayUps. That's because I am PlayUp*
10 *not them. I got them because of my name and reputation. I'll contact*
11 *everyone in the industry and tell them not to deal with PlayUp. Daniel*
12 *doesn't understand that without me PlayUp has nothing. Worse, still I'll*
13 *make sure they go into bankruptcy. I have to respond to New Jersey*
14 *regulator by 3 December so I'll tell them to pull the licence first.*
15 *Farshad, like the Italian gangster movies you know, I'm just cutting off*
16 *and posting you the fingers. Soon enough I send the whole body. And*
17 *I'm just getting started. You will get to see the real Laila Mintas very*
18 *soon. I will burn everything to the ground and make sure PlayUp goes*
19 *into bankruptcy. I'm sick of all the Australians ringing me and telling*
20 *me to calm down when it's Daniel that's the criminal. The answer is*
21 *simple. Do as I ask, and get rid of Daniel, or watch me burn PlayUp to*
22 *the ground and make it bankrupt.*

**Farshad:**  *You sound like you're saying this in anger. I think it's worth everyone*
*taking a 14 day breather and we can all revisit this once the dust has*
*settled. Plus, a lot of what you demand are decisions for shareholders,*
*and not two directors in a squabble. PlayUp might even need an interim*
*CEO until this is all figured out. What's important to remember is that*
*neither of you should do anything that could harm the shareholders.*
*Your language of burning it to the ground is unnecessary. I'll need to*
*have a think about the issues you've raised and how this can be*
*advanced. Then I'll come back to you. But what you've said isn't*
*acceptable. I'll be suggesting a brief extension to give you both some*

| | | |
|---|---|---|
| | | *breathing space and time to collect your thoughts without fighting words and threats of acts of war. Would that be ok?* |
| **Defendant:** | | *We don't have time. Unless I have what I want in my inbox by 30 November 2021, I will burn it to the ground.* |
| **Ferry Mintas (Laila's husband):** | | *listen Farshad, I'm Turkish, and my name is Farsi, so we're the same. Daniel and the rest of them are lucky I'm not there because I'd take care of them. My wife and I have put 2 years into this. I've been the one taking care of our two daughters. She's given her life to this, and its only because of her that the business is worth what it is. This is a family decision, and if they don't respect her, then we will do what Laila says. We'll finish them off.* |
| **Farshad:** | | *Guys, you need to take a breath. Laila has been paid for what she has done over the last 2 years. It's important to remember that. It appears that there are some bottled up issues that are all coming out now, but everyone needs to approach this calmly if you want to resolve this. Saying you'll burn it to the ground is not a solution and isn't acceptable. You need to leave it with me to discuss with Daniel and Ross and come back to you in the next 24 hours.* |
| **Defendant:** | | *I have told you what my position is. I am happy to see if you can get this resolved for me.* |

8. I remember being astonished by what I was hearing from the Defendant. The Defendant was openly hostile and was not reserved in the making of her threats. She was forthright and made her threats with conviction. The conduct being exhibited by the Defendant drew my attention, hence why I continued listening to the conversation.

9. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. This declaration was executed on 23rd day of December 2021, at Sydney, New South Wales, Australia.

By _____

Brooke Maniscalco

116321242.1

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS TO OBTAIN RELEVANT PHYSICAL EVIDENCE AND TESTIMONY FROM SALLY MCDOW**

      The Honorable Nancy J. Koppe, United States Magistrate Judge, of the District Court for the District of Nevada, presents her compliments to the Central Authority of Australia, and requests international judicial assistance pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters, 23 U.S.T. 2555, T.I.A.S. No. 7444 (the "Hague Evidence Convention"), to obtain evidence to be used in the above-captioned civil proceeding before this Court. This Court has determined that it would further the interests of justice if Sally McDow ("McDow") provided documents in its possession and deposition testimony relevant to the issues in this case.

      This Request has been made upon the motion of Defendant and Counter-Plaintiff Dr. Laila Mintas, who has advised the Court that the evidence sought from McDow as to the issues in this case is relevant and necessary for the due determination of the matters in dispute between the parties in this case involving allegations of breaches of contract, breaches of the implied covenant of good faith and fair dealing, breaches of fiduciary duty, violations of the Nevada Uniform Trade Secrets Act, tortious interference with contractual relations, tortious interference with prospective economic advantage, abuse of process, defamation per se, false light, promissory estoppel, fraud, unjust enrichment, violations of the Fair Labor Standards Act, violations of the Nevada Constitution, and violations of Nevada Revised Statute §§ 608.018 and 608.140. Having considered the submissions of the parties, this Court has found that this Request is necessary in the interests of justice and for the purpose of a full and fair determination of the matters in issue among the parties to the pending proceeding.

<strong>SECTION I</strong>

**1.      Sender**

The Honorable Nancy J. Koppe
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101

**2.      Central Authority of the Requested State:**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**3.      Persons to Whom the Executed Request Is to Be Returned**

William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
United States of America

Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America

Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America

Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America

**4. Specification of Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request**

March 8, 2024

**Reason for urgency:**

Discovery in this litigation closes on April 1, 2024.

**SECTION II**

**In conformity with Article 3 of the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the undersigned applicant has the honor to submit the following request:**

**5.**
**(a)      Requesting Judicial Authority (Article 3(a))**

The Honorable Nancy J. Koppe
United States Magistrate Judge
District Court for the District of Nevada
333 Las Vegas Blvd South

Las Vegas, NV 89101

**(b)      To the Central Authority of Australia**

Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

**(c)      Name of the Case and any Identifying Number**

*PlayUp, Inc. v. Mintas*, Case No. 2:21-cv-02129-GMN-NJK, United States District Court for the
District of Nevada.

**6.      Names and Addresses of the Parties and Their Representatives (Article 3(b))**

**(a)      Plaintiff / Counter-Defendant**

PlayUp, Inc.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

PlayUp, Inc.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**(b)      Defendant / Counter-Plaintiff**

Dr. Laila Mintas
c/o William J. Quinlan
The Quinlan Law Firm, LLC
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
United States of America
Tel. (312) 883-5500

wjq@quinlanfirm.com

Dr. Laila Mintas
c/o Jennifer L. Braster
Naylor & Braster
10100 W. Charleston Blvd., Suite 120
Las Vegas, NV 89135
United States of America
Tel. (702) 420-7000
jbraster@nblawnv.com

**(c)      Counter-Defendants**

Daniel Simic
PlayUp, Ltd.
c/o Michael S. Popok
Zumpano Patricios Popok & Helsten, PLLC
134 East 38th Street
New York, NY 10016
United States of America
Tel. (212) 542-2564
MPopok@zplaw.com

Daniel Simic
PlayUp, Ltd.
c/o Amanda J. Brookhyser
Zumpano Patricios Popok & Helsten, PLLC
1210 S. Valley View Blvd., Suite 215
Las Vegas, NV 89102
United States of America
Tel. (702) 583-3326
ABrookhyser@zplaw.com

**7.      Nature and Purpose of the Proceedings and a Summary of the Case (Article 3(c)):**

**(a)      Nature of the Action**

The above-captioned case is a civil proceeding in the United States District Court for the District of Nevada. The litigation arises primarily out of allegations between the parties that the other party caused a deal between PlayUp and FTX Trading Limited ("FTX") to fail, in addition to other disputes regarding Dr. Mintas' employment contract with PlayUp, defamation, violations of wage-and-hour laws, and breaches of fiduciary duty (among other claims).

**(b)      Summary of Complaint**

In its complaint, PlayUp Inc. primarily alleges that in and around November 2021, Dr. Mintas breached fiduciary duties, the confidentiality clause of her employment contract with PlayUp, and the non-disparagement clause of her employment contract—and tortiously interfered with PlayUp Inc.'s business—by sharing confidential information about PlayUp Inc. with third parties, including FTX, disparaging PlayUp and its officers to third parties like FTX, and otherwise causing a potential acquisition of PlayUp by FTX to fail. PlayUp Inc. alleges that Dr. Mintas misappropriated trade secrets as well around this time. PlayUp Inc. also claims that Dr. Mintas breached her non-compete with the company by working for a purported competitor of PlayUp. Finally, PlayUp Inc. alleges that Dr. Mintas tortiously interfered with contractual relations by interfering with its separation negotiations with former PlayUp employee Adrianna Samuels Cuccinello in winter 2022.

### (c)      Summary of Defenses and Counterclaims

Dr. Mintas generally denies PlayUp Inc.'s allegations against her. She alleges that PlayUp Inc.'s officers Daniel Simic and Michael Costa—not her—caused the potential acquisition by FTX to fail by demanding unreasonable and unethical terms, including adding $105 million to the purchase price by asking FTX to buy a company in which they are directors and of which they are beneficiaries (PlayChip) and demanding an additional $65 million in incentives from FTX. Dr. Mintas also alleges that FTX passed on the deal with PlayUp because it discovered that critical U.S. employees, like her, were not part of PlayUp's future business plans. Dr. Mintas denies that she disclosed any trade secrets or confidential information to third parties, denies disparaging PlayUp and its officers, and denies breaching her non-compete. She also contends that PlayUp Inc. cannot establish that it suffered damages as a result of her alleged actions.

Dr. Mintas brings 11 counterclaims against PlayUp Inc., PlayUp Ltd., and Simic. She claims that PlayUp Inc. has abused the U.S. District Court for the District of Nevada's process throughout this litigation and that PlayUp and Simic defamed her and placed her in a false light. Moreover, she claims that PlayUp's officers and employees, including Kerr, fraudulently and misleadingly stating that it would enter into a new employment contract with Dr. Mintas, opening itself to liability for promissory estoppel and fraud. Finally, in claims for breach of contract and employment-law claims under federal and Nevada law, Dr. Mintas alleges that PlayUp failed to pay her compensation owed to her and unjustly enriched itself.

### (d)      Other Necessary Information

PlayUp Ltd., an Australian company, has moved to dismiss the counterclaims against it on the ground that the Court lacks personal jurisdiction over it. Dr. Mintas opposes this motion. PlayUp Ltd.'s motion to dismiss remains pending as of the date of this letter.

## 8.

### (a)      Evidence to be Obtained or Other Judicial Act to be Performed (Article 3(d)):

Dr. Mintas seeks to depose McDow under oath for testimony to be used in the *PlayUp Inc. v. Mintas* proceeding in the U.S. District Court for the District of Nevada.

Dr. Mintas also asks that her request for documents, enumerated in part 11 below, be duly enforced by the Central Authority of Australia against McDow. Dr. Mintas contends that the documents in the possession of McDow are necessary to defend against essential elements of PlayUp Inc.'s claims against her and to establish certain elements of her counterclaims regarding her employment contract. Accordingly, the assistance of the Central Authority of Australia is hereby sought. It is respectfully requested that, in the interest of justice and for the purpose of discovering evidence for use in the judicial proceeding now being litigated before this Court and for the due determination of the matters in dispute between the parties hereto, the Central Authority of Australia direct, through competent authority, the entry of such orders as the law of Australia permits, compelling McDow to be deposed and compelling the production of documents responsive to Dr. Mintas' requests.

**(b)      Purpose of the Evidence or Judicial Act Sought:**

This evidence is intended for use in the above-captioned proceeding between PlayUp Inc., Dr. Mintas, Simic, and PlayUp Ltd. Dr. Mintas wishes to use McDow's testimony and information gathered from the documents in McDow's possession to establish her counterclaims and to defend against PlayUp Inc.'s claims.

**9.      Identity and Address of Any Person to Be Examined (Article 3(e))**

Sally McDow
Boardroom Pty Limited
Level 8
210 George St.
Sydney NSW 2000

**10.      Questions to Be Put to the Persons to Be Examined or Statement of the Subject-Matter About Which They Are to Be Examined (Article 3(f))**

Dr. Mintas anticipates questioning McDow under oath about the following subject matters:
- The accuracy of the minutes for board of directors' meetings for PlayUp Ltd. for the following dates: November 24, 2021, December 2, 2021, December 3, 2021, and December 8, 2021.
- The topics discussed at PlayUp Ltd.'s board meetings on November 24, 2021, December 2, 2021, December 3, 2021, and December 8, 2021.
- PlayUp Ltd.'s general practices regarding record keeping and minutes for its board meetings.

**11.      Documents or Other Property to be Inspected (Article 3(g))**

The following requests for production are requested to be answered pursuant to and modeled on U.S. Federal Rule of Civil Procedure 34 ("Rule 34"). Rule 34 permits a party to request that another party produce relevant documents, provided that those documents are described with particularity and specify when and how they should be produced. Parties typically

have 30 days to respond as to whether they will produce such documents or object to their production. In order to fulfill the purpose of these questions for the U.S. proceedings, the executing Court is requested to execute this request in a manner similar to the one provided for in Rule 34.

Nothing in the requests shall call for the disclosure of information that is protected from disclosure under United States or Australian law, including but not limited to, the attorney-client privilege and work-product doctrine. The following are the requested definitions and instructions for the document requests Dr. Mintas seeks to present to McDow. Each request is followed by a short explanation of its relevance to the proceedings in the United States.

## **INSTRUCTIONS**

1.      In each response to these Requests, you are requested to provide not only such documents and electronically stored information as is in your possession, but also documents and electronically stored information as is reasonably available. In the event that you are able to provide only part of the documents and electronically stored information called for by any particular Request, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

2.      If any Request is objectionable, please contact counsel for Dr. Mintas before objecting, in order to attempt to narrow the question or avoid the objectionable portion or aspect.

3.      If you object to or otherwise decline to answer any portion of a Request, please provide all documents or electronically stored information called for by that portion of the Request to which you do not object or to which you do not decline to answer. For those portions of a Request to which you object or to which you decline to answer, state the reason for such objection or declination.

4.      The plural shall mean the singular and vice versa.

5.      The terms "each" and "every" are used inclusively.

6.      The terms "any" and "all" are used inclusively.

7.      If you are asserting a privilege or making an objection to a Request, specifically assert the privilege and basis for the assertion in the written response, and identify as to each privileged communication or document:

a.      Its date;

b.      Its author(s);

c.      The business title or position of its author(s);

d.      Its recipient(s);

e.      The business title or position of its recipient(s);

f.      Its number of pages;

g.      Its stated subject matter;

h.      The legal basis upon which you claim privilege; and

i.      The specific portion of the Request or document to which the communication or document is responsive.

8.      Produce the documents in native format, including metadata. If native format is not available, produce the documents in Multi-page Portable Document Format ("PDF") images allowing page-level beginning and ending Bates numbering. Each image will be labeled with a production number on the corresponding page. The image file should be uniquely named in accordance with the production number (e.g., BATES000001.PDF). The producing party will provide a document image load file defining document breaks for each set of pages or images produced. For documents with attachments, Beg Attach and End Attach fields should also be included. For any emails, retain

family relationships between email and attachment, or identify the family bates range. Provide a load file that includes, at a minimum, the following metadata: Document/Item Date, From, To, CC, BCC, Subject, Attachments, Name/FileName, Author, Custodian, DateCreated, DateModified, MD5Hash, and any confidentiality designation.

9.      Unless otherwise designated, these Requests shall apply to the time period of September 1, 2020, to the present.

## DEFINITIONS

1.      "Alameda Research LLC" shall refer to Alameda Research LLC, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

2.      "Alameda Ventures Ltd." shall refer to Alameda Ventures Ltd. and/or Alameda Ventures LTD, including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

3.      "McDow" shall refer to Sally McDow, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

4.      "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters, correspondence, notes, telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

5.      "Document," "documents," and "writing" means all records, papers, and books, transcriptions, pictures, drawings or diagrams of every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection with which it is used and includes originals, all file copies, all other copies, not matter how prepared and all drafts prepared in connection with such writing, including by way of illustration and not by way of limitation, the following: books; records; reports; contracts; agreements; accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including writings regarding conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; spreadsheets; charts; graphs; schedules; letters; handbooks; correspondence; drafts; bulletins; email (including attachments); facsimiles; forms; pamphlets; notices; statements; journals; postcards; letters; publications; inter- and intra-office communications; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; transcripts; voicemail messages; text messages; WhatsApp messages; instant messages; all electronic data, including that stored on PDAs, smartphones, laptop computers, pagers, desktop computers, cloud computers, hard drives, servers, discs (including CDs and DVDs), flash or thumb drives, and any other data from which information can be obtained through detection devices and translated into reasonably usable form.

6.      "<u>Document</u>" includes every version of every such item.

7.      "<u>Drafted</u>" means drafted, edited, prepared, outlined, and/or wrote.

8.      "<u>FTX</u>" shall refer to FTX Trading Limited and/or FTX Trading Ltd., including but not limited to any employees, officers, or affiliates of it (including but not limited to Alameda Ventures Ltd.); its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

9.      "<u>Mintas</u>" shall refer to Defendant and Counter-Claimant Dr. Laila Mintas, including but not limited to any employees, officers, or affiliates of her; her predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

10.     "<u>PlayUp Inc.</u>" shall refer to PlayUp, Inc., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

11.     "<u>PlayUp Ltd.</u>" shall refer to PlayUp Ltd., including but not limited to any employees, officers, or affiliates of it; its predecessors and successor(s) in interest, agents, principals, beneficiaries, attorneys, and/or accountants; and other representatives or fiduciaries, both individually and in any and all possible combination.

12.     "<u>Person</u>," "<u>persons</u>," "<u>people</u>," and "<u>individual</u>" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

13.     "<u>Produce</u>" and "<u>provide</u>" mean to provide a legible true copy of the original of any document and/or communication.

14.     "<u>Relate to</u>," "<u>relating to</u>," "<u>regarding</u>," "<u>concerning</u>," "<u>pertain</u>," and "<u>pertaining to</u>," mean referencing, consisting of, referring to, reflecting, or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

15.     "<u>You</u>" and/or "<u>Your(s)</u>", unless otherwise noted, shall refer to McDow.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Produce all Documents and Communications, including any notes or drafts of minutes, relating to the board of directors meetings held by PlayUp on the following dates: November 24, 2021, December 2, 2021, December 3, 2021, and December 8, 2021.

**Relevance:**     The production of these Documents and Communications will assist the parties and the Court in the United States in assessing PlayUp Inc.'s and Dr. Mintas' claims relating to the failure of the potential deal between FTX and PlayUp and allegations that Dr. Mintas made disparaging statements about PlayUp, thus providing relevant evidence for PlayUp Inc.'s claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and tortious interference with prospective economic advantage. This evidence is also relevant to Dr. Mintas' claims for abuse of process, defamation per se, and false light.

## 12.    Special Methods or Procedures to be Followed (Article 3(i))

It is respectfully requested that McDow be directed to produce the documents identified in Section 11 above and that the responses to the requests for production of documents follow the prescribed methods in the instructions above, which are pursuant to United States procedural guidelines, most notably Federal Rule of Procedure 34. Furthermore, Dr. Mintas requests that McDow provide general information regarding responsive documents in his possession over which it claims privilege separately in a privilege log. All documents are requested to be provided in either their original physical or original electronic format.

Furthermore, McDow is to be examined in an oral deposition under oath in a form requiring him to attest under penalty of perjury that the testimony he gives is true. A transcript of his testimony will be taken. This Court respectfully requests that the Central Authority direct McDow to appear for a deposition on or before January 17, 2024. This Court respectfully requests that attorneys for Dr. Mintas, PlayUp Inc., Simic, and PlayUp Ltd. each be permitted to examine and cross examine McDow. This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure of the United States. This Court respectfully requests that the examination be conducted via video conference.

## 13. Request for Notification of the Time and Place of the Execution of the Request and Identity and Address of Any Person to Be Notified (Article 7)

This Court respectfully requests that the Central Authority notify this Court, the representatives of the parties as identified above, and the witness from whom evidence is requested as identified above.

## 14. Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Article 8)

No judicial personnel of the requesting authority will attend or participate.

## 15. Specification of the Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Article 11):

Under the laws of the United States, any person has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that person and that person's attorney that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly. This attorney-client privilege belongs to the client and can be invoked by the client. A witness also may refuse to give evidence that discloses any information that constitutes the work product of attorneys created during or in anticipation of litigation. If any documents are withheld on such grounds, a statement to that effect should be contemporaneously produced indicating what documents are withheld or redacted and the nature of the privilege claimed.

**16.      Reimbursement (Article 14)**

The fees and costs incurred pursuant to this Request that are reimbursable under the second paragraph of Article 14, or under any other article of, the Hague Evidence Convention that is applicable to Australia will be borne by Dr. Mintas, in care of her attorneys, The Quinlan Law Firm, LLC and Naylor & Braster. Dr. Mintas' payment of any such fees and costs is without prejudice to her making a subsequent request to be reimbursed for these costs by other parties in the matter.

## <u>CLOSING</u>

The Court expresses its appreciation to the Central Authority of Australia for its courtesy and assistance in this matter. It is the understanding of this Court that the granting of assistance of the type herein requested is authorized by the law of Australia and, in particular, by the Hague Evidence Convention.

Date of Request:        February 21, 2024

The Honorable Nancy J. Koppe
United States Magistrate Judge
United States District Court
District of Nevada