# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| PLAYUP, INC., <br>     Plaintiff(s), <br> v. <br> DR. LAILA MINTAS, <br>     Defendant(s). | Case No. 2:21-cv-02129-GMN-NJK <br><br> **Order** <br><br> [Docket Nos. 404, 414, 457] |

The parties return to the Court on their latest round of discovery disputes, this time arising out of Defendant/Counterclaimant Laila Mintas' efforts to obtain discovery from opposing counsel. Pending before the Court is Mintas' motion to compel compliance with a subpoena *duces tecum* seeking document production from the law firm of Zumpano Patricios Popok & Helsten ("ZPPH"). Docket No. 404; *see also* Docket No. 406 (errata). ZPPH filed a response in opposition. Docket No. 410. Mintas filed a reply. Docket No. 419. Also pending before the Court is PlayUp's[1] countermotion for sanctions. Docket No. 414. Mintas filed a response in opposition. Docket No. 424. PlayUp filed a reply. Docket No. 435. Also pending before the Court is PlayUp's motion for protective order seeking to preclude the deposition of lead counsel, Michael Popok. Docket No. 457. Pursuant to the Court's order, Docket No. 460, PlayUp filed a supplement, Docket No. 465. Mintas filed a response in opposition. Docket No. 472. PlayUp filed a reply. Docket No. 486.[2] The motions are properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, Mintas' motion to compel (Docket No. 404) is

---

[1] The reply clarifies that this motion is actually brought by PlayUp, Inc. and Daniel Simic, the parties to this case. Docket No. 435 at 2 n.1. For ease of reference, the Court will generally refer to the PlayUp-related parties and counsel collectively as "PlayUp."

[2] The Court cites herein to the pagination provided by CMECF, as opposed to the native pagination in the filings.

1

**DENIED**, PlayUp's motion for protective order (Docket No. 457) is **GRANTED**, and PlayUp's motion for sanctions (Docket No. 414) is **DENIED**.

**I.      BACKGROUND**

This case arises from a soured business relationship, resulting in the termination of Mintas as CEO, competing allegations of wrongful conduct, and competing claims for tens of millions of dollars in damages. These circumstances are no doubt personal for all involved—and the case involves a lot of money—which has spawned a contentious and messy discovery process.

Mintas brought counterclaims against PlayUp for defamation, false light, and abuse of process. *See* Docket No. 336 (third amended counterclaims). The counterclaims are predicated in part on statements allegedly made by Popok, attorney for PlayUp, to the press regarding this case and regarding Mintas' alleged actions. For example, the counterclaims allege that:

> 169.    Simic, PlayUp Inc. and PlayUp Ltd.'s attorney, Michael Popok, have [sic] given interview(s) with the media disparaging Dr. Mintas. Upon information and belief, this was done at the direction of or with the authorization of Simic, PlayUp Inc. and PlayUp Ltd. As a result of the negative media coverage, Dr. Mintas suffered significant damage to her reputation, and FTX declined to re-engage with PlayUp.
>
> . . .
>
> 181.    Moreover, during the course of this litigation, Simic and PlayUp Inc.'s attorney has given interview(s) with the media disparaging Dr. Mintas. *See* https://www.bonus.com/news/playup-explainer-2/ (last visited February 8, 2023) (Popok quoted as saying, among other things, "Once the FTX deal fell through, she [Dr. Mintas] had the audacity to offer herself up as the fireman—she was the only one who could save the deal with FTX, because everyone at PlayUp was stupid and she was the one who'd built up the company. 'I'm the only one who can bring FTX back to the table;'" "Mintas remained in the Bahamas after FTX had concluded its meeting with Simic and Costa. That's the point at which Popok claims that Mintas betrayed him and the company;" and "So of course FTX bailed. What buyer wouldn't after hearing all the lies Mintas was telling them. Even if they knew she was being entirely truthful, who'd want to buy into a company that's still got someone like her to deal with.").
>
> 182.    Of note, Popok gave this interview at the same time as when Simic has represented he was with FTX in the Bahamas in an effort to strike a deal with FTX.
>
> . . .

2

> 184.  Since filing the lawsuit, PlayUp Inc. has conducted this litigation with abusive measures and litigation tactics, including, but not limited to, having their agent, Popok, give interviews to the press disparaging Dr. Mintas . . .

*See* Docket No. 336 at ¶¶ 169, 181, 182, 184; *see also, e.g.*, *id.* at ¶¶ 135, 223.

On February 13, 2023, Mintas served Popok's firm (ZPPH) with a subpoena duces tecum seeking the production of documents regarding communications between ZPPH employees and the media related to Mintas and this litigation, including specifically communications with the author of the noted Bonus.com article, Devon Jackson. Docket No. 404-2 at 7. ZPPH objected to the subpoena as harassing and seeking irrelevant information. Docket No. 404-6. The ensuing conferral efforts proved unsuccessful. *See* Docket No. 406-2 at ¶¶ 10-11; Docket Nos. 404-7, 404-8. On January 15, 2024, Mintas indicated that she would seek the deposition of Attorney Popok. Docket No. 457-1 at ¶ 7.[3] PlayUp objected to the deposition and the ensuing conferral efforts proved unsuccessful. *Id.* at ¶ 10.

## II.  DISCOVERY MOTIONS STANDARDS

### A.  Motion to Compel Non-Party Document Production

"The discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). Parties are permitted to subpoena nonparties for the production of documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). When the nonparty objects to the subpoena and conferral efforts are unavailing, the serving party may move to compel compliance with the subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 34(c). The nonparty seeking to avoid discovery bears the burden of persuasion in opposing a motion to compel. *See Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966).

### B.  Motion for Protective Order

When a party objects to discovery and conferral efforts are unavailing, the objecting party may seek a protective order. Fed. R. Civ. P. 26(c). The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *V5 Techs. v. Switch, Ltd.*, 334

---

[3] The Court raised concerns regarding the timing of Mintas seeking Attorney Popok's deposition. *See* Docket No. 460. Because Mintas is not entitled to the deposition at any rate, the Court need not rule on the timeliness issue.

F.R.D. 306, 309 (D. Nev. 2019). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). Arguments against discovery must be supported by "specific examples and articulated reasoning." *E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

    C.    <u>Obtaining Deposition Testimony of Opposing Counsel</u>

If a party seeks relevant information that is proportional to the needs of the case, the rules provide that a party may depose "any person." Fed. R. Civ. P. 30(a)(1). The governing rules articulate no prohibition against deposing opposing counsel. *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 478 (N.D. Cal. 1998). Nonetheless, the United States Supreme Court has "alluded to a presumption that trial counsel should not be forced to testify because doing so compromises the standards of the legal profession." *Nocal, Inc. v. Sabercat Ventures, Inc.*, No. C 04–0240 PJH (JL), 2004 WL 3174427, at *2 (N.D. Cal. Nov. 15, 2004) (discussing *Hickman v. Taylor*, 329 U.S. 495, 513 (1947)).

The Eighth Circuit provides the leading case on evaluating the propriety of deposing opposing counsel. In *Shelton v. American Motors Corp.*, the Eighth Circuit recognized that allowing the deposition of opposing counsel "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." 805 F.2d 1323, 1327 (8th Cir.1986). Attempting to take the deposition of opposing counsel causes pretrial delays to resolve work-product and attorney-client objections and collateral issues raised by the attorney's testimony. *Id.* The practice also "detracts from the quality of client representation" and has a "chilling effect" on attorney-client representations. *Id.* For these reasons, depositions of opposing counsel should proceed in limited circumstances when: (1) no other means exist to obtain the information sought; (2) the information is both relevant and non-privileged; and (3) the information is crucial to the preparation of the case. *Id.*

Although the Ninth Circuit has not ruled on the issue, other circuits have adopted the *Shelton* test. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1112 & n.15 (10th Cir. 2001); *see also Nguyen*

4

*v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999) (assuming the applicability of the Shelton test and applying it).[4] Judges within this District, including the undersigned, also routinely follow the Eighth Circuit's approach enunciated in *Shelton* in addressing attempts to obtain deposition testimony from opposing counsel. *See Hanover Ins. Co. v. Terra S. Corp.*, No. 2:18-cv-00675-KJD-EJY, 2019 WL 5963986, at *3 (D. Nev. Nov. 12, 2019) (collecting cases); *see also, e.g., Couturier v. Am. Invsco Corp.*, No. 2:12-cv-01104-APG-NJK, 2013 WL 4499008, at *3-4 (D. Nev. Aug. 20, 2013). Although not unanimous, applying *Shelton* in this context is also the majority approach within the Ninth Circuit. *See SBP LLLP v. Hoffman Constr. Co. of Am.*, No. 1:19-cv-00266-DCN, 2021 WL 3131310, at *4 (D. Id. July 23, 2021); *see also Littlefield v. Nutribullet, LLC*, No. CV 16-6894 MWF (SSx), 2017 WL 10438897, at *4 (C.D. Cal. Nov. 7, 2017) (collecting cases). The Court will continue to follow the majority approach and will apply *Shelton* to Mintas' request to depose opposing counsel.

Hence, the request to depose opposing counsel will be subject to the following standards, succinctly stated. Depositions of opposing counsel are disfavored and should only be permitted in limited circumstances. *See Johnson v. Couturier*, 261 F.R.D. 188, 193 (E.D. Cal. 2009); *see also Harter v. CPS Sec. (USA), Inc.*, No. 2:12-cv-00084-MMD-PAL, 2013 WL 129418, at *8 (D. Nev. Jan. 9, 2013). The party seeking to depose opposing counsel must show that: (1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327. In this context, the burden shifts to the party seeking to depose an attorney to demonstrate that such deposition is warranted. *American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995); *see also Fernandez v. Penske Truck Leasing Co.*, No. 2:12-cv-00295-JCM-GWF, 2013 WL 438669, at *2 (D. Nev. Feb. 1, 2013). This is a "difficult burden" to meet. *Ditech Fin. LLC v.*

---

[4] The Second Circuit has expressed a preference for a "more flexible approach to attorney depositions," though it did not "rule definitively on the matter" because that appeal was moot. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 67 (2d Cir. 2003); *see also id.* at 72 n.4 (explaining that the decision was *dicta* given mootness of the appeal). While there is some daylight between *Shelton* and the approach suggested in *Friedman*, both create a presumption against depositions of opposing counsel and are only "slightly different." *Monster Energy Co. v. Vital Pharm., Inc.*, No. 5:18-cv-01882-JGB (SHKx), 2020 WL 2405295, at *8 (C.D. Cal. Mar. 10, 2020).

*SFR Invs. Pool 1, LLC*, No. 2:15-cv-00476-JCM-VCF, 2016 WL 4370034, at *2 (D. Nev. Aug. 15, 2016).

      D.      <u>Obtaining Document-Based Discovery from Opposing Counsel</u>

Although the Ninth Circuit has not ruled on the issue, several courts within the Ninth Circuit have applied the *Shelton* framework to document requests served on opposing counsel. *Pizana v. Sanmedica Int'l, LLC*, No. 2:18-cv-00655-DAD-SKO, 2021 WL 1060440, at *5 n.3 (E.D. Cal. Mar. 18, 2021); *Monster Energy*, 2020 WL 2405295, at *8-9; *Silver v. BA Sports Nutrition, LLC*, No. 20-cv-00633-SI, 2020 WL 6342939, at *2 (N.D. Cal. Oct. 29, 2020); *Rygg v. Hulbert*, No. C11-1827 JLR, 2013 WL 264762, at *1 (W.D. Wash. Jan. 23, 2013); *Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau*, No. C 06-7028 MMC (MEJ), 2007 WL 4171136, at *1 (N.D. Cal. Nov. 26, 2007); *Nocal*, 2004 WL 3174427, at *2-4.[5] While recognizing that depositions differ from document requests, these courts have explained that discovery sought from opposing counsel is "universally disfavored." *Monster Energy*, 2020 WL 2405295, at *9. That disfavor arises from the similar risks of disrupting litigation, detracting from the quality of client representation, and chilling attorney-client representations. *See Rygg*, 2013 WL 264762, at *1 (explaining that document requests "are just as problematic as the deposition requests, and for the same reasons"). This is the majority approach within the Ninth Circuit.

Mintas argues that document-based discovery from opposing counsel is analyzed under the default discovery rules and that no special protection should be afforded to opposing counsel, citing to the decision of a discovery special master. *See* Docket No. 419 at 11-12 (discussing *in re Allergan, Inc. Securities Litig.*, No. 14-cv-02004-DOC (KES), 2016 WL 5922717, at *3 (C.D. Cal. Sept. 23, 2016)).[6] The special master expressed doubt that *Shelton* applied beyond the context of depositions, noting that some courts have encouraged written discovery as a viable alternative

---

[5] Courts from outside the Ninth Circuit have also applied *Shelton* to requests for documents from opposing counsel. *See Allen v. Brown Advisory, LLC*, No. 3:20-mc-00008, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020); *XTO Energy, Inc. v. ATD, LLC*, No. 1:14-cv-01021, 2016 WL 1730171, at *31 (D.N.M. Apr. 1, 2016).

[6] At least one other decision within the Ninth Circuit has questioned whether *Shelton* applies in the document-production context, but that court ultimately declined to resolve the issue. *See Wilcox v. Swapp*, No. 2:17-cv-275-RMP, 2018 WL 6419295, at *2 (E.D. Wash. Dec. 6, 2018).

to attorney depositions because it "do[es] not involve the same dangers as an oral deposition of opposing counsel." *See id.* (quoting *Kelling v. Bridgestone/Firestone, Inc.*, 153 F.R.D. 170, 171 (D. Kan. 1994)). While the approach taken in *Allergan* is not an unreasonable one, the Court is more persuaded by the majority approach within the Ninth Circuit concluding that requests for documents from opposing counsel are subject to the *Shelton* test. The Court will apply *Shelton* to Mintas' request for documents from opposing counsel.

**III.    DISCOVERY MOTIONS ANALYSIS**

As explained above, the party seeking to depose opposing counsel or obtain document-based discovery from opposing counsel must show that: (1) no other means exist to obtain the information, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *Shelton*, 805 F.2d at 1327. Because Mintas fails to satisfy the first and third requirements, the discovery will not be permitted.

       A.    <u>Relevant and Nonprivileged Nature of the Information</u>

The discovery at issue consists of a proposed deposition to obtain testimony from Attorney Popok regarding his contacts with the media, as well as requests for documents from Attorney Popok's firm regarding contacts with the media. *See, e.g.*, Docket No. 404-2 at 6-8; Docket No. 457-1 at ¶ 8. As a threshold matter, the Court agrees with Mintas that this discovery is relevant. *See, e.g.*, Docket No. 406-1 at 11-14. The discovery seeks information regarding Attorney Popok's statements, allegedly made on behalf of PlayUp, which form part of the basis of Mintas' counterclaims. *See* Docket No. 336 at ¶¶ 169, 181, 182, 184. The standard for discovery

"relevance" remains broad in nature, *V5 Technologies*, 334 F.R.D. at 309, and is met here.[7] The Court also agrees with Mintas that attorney communications with the media are not subject to the attorney-client privilege. *Cf. Wynn Resorts, Ltd. v. Eighth Judicial Dist. Ct.*, 133 Nev. 369, 374 (2017) (for the attorney-client privilege to apply, "the communications must be between an attorney and client"); *see also* Docket No. 435 at 8 n.5 (PlayUp indicating that it "is not claiming that the communications sought by the subpoena are privileged").[8]

        B.      <u>No Other Means Exist to Obtain the Information</u>

Because the information sought is relevant and nonprivileged, the second requirement of the *Shelton* test is met here. That is as far as Mintas' showing goes, though. With respect to the first requirement, Mintas argues that obtaining discovery from opposing counsel is the "only means" to determine what Attorney Popok and ZPPH told the media. Docket No. 419 at 13. The Court disagrees. Mintas forgets an obvious alternative source for this information: the media outlets and reporters who wrote the subject stories. Quite plainly, Attorney Popok was not talking to himself, and Mintas already knows the identity of the media outlet (Bonus.com) and reporter (Devon Jackson) that quoted Attorney Popok. *E.g.*, Docket No. 336 at ¶ 181. Mintas also knows the other publications and authors that have written about her and this case. *Compare* Docket No. 406-1 at 7 *with* Docket No. 404-2 at 8. Mintas provides no meaningful explanation why this

---

[7] In arguing against relevance, PlayUp relies on an earlier order denying Mintas' motion to disqualify counsel. *See, e.g.*, Docket No. 410 at 8-9. Such reliance is misplaced. That ruling was predicated on a narrow issue: whether Mintas established that Attorney Popok knew or should have known that his extrajudicial statements would have a substantial likelihood of materially prejudicing an adjudicative proceeding. Docket No. 289 at 2-3. The Court did not therein opine on whether Attorney Popok's communications with the media were defamatory or otherwise actionable, nor whether discovery into the communications was warranted. *See id.*

PlayUp also argues that the discovery is "irrelevant" because Attorney Popok has declared that there are no additional contacts. *See* Docket No. 486 at 6. In support of that proposition, PlayUp cites an unpublished district court decision from 2012 that has never been followed. *See id.* In this Court's view, the existence of a contrary declaration does not bear on whether the discovery meets the standard of "relevance." The Court will discuss the identified declaration, however, with respect to whether the information sought is crucial to the case.

[8] PlayUp pivots in briefing the deposition dispute to argue that Mintas failed to show that Popok possesses nonprivileged information. *See, e.g.*, Docket No. 486 at 6-7. The Court need not get into the weeds on whether some aspects of the deposition might veer into privileged areas, however, because the deposition cannot proceed regardless.

8

information could not be obtained from the publications and authors, rather than seeking it from opposing counsel.⁹ Hence, Mintas fails to establish the first requirement. *Cf. Flotsam*, 2007 WL 4171136, at *1 (noting potential to obtain press-related documents from nonparty news agencies rather than from opposing counsel).

### C.  The Information is Crucial to the Preparation of the Case

In addition to failing to show that no other means exist to obtain this information, Mintas has also not shown that the information is "crucial" to the preparation of the case. Her argument as to the "crucial" nature of the discovery is barebones. *See* Docket No. 472 at 21-22; *see also* Docket No. 419 at 13. Mintas has effectively collapsed the analysis of whether the discovery is "crucial" with the distinct question of whether the discovery is "relevant," but these terms are not synonymous. *Ditech*, 2016 WL 4370034, at *3. For discovery of opposing counsel to be warranted, the information "must have greater importance to the action than merely being relevant." *Id.*; *see also FMC Techs., Inc. v. Edwards*, No. C05-946C, 2007 WL 836709, at *5 (W.D. Wash. Mar. 15, 2007) (explaining that "helpful" deposition testimony is not "crucial"). Information would be crucial if it is "necessary for the survival of a claim or defense." *Hanover Insurance*, 2019 WL 5963986, at *8 (citing *Mid-Century Ins. Co. v. Wells*, No. 2:12-cv-02041-GMN-VCF, 2013 WL 12321555, at *3 (D. Nev. June 17, 2013)).

Mintas states in conclusory fashion that the information is necessary to effectively litigate her claims. *E.g.*, Docket No. 472 at 22. Why that is so is not meaningfully explained. Mintas relies on a case in which a showing was made that discovery was needed to oppose summary judgment, *see id.* at 21-22, but Mintas notably fails to make any similar showing that her ability to prove any particular element of any of her counterclaims hinges on this discovery. To the contrary, Mintas herself notes that her counterclaims only rely "in part" on the allegations involving Attorney Popok, *see, e.g.*, Docket No. 472 at 21, and there are myriad other factual allegations on

---

⁹ Mintas references that only Attorney Popok and ZPPH know the entire universe of their communications with the media, so she cannot obtain this information from the media. *See, e.g.*, Docket No. 472 at 19. Such an assertion is not responsive to the bulk of the discovery in dispute, which seeks communications <u>with specifically identified individuals and media outlets</u>. Moreover, this argument essentially rehashes Mintas' contention that she disbelieves Attorney Popok's declaration as to the limited nature of his media contacts. The Court addresses that issue below.

9

which her counterclaims are based. The fact that this information represents a subset of the factual predicate to Mintas' counterclaims undermines the contention that the information is crucial. In short, while this discovery might be helpful to Mintas in proving her counterclaims, *see, e.g.*, Docket No. 406-1 at 11-13, she has not shown that it is crucial.

The primary gist of Mintas' argument is that discovery may disprove the attestations made by Attorney Popok that his media contacts have been limited to Devon Jackson. *See* Docket No. 424 at 6; *see also* Docket No. 457 at 3 n.2. The Court is not persuaded that this is solid ground on which to find the information is crucial. Several courts have concluded that information is not crucial to the preparation of the case when the need for it is predicated on bald suspicions concerning the veracity of an attorney's earlier attestations in the case. *Gilbert v. Money Mut., LLC*, No. 13-cv-01171-JSW (LB), 2016 WL 3196605, at *7 (N.D. Cal. June 9, 2016) (denying request to depose opposing counsel where the movants' main argument was that they did not believe opposing counsel's declaration); *see also S.E.C. v. Pulier*, No. CV 17-7124 PSG (RAOx), 2020 WL 8572081, at *4 (C.D. Cal. Dec. 14, 2020). In this case, Attorney Popok filed a declaration under penalty of perjury that there has been "no other contact with the media" from himself or ZPPH apart from the communications with Devon Jackson related to the Bonus.com article. Docket No. 251 at ¶¶ 29-31. PlayUp also notes that Attorney Popok's correspondence with Jackson was voluntarily provided earlier in the case. *See* Docket No. 410 at 3 n.2 (citing Docket No. 255-1). Mintas insinuates that an off-handed reference in the article that Attorney Popok was happy to talk "to anyone who will listen" must mean that he was lying under oath to the Court about having limited media contacts. *See, e.g.*, Docket No. 419 at 10; Docket No. 424

at 6.[10] The Court does not find that this statement, which theoretically suggests additional media contacts, renders it crucial to "test" Attorney Popok's declaration to the contrary.[11]

For these reasons, Mintas fails to establish the third requirement.

### D. Conclusion

Mintas has failed to sustain her heavy burden of showing that the deposition and written discovery she seeks from opposing counsel is warranted. Mintas has not shown that the information cannot be obtained from another source or that it is crucial to the preparation of the case. "Either ground" provides a basis to prohibit this discovery. *SBP*, 2021 WL 3131310 at *4. Accordingly, Mintas' motion to compel will be denied and PlayUp's motion for protective order will be granted.

## IV. PLAYUP'S COUNTERMOTION FOR MONETARY RELIEF

In responding to the motion to compel the production of documents, PlayUp filed a countermotion for an award of expenses pursuant to Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure and for sanctions pursuant to 28 U.S.C. § 1927. Docket No. 414 at 19-22. The Court is not persuaded on either front.[12]

### A. Rule 37(a)(5)(B)

A pillar of federal litigation is that discovery should proceed with minimal involvement of the Court. *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145 (D. Nev. 2015) (quoting

---

[10] Mintas has not identified any discovery obtained from this particular reporter as to what prompted this statement to be written.

[11] Mintas alludes to the potential that this discovery from opposing counsel might theoretically reveal additional fact witnesses. *See* Docket No. 472 at 22. Such conclusory speculation is unpersuasive, particularly given the declaration to the contrary. At any rate, this argument does not make sense given the procedural posture of the case, in which discovery is generally closed. Docket No. 496 at 4. Discovery is meant to be a frontloaded process and not one involving deadline brinksmanship. *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 363 (D. Nev. 2019) (quoting *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010)). Foundational discovery (like identifying fact witnesses) should not take place in the twilight of the discovery period. *Cf. U.S. E.E.O.C. v. Pioneer Hotel, Inc.*, No. 2:11-cv-01588-LRH-GWF, 2014 WL 5045109, at *2 (D. Nev. Oct. 9, 2014) (declining to compel discovery that would be used for follow-on discovery efforts given procedural posture).

[12] Mintas requests an award of expenses in relation to her motion to compel. Docket No. 406-1 at 14. Because Mintas lost that motion, she is not entitled to an award of expenses. *See* Fed. R. Civ. P. 37(a)(5)(A).

11

*F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986)). Instead of forcing judicial oversight of every dispute, attorneys are expected to approach discovery with an eye toward cooperation, practicality, and sensibility. *In re Convergent Techs. Securities Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985). "The governing rules reflect this in several ways, including providing a presumption that reasonable expenses—including attorneys' fees—will be awarded to the party that prevails on a discovery motion." *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 513 (D. Nev. 2020) (citing *Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994)). Hence, when a motion to compel has been denied, the Court "must" generally award expenses to the party that successfully opposed the motion. *See* Fed. R. Civ. P. 37(a)(5)(B).

The losing party may rebut the presumption of an award of expenses by establishing that her position was "substantially justified." Fed. R. Civ. P. 37(a)(5)(B). A position is substantially justified when "the parties had a genuine dispute on matters on which reasonable people could differ as to the appropriate outcome." *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 609 (D. Nev. 2016) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The party facing an award of expenses bears the burden of establishing substantial justification. *See Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maintenance Assoc.*, 316 F.R.D. 327, 335 (D. Nev. 2016). District courts have "great latitude" in awarding expenses under Rule 37. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

The Court agrees with Mintas that an award of expenses is not warranted here. As discussed above, the requests for documents from Attorney Popok's firm fall within the broad scope of relevant discovery in light of Mintas' allegations that Attorney Popok defamed her in media communications. Docket No. 336 at ¶¶ 169, 181, 182, 184. Moreover, Mintas cited some authority casting doubt that the *Shelton* analysis applies to document-based discovery. *See Allergan*, 2016 WL 5922717, at *3. Although it ultimately turned out to be a loser, Mintas' motion to compel the production of documents was substantially justified.

B.     28 U.S.C. § 1927

"Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An award of sanctions under Section 1927 requires a showing of recklessness or bad faith. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002) (reconciling case law).

The Court is not persuaded that such sanctions are warranted here. As noted above, the discovery at issue in the motion compel is relevant and Mintas' motion was substantially justified.[13] This request for sanctions appears predicated mostly on the assertion that Mintas is harassing PlayUp by relitigating the earlier denial of her motion to disqualify counsel. *See, e.g.*, Docket No. 414 at 20-21; Docket No. 435 at 2-3. As already explained, that ruling addressed a narrow issue: whether Attorney Popok knew or should have known that his extrajudicial statements would have a substantial likelihood of materially prejudicing an adjudicative proceeding. Docket No. 289 at 2-3. The Court did not therein opine on whether Attorney Popok's communications with the media were defamatory or otherwise actionable, nor whether Attorney

---

[13] The parties dispute the statement that Attorney Popok contacted the media repeatedly, which Mintas' counsel later changed through an errata to indicate that he repeatedly communicated with the media. *See, e.g.*, Docket No. 435 at 11. To be perfectly clear, Attorney Popok's version of events is that he had at least three communications with reporter Devon Jackson. *See, e.g.*, Docket No. 410 at 6 (noting an "initial call" that was tabled, a second interaction in which Jackson "spoke to Popok again," and an email from Attorney Popok regarding a statement in the story that was published). That Mintas' counsel initially described these circumstances as "PlayUp's counsel [having] repeatedly reached out to the media," Docket No. 404 at 4, is not sanctionable conduct.

13

Popok's communications with the media were discoverable.[14] In short, PlayUp has not shown that Mintas unreasonably or vexatiously multiplied proceedings.

## V. CONCLUSION

For the reasons discussed above, Mintas' motion to compel (Docket No. 404) is **DENIED**, PlayUp's motion for protective order (Docket No. 457) is **GRANTED**, and PlayUp's motion for sanctions (Docket No. 414) is **DENIED**.

IT IS SO ORDERED.

Dated: March 25, 2024

_____
Nancy J. Koppe
United States Magistrate Judge

---

[14] The briefing includes ubiquitous accusations from PlayUp that Mintas is not engaging in discovery cooperatively and that she provides over-aggressive argument, but that is by no means a one-sided problem. By way of an obvious example of the latter, PlayUp repeatedly exaggerates the scope and meaning of the order denying the motion to disqualify. *See, e.g.*, Docket No. 410 at 7 ("the Court expressly held that the [Popok] has not breached any rule of professional conduct since taking over as lead trial counsel"); Docket No. 435 at 3 ("this Court found that Mr. Popok's communications with the reporter were not improper"). Such grand pronouncements are plainly absent from the subject order. *See* Docket No. 289 at 2-3.

Moreover, the parties engaged in full motion practice on a discovery dispute over these documents, along with full motion practice on a countermotion for sanctions, all while PlayUp is contending that there are no undisclosed contacts or documents. *See* Docket No. 410 at 3 n.2. "Despite that," PlayUp felt "compelled" to engage in lengthy motion practice because of what it viewed as Mintas' improper conduct. *Id.* Neither discovery nor discovery motion practice is meant to proceed in tit-for-tat fashion. *National Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680-81 (C.D. Cal. 2009) (collecting cases). As alluded to by Mintas, *see* Docket No. 419 at 10 n.4, one must wonder if the spirit of discovery cooperation would have been better advanced by PlayUp noting its objections to the subpoena for documents, and then certifying that no responsive documents exist other than the one already filed on the docket.

Lastly, it is important to recognize that there is a published article indicating that Attorney Popok made a number of statements to Devon Jackson, including allegedly saying Mintas had been telling "lies." Docket No. 404-4 at 6. As a result, Attorney Popok's conduct is specifically identified in Mintas' operative pleading. *E.g.*, Docket No. 336 at ¶ 181. While the Court ultimately denies her attempts to obtain the disputed discovery, the suggestion that Mintas is seeking this discovery only as a means to harass PlayUp is not substantiated.