UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PLAYUP, INC., <br>     Plaintiff(s), <br> v. <br> DR. LAILA MINTAS, <br>     Defendant(s). | Case No. 2:21-cv-02129-GMN-NJK <br><br> **Order** <br><br> [Docket Nos. 509, 511] |

Pending before the Court is the motion for forensic examination filed by Defendant/Counterclaimant Laila Mintas. Docket No. 509;[1] *see also* Docket No. 511 (sealed version); Docket No. 515 (errata). Plaintiff/Counter-Defendant PlayUp, Inc. and Counter-Defendant Daniel Simic filed a response. Docket No. 518. Mintas filed a reply. Docket No. 527; *see also* Docket No. 529 (sealed declaration). The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed below, the motion is **GRANTED** in that Simic must search for and produce responsive documents, and provide a declaration of the same, and the motion is otherwise **DENIED** without prejudice.

**I.    PROPER SCOPE OF THE MOTION**

The Court notes as a threshold matter that Mintas seeks relief both as to PlayUp, Inc. and Simic on the grounds that they failed to produce documents in their possession, custody, or control. *See, e.g.*, Docket No. 509 at 20-21. The undersigned already adjudicated Mintas' contention that PlayUp, Inc. was in possession, custody, or control of PlayUp Ltd.'s documents, Docket No. 178,[2] and Mintas' objection to the district judge on that order was rejected, Docket No. 325. The pending motion fails to seek reconsideration of the prior orders or address the governing standards for doing

---

[1] Citations herein to filed documents will be to the CMECF pagination, as opposed to any native pagination in the documents.

[2] Simic at times overstretches the prior order as somehow preventing a finding that *he* is in possession, custody, or control of the documents in dispute, *see, e.g.*, Docket No. 518 at 6, 7, but the Court's prior order did not address that issue.

1

so. *See* Local Rule 59-1(a). Relatedly, the pending motion fails to explain how this request could be deemed timely at this very late stage of the pretrial phase of the case. *See* Local Rule 59-1(c) ("Motions for reconsideration must be brought within a reasonable time"). As a result, the Court declines to address Mintas' motion to the extent it relates to PlayUp, Inc.

The Court also notes that Mintas asks over the span of a single page for additional depositions of Simic and Michael Costa. *See* Docket No. 509 at 24-25; *see also id.* at 17 (identifying instructions not to answer at depositions). This request is improperly presented within the instant motion, *see* Local Rule IC 2-2(b); *Underwood v. O'Reilly Auto Enterps., LLC*, 2022 WL 1184883, at *2 (D. Nev. Apr. 20, 2022), *see also* Docket No. 467 at 3, and is insufficiently developed, *see, e.g.*, *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013). Accordingly, the Court declines to address Mintas' request for additional depositions.

## II.   BACKGROUND

This case arises from a soured business relationship, resulting in the termination of Mintas as CEO, competing allegations of wrongful conduct, and competing claims for tens of millions of dollars in damages. These circumstances are no doubt personal for all involved—and the case involves a lot of money—which has spawned a contentious and messy discovery process.

Mintas served a number of discovery requests on Simic, including requests for production for: (1) "all documents and communications between [Simic] and any third-party relating to the FTX Deal," Docket No. 509-1 at 31; (2) "all documents and communications between [Simic] and FTX related to the FTX Deal and any future investment, loan, acquisition, merger, or other financial arrangement with FTX and PlayUp, Inc., PlayUp Ltd., and/or PlayChip," *id.*; (3) "all documents and communications between You and any third-party related to the negotiations for Mintas' ongoing employment with PlayUp, Inc. once her current contract expired November 30, 2021," *id.*; (4) "all Documents and Communications exchanged between [Simic] and FTX on or after November 1, 2021," *id.* at 47; and (5) "all notes, Documents, and Communications relating to any meeting involving [Simic] and FTX," *id.* at 49. Simic responded to the document requests by indicating that either he had no responsive documents or that he would produce the non-privileged responsive documents within his possession, custody, or control that had not already

been produced. *Id.* at 75-76, 95, 99. Mintas thereafter obtained from other sources a number of responsive documents that had not been produced by Simic, including scores of emails and text messages written by or received by Simic. *See, e.g.*, Docket No. 509 at 7-13.

The parties are currently before the Court on Mintas' motion seeking to compel a forensic examination or to compel further document production.

**III.   STANDARDS**

The discovery rules permit a party to request to inspect, copy, test, or sample electronically stored information or designated tangible things. Fed. R. Civ. P. 34(a)(1). This rule provides a basis on which the Court may order a forensic examination in appropriate circumstances:

> Computer forensics involves the location, examination, identification, collection, preservation, and analysis of computer systems and electronically stored information. Forensic examination is unlike the traditional discovery process in that the subject party is required to open its physical premises and electronic systems to a third-party expert. The subject party monitors the third party "throughout a lengthy process of 'imaging' (creating mirror images of certain computer storage devices) and searching the party's computer network, and must bear the risk of any inadvertent damage or disruption to its systems."

*Gergawy v. U.S. Bakery, Inc.*, No. 2:19-cv-00417-SAB, 2021 WL 6139419, at *2 (E.D. Wash. Aug. 24, 2021) (internal citations omitted).

"Courts in this circuit have been reluctant to grant motions compelling forensic examinations of a party's computers." *SGII, Inc. v. Suon*, No. 8:21-cv-01168-DOC (JDEx), 2021 WL 6752324, at *9 (C.D. Cal. Dec. 29, 2021).[3] In considering whether the circumstances warrant a forensic examination, courts will consider several factors:

---

[3] There are several reasons for exercising caution before allowing a forensic examination. Such a procedure runs counter to the paradigm that "litigants are generally responsible for preserving [and producing] relevant information on their own." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Courts also recognize that computers, cell phones, and other electronic devices are not simply "technological convenience[s]. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Riley v. Cal.*, 573 U.S. 373, 403 (2014); *see also Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 WL 5281629, at *6 (N.D. Cal. Oct. 22, 2018). "Inspection or testing of certain types of electronically stored information may raise issues of confidentiality or privacy. . . . Courts should guard against undue intrusiveness resulting from inspecting and testing such systems." Fed. R. Civ. P. 34(a), Advisory Comm. Notes (2006). "[C]ourts must consider the significant interests implicated by forensic imaging before ordering such procedures." *John B.*, 531 F.3d at 460.

3

> A determination of whether the circumstances justify forensic imaging requires consideration of whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests. The scales tip in favor of compelling forensic imaging where there exists evidence of either discrepancies in a discovery response or a failure by the responding party to produce requested information.

*United Artists Corp. v. United Artists Studios LLC*, No. 2:19-cv-00828-MWF-MAAx, 2019 WL 9049050, at *9 (C.D. Cal. Oct. 7, 2019) (quotations and internal citations omitted). A forensic examination is appropriate when there are "serious questions" about the reliability or completeness of the materials produced, *Advante Int'l Corp. v. Mintel Learning Tech.*, No. C 05-01022 JW (RS), 2006 WL 3371576, at *1 (N.D. Cal. Nov. 21, 2006), or about the "candor" of the producing party's assertions, *Ignite Spirits, Inc. v. Consulting by AR, LLC*, No. 2:21-cv-01590-JCM-EJY, 2022 WL 3346754, at *3 (D. Nev. Aug. 11, 2022).

The party seeking a forensic examination bears the burden of showing that such relief is warranted based on the circumstances of a particular case. *E.g.*, *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 908 (S.D. Tex. 2015); *MGA Ent., Inc. v. Nat'l Prods. Ltd.*, No. CV 10-07083 JAK (SSx), 2012 WL 12886446, at *2 (C.D. Cal. Jan. 26, 2012).[4] A forensic examination is warranted only upon "a strong showing" that the opposing party has defaulted on its discovery obligations. *Motorola Solutions*, 314 F. Supp. 3d at 939. Whether to permit a forensic examination is a matter entrusted to the broad discretion of the trial court. *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 5748093, at *1 (S.D. Cal. Sept. 25, 2020); *see also Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

---

[4] There is inconsistency in the case law as to the burden of persuasion on a motion for forensic examination. *See Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12cv2472-AJB(KSC), 2014 WL 12642170, at *3 (S.D. Cal. May 28, 2014) (placing burden on party resisting forensic examination). The Court is also mindful that the Ninth Circuit has indicated that the burden is generally on a party seeking to avoid discovery given "the liberal discovery principles of the Federal Rules." *Blankenship v. Hearst Corp.* 519 F.2d 418, 429 (9th Cir. 1975). On the other hand, a motion to compel a forensic examination is not subject to liberal discovery principles and is disfavored. The burden of persuasion is properly placed on the party seeking the forensic examination. *See Motorola Sols., Inc. v. Hytera Comms. Corp.*, 314 F. Supp. 3d 931, 939 (N.D. Ill. 2019).

4

## IV. ANALYSIS

Simic was party to many written communications as evidenced by nonparty subpoena responses that Simic did not produce in responding to Mintas' discovery requests served on him. Simic resists any repercussions for not producing those documents by arguing that he is not in possession, custody, or control of these documents because they were made in relation to his work for nonparty PlayUp Ltd. *See, e.g.*, Docket No. 518 at 15-17. Mintas replies that Simic does have possession, custody, or control of these documents, and that Simic should have turned them over. *See, e.g.*, Docket No. 509 at 18-21. Mintas further argues that Simic has actively obstructed discovery and displayed bad faith warranting a forensic examination. *See, e.g.*, *id.* at 21-22.[5]

### A. Simic's Possession, Custody, or Control

The Court begins with the threshold question of whether Simic has possession, custody, or control of documents that he failed to produce.

#### 1. Possession

Rule 34(a)(1) of the Federal Rules of Civil Procedure requires production of documents in a party's "possession, custody, or control." These provisions are written in the disjunctive, so satisfying only one of them suffices to find an obligation for production. *Cf. Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (quoting *Cumis Ins. Soc., Inc. v. South-Coast Bank*, 619 F. Supp. 193, 196 (N.D. Ind. 1985)). Hence, a finding of actual possession is alone sufficient to trigger an obligation to produce responsive documents. Moreover, the case law is clear that a corporate officer party who has actual possession of responsive documents is required to produce them regardless of any contention that the documents were created in that person's role as a corporate officer. *See, e.g.*, *uSens, Inc. v. Shi*, No. 18-cv-01959-SVK, 2019 WL 13201984, at *2 (N.D. Cal. Apr. 24, 2019). Case law does not "differentiate between documents that [parties] possess as a corporate officer and documents that they possess as an individual." *Id.*; *see also Meeks v. Parsons*, No. 1:03-cv-6700-LJO-GSA, 2009 WL 3003718, at *3 (E.D. Cal. Sept. 18,

---

[5] Although it has carefully reviewed the papers, the Court declines to address herein every argument raised, or every case cited, by the parties. *Cf. PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1099 (D. Nev. 2022).

2009) (making clear that despite legal concepts of corporate separateness, a corporate officer or director must produce corporate documents that "he has in his possession"). Instead, "[a] party having actual possession of documents must allow discovery even if the documents belong to someone else; legal ownership of the documents is not determinative." *Thomas v. Hickman*, No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974, at *13 (E.D. Cal. Dec. 6, 2007) (citing *in re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)).

As Mintas' motion makes perfectly clear, Simic has possession of the emails and text messages that he sent or received. Indeed, Simic testified that he printed out physical copies of the emails, *see* Docket No. 509-1 at 216, and took screenshots of other electronic messages, Docket No. 527-1 at 25 (addressing Signal communications). The motion argues that these circumstances more than suffice to establish "possession" for Rule 34 purposes. *See, e.g.*, Docket No. 509 at 14, 18. Although Simic contests "control" and reiterates his contention that the responsive documents were created in his role as CEO for PlayUp Ltd., he fails to directly tackle the issue of whether he has actual "possession" of the communications that he sent or received and of which he had actual, physical copies. The undisputed record shows plainly Simic's possession of responsive documents that were not produced.[6]

2. Control

Even were the Court not persuaded that Simic has actual possession of unproduced, responsive documents, Mintas also argues that Simic has control over them based on the prerogatives that accompany his high corporate position with PlayUp. *See, e.g.*, Docket No. 509 at 18-21. Simic argues that defendants sued in their individual capacity cannot be found to have control over corporate documents. *See, e.g.*, Docket No. 518 at 15-17. Mintas has the better argument.

---

[6] Simic contends that the Court must protect him from the burden of having to produce documents that Mintas might have obtained from PlayUp Ltd. through Hague Convention processes. *See, e.g.*, Docket No. 518 at 10-11. Courts are sensitive about protecting a non-party from the burden of producing documents that could be obtained more easily from a party. *See, e.g., McCall v. State Farm Auto. Ins. Co.*, No. 2:16-cv-01058-JAD-GWF, 2017 WL 3174914, at *6 (D. Nev. July 26, 2017). As Mintas notes in reply, however, the case at hand involves discovery requests served on Simic as a party. *See, e.g.*, Docket No. 527 at 7.

1    "Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir 1989). The "practical ability to obtain the requested documents" is not sufficient to establish the requisite "control" over the documents. *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (addressing parallel provision for subpoenas in Rule 45(a) of the Federal Rules of Civil Procedure). "The party seeking the production of the documents . . . bears the burden of proving that the opposing party has such control." *International Union*, 870 F.2d at 1452.

Ample case law has found that a high-level corporate officer has control over corporate documents. *E.g.*, *General Environmental Sci. Corp. v. Horsfall*, 136 F.R.D. 130, 133-134 (N.D. Ohio. 1991); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989); *Haseotes v. Abacab Int'l Comps., Inc.*, 120 F.R.D. 12, 14 (D. Mass. 1988); *United States v. Int'l Business Machs. Corp.*, 71 F.R.D. 88, 91 (S.D.N.Y. 1976); *but see American Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001). The law has been particularly clear that a corporate officer is required to produce the emails that the officer herself sent or received. *See, e.g.*, *Meyer v. Cnty. of San Diego*, No. 21-cv-341-RSH-BLM, 2024 WL 86603, at *11 (S.D. Cal. Jan. 8, 2024). Courts have emphatically rejected the contention that a high-level corporate officer does not have control over corporate documents based on the contention that the documents are "owned" by the corporation. *See Inland Concrete Enterps., Inc. v. Kraft Ams. LP*, No. CV 10-1776-VBF (OPx), 2011 WL 13209239, at *3 (C.D. Cal. Feb. 3, 2011); *see also in re Flag Telecom Holdings, Ltd. Securities Litig.*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006) (warning against indulging in "shell game" tactics designed to thwart legitimate discovery efforts).[7]

---

[7] Simic's reliance on cases regarding corporate "employees" is unpersuasive because the control of a high-ranking corporate officer is not comparable to the control of a run-of-the-mill employee. *See in re Rule 45 Subpoena Issued to Robert K. Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at *5 (E.D.N.C. Nov. 26, 2007); *see also Genomics v. Song*, No. 21-cv-04507-JST (LJC), 2024 WL 2044627, at *7 (N.D. Cal. May 7, 2024) (distinguishing control of a corporate officer and an officer or director). Simic also argues that requiring corporate officers to produce documents runs afoul of the Ninth Circuit's rejection of a "practical ability" test, *see* Docket No. 518 at 17, but courts have also reached the same conclusion even under the more stringent Ninth Circuit standard. *See, e.g.*, *Inland Concrete Enterprises*, 2011 WL 13209239, at *3.

Mintas has made a sufficient showing that Simic has control over PlayUp Ltd.'s documents. Simic is the CEO of PlayUp Ltd. *See, e.g.*, Docket No. 67-1 at ¶ 5.[8] Such a fact, standing alone, might suffice to establish control for Rule 34 purposes. *See, e.g.*, *Inland Concrete Enterprises*, 2011 WL 13209239, at *3. In addition, however, Simic also testified that he has access to and controls all of PlayUp Ltd.'s corporate records on its Microsoft Teams database, Docket No. 509-1 at 215, that he is in charge of this litigation for PlayUp, *see* Docket No. 509 at 14,[9] and that he printed the emails related to the case and provided them to PlayUp's lawyers, Docket No. 509-1 at 216; *see also* Docket No. 527-1 at 25 (addressing Signal communications). In contrast to this obvious display of control over the corporate records, Simic has provided no factual basis to dispute that he has the legal right to obtain them.

Based on the circumstances demonstrated in the record, the Court finds that Mintas has sufficiently established Simic's control over PlayUp Ltd.'s corporate records such that he is required to produce responsive documents.

B.     Appropriate Relief

Having determined that Simic failed to produce many documents responsive to Mintas' discovery requests, the Court turns to the appropriate remedy that should result. Mintas contends that the above showing warrants the extraordinary remedy of a forensic examination. *See, e.g.*, Docket No. 509 at 21-22. Simic argues that he has engaged in discovery in good faith and that a forensic examination is not warranted. Docket No. 518 at 17-19.

---

[8] Mintas challenges Simic's contention that he sent or received the subject communications in his role as CEO of PlayUp Ltd. *See, e.g.*, Docket No. 527 at 11-12. There is some merit to Mintas' position on this issue, but the Court need not resolve Mintas' argument on this issue because the Court finds that Simic had possession, custody, or control of the responsive documents even taking his factual position as true.

[9] Mintas repeatedly quotes this deposition testimony, but the citation is faulty because the page cited does not contain that quotation. *See* Docket No. 509-1 at 213 (page 9 of the Simic deposition transcript). Nonetheless, Simic does not contest the accuracy of the quotation from his deposition transcript, and the Court takes that silence as acquiescence to the fact that Simic did indeed testify to being the "main person in charge of the litigation with respect to PlayUp." *See, e.g.*, *Stichting Pensioenfonds ABP v. Countrywide Fin'l Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)

As discussed above, courts are generally reluctant to order a forensic examination, and will consider several factors such as the extent the responding party has complied with discovery requests and whether the responding party is unable or unwilling to search for the requested information. *See, e.g.*, *United Artists*, 2019 WL 9049050, at *9. Notably with respect to the latter, the typical remedy when questions arise regarding the completeness of a production is the issuance of an order mandating further search efforts and a declaration attesting both to the search undertaken and the completeness of the eventual production made. *Cf. V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-67 (D. Nev. 2019).

The Court has significant concerns regarding Simic's discovery efforts with respect to not producing clearly responsive documents, but the Court is not prepared at this time to order a forensic examination. Simic has provided some discovery in this case and appeared for his deposition. Moreover, the Court has been given no indication that Simic will refuse to comply with an order to search for and produce all responsive documents in accordance with the finding above that he in fact has possession, custody, or control. Given the circumstances of this case, the Court will at this time order Simic to engage in a thorough search for responsive documents and produce those responsive documents. Simic must also serve a declaration attested to under penalty of perjury as to the details of the search undertaken and that all responsive documents have been produced. The responsive documents and this declaration must be provided to Mintas by August 30, 2024.

This order is without prejudice to Mintas renewing her motion for forensic examination in the event that Simic's search and production efforts are lacking. In the event that Mintas has reasonable grounds thereafter to compel a forensic examination as to Simic, she must promptly confer on that issue and file any such renewed motion by September 30, 2024.[10]

---

[10] At this juncture, Mintas has been granted only partial relief with respect to her motion to compel, so her request for expenses is governed by Rule 37(a)(5)(C) of the Federal Rules of Civil Procedure. The Court has broad discretion in that context in deciding whether to award expenses. *See, e.g.*, *Wilson v. Greater Las Vegas Ass'n of Realtors*, No. 2:14-cv-00362-APG-NJK, 2016 WL 4087272, at *1 (D. Nev. July 28, 2016). The Court declines to award expenses at this time, though Mintas may renew her request in the event that a renewed motion for forensic examination is filed in the future following Simic's compliance with the mandates of this order.

## V. CONCLUSION

For the reasons discussed above, the pending motion is **GRANTED** in that Simic must search for and produce responsive documents, and provide a declaration of the same, and the motion is otherwise **DENIED** without prejudice.

IT IS SO ORDERED.

Dated: August 1, 2024

_____
Nancy J. Koppe
United States Magistrate Judge