UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| PLAYUP, INC., | Case No. 2:21-cv-02129-GMN-NJK |
|---|---|
| Plaintiff(s), | **Order** |
| v. | [Docket Nos. 506, 508] |
| DR. LAILA MINTAS, | |
| Defendant(s). | |

Pending before the Court is the motion for discovery-related sanctions filed by Defendant/Counterclaimant Laila Mintas. Docket No. 506; *see also* Docket No. 508 (sealed version); Docket No. 512 (errata). Plaintiff/Counter-Defendant PlayUp, Inc. filed a response. Docket No. 519. Mintas filed a reply. Docket No. 526. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed more fully below, the motion for sanctions is **GRANTED** in part and **DENIED** in part.

**I.   BACKGROUND**

This case arises from a soured business relationship, resulting in the termination of Mintas as CEO, competing allegations of wrongful conduct, and competing claims for tens of millions of dollars in damages. These circumstances are no doubt personal for all involved—and the case involves a lot of money—which has spawned a contentious and messy discovery process.

The parties are currently before the Court on a dispute concerning the sufficiency of PlayUp's damages computation. On February 22, 2022, PlayUp served initial disclosures that include the following:

| Category of Damages | Amount |
|---|---|
| Past Damages Due to Loss of FTX Deal | $450 mm - $500 mm |
| Current and Future Damages Due to Loss of FTX Deal | To Be Calculated |

| | | |
|---|---|---|
| 1 | Past, Current[,] and Future Damages Due to Reputational Harm | To Be Calculated |
| 2 | Past, Current, and Future Damages Related to Other Breaches | To Be Calculated |
| 3 | Past, Current, and Future Damages Due to Loss of Clients, Customers, Licenses, Investors | To Be Calculated |

Docket No. 506-2 at 10.  Although PlayUp's disclosures were supplemented in other ways throughout the discovery period, its damages computation was never altered.  *See* Docket No. 506-3 at 9.

      PlayUp alleged in the amended complaint that the FTX acquisition was to be for "USD $450mm, plus USD $50mm in equity for certain key employees." Docket No. 134 at ¶ 48.  During the discovery process, PlayUp explained the basis for its damages figure, namely that it was seeking $450,000,000 in the anticipated acquisition by FTX, along with $50,000,000 for certain PlayUp employees in the failure of that acquisition.  *See, e.g.*, Docket No. 519 at 5-9 (citing discovery).  For example, Daniel Simic testified at his deposition as follows:

> Q.  So what you're complaining about that Dr. Mintas did to scuttle the deal, right, if you will, the conspiracy that you laid out she did with David Ma, right, in your opinion, the damage that occurred is that you weren't able to close the deal for 450 million for PlayUp, Ltd., right?
>
> A.  And it started before David Ma.
>
> Q.  Okay.  It started before David Ma?
>
> A.  Yes.
>
> Q.  But at the end of the day, what you're complaining about is that deal, the benefit that would have gone to PlayUp Ltd., didn't occur because of what you say is conduct by Dr. Mintas?
>
> A.  100 percent.

Docket No. 519-8 at 6.

      PlayUp has now disavowed any intention of seeking damages pursuant to any of the "To Be Calculated" categories of damages that it had listed.  Docket No. 519 at 23 n.12.

**II.    STANDARDS**

      Rule 26(a)(1)(A) requires parties to provide initial disclosures to the opposing parties without awaiting a discovery request.  The disclosures must include a computation of each

2

category of damages claimed by the disclosing party. Fed. R. Civ. P. 26(a)(1)(A)(iii). "The purposes of the initial disclosure requirements are important and clear. Parties should be put on notice of the factual and legal contentions of the opposing party, and the initial disclosure requirements eliminate surprise and trial by ambush." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 240 (D. Nev. Mar. 29, 2017) (citing *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862-63 (9th Cir. 2015)). "Rule 26 does note elaborate on the level of specificity required in the initial damages disclosure." *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003). "The level of specificity for the damages computation varies depending on the stage of the litigation and the claims at issue." *Silvagni*, 320 F.R.D. at 240. A formal supplemental disclosure is unnecessary with respect to information that has "otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *see also V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 615, 618-19 (D. Nev. 2020).

The party seeking sanctions bears the initial burden of establishing a disclosure violation. *Id.* at 241-42 (citing *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 258 (E.D.N.Y. 2011)).

**III.   ANALYSIS**

The Court begins with the categories of damages for which PlayUp states only that the damages will be calculated in the future. PlayUp does not oppose that aspect of the motion and represents that those categories of damages will not be sought at trial. Docket No. 519 at 22 n.11 & 23 n.12. As such, this aspect of the motion for sanctions will be granted as unopposed. *See, e.g.*, Local Rule 7-2(d). PlayUp is prohibited from seeking any of the following categories of damages at trial: (1) Current and Future Damages Due to Loss of FTX Deal; (2) Past, Current, and Future Damages Due to Reputational Harm; (3) Past, Current, and Future Damages Related to Other Breaches; and (4) Past, Current, and Future Damages Due to Loss of Clients, Customers, Licenses, Investors.

The Court next turns to the category of past damages arising out of the failure of the FTX deal itself. PlayUp's actual disclosure simply provides a lump sum of $450,000,000 to $500,000,000, but it elsewhere made plain that it arrived at this figure because it was seeking the money it lost out on when the FTX deal failed, namely the $450,000,000 in acquisition funds and

3

the $50,000,000 for certain PlayUp employees, *see, e.g.*, Docket No. 519-8 at 6; Docket No. 134 at ¶ 48; *see also* Docket No. 519 at 5-9 (citing discovery).  While neither eloquent nor nuanced, the damages theory is simply that PlayUp was harmed in not receiving the money that was on the table for the FTX deal.  Mintas has been put on notice of the factual and legal contentions of the opposing party.  Indeed, Mintas' own motion expresses this precise understanding of the method on which PlayUp's damages is based.  Docket No. 506 at 8-9.[1]  Since PlayUp made this clear in writing and in discovery, it was not required to supplement its damages disclosure in any formal way.  *See* Fed. R. Civ. P. 26(e)(1)(A).  In short, Mintas has not shown a disclosure violation as to this category of damages.

The gist of Mintas' argument is not that she lacks notice of the damages method, but rather that she does not believe PlayUp can recover damages in this manner.  For example, Mintas questions why damages are not properly calculated as the difference between the sale price and the current value of the company, why PlayUp Inc. (as opposed to PlayUp Ltd.'s shareholders) is entitled to damages, or why mitigation should not result in lower damages.  *See, e.g.*, Docket No. 526 at 9.  What is absent from the papers is a meaningful explanation as to why <u>Mintas' arguments for lower damages must be addressed in PlayUp's damages computation</u>.  Mintas may not think that these damages are recoverable as articulated by PlayUp and she can raise her arguments at the appropriate juncture and in an appropriate manner, but she has not persuaded the Court that a motion for sanctions regarding initial disclosures is a proper vehicle for arguing that the other side's damages theory is untenable.[2]

---

[1] Given that Mintas and her attorneys appear to fully understand the method of calculation, *see* Docket No. 506 at 8-9, the Court would not order exclusionary sanctions even if there had been a technical violation of the disclosure requirements, *see, e.g.*, Fed. R. Civ. P. 37(c)(1) (providing exclusion for harmless violations).

[2] Mintas at times veers into tangential areas, such as arguing that PlayUp's discovery responses have been insufficient.  *See, e.g.*, Docket No. 506 at 13-16; *id.* at 19-20 (insufficiently developed, alternative request that documents be "compelled" and that discovery be reopened).  The only issue properly before the Court at this time is whether to strike PlayUp's damages computation from its initial (and supplemental) disclosures.  The Court declines to opine on other issues that may be lurking within the papers.  *See, e.g.*, Local Rule IC 2-2(b); *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).

4

## IV. CONCLUSION

For the reasons discussed above, the motion for sanctions is **GRANTED** in part and **DENIED** in part. PlayUp is prohibited from seeking any of the following categories of damages at trial: (1) Current and Future Damages Due to Loss of FTX Deal; (2) Past, Current[,] and Future Damages Due to Reputational Harm; (3) Past, Current, and Future Damages Related to Other Breaches; or (4) Past, Current, and Future Damages Due to Loss of Clients, Customers, Licenses, Investors. PlayUp is limited to seeking damages at trial based on its theory that it is entitled to recover the amount of the anticipated acquisition by FTX, along with $50,000,000 for certain PlayUp employees.

IT IS SO ORDERED.

Dated: August 1, 2024

_____
Nancy J. Koppe
United States Magistrate Judge