UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PLAYUP, INC., <br>     Plaintiff(s), <br> v. <br> DR. LAILA MINTAS, <br>     Defendant(s). | Case No. 2:21-cv-02129-GMN-NJK <br><br> **Order** <br><br> [Docket No. 607] |

Pending before the Court is Defendant and Counterclaimant Laila Mintas' motion to reopen discovery. Docket No. 607. Plaintiff and Counter-Defendants PlayUp, Inc. and Daniel Simic (collectively, "PlayUp") filed a response in opposition. Docket No. 610. Mintas filed a reply. Docket No. 612.[1] The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed more fully below, the Court **DENIES** the motion to reopen discovery.

**I.    BACKGROUND**

This case arises from a soured business relationship, resulting in the termination of Mintas as CEO, competing allegations of wrongful conduct, and competing claims for tens of millions of dollars in damages. These circumstances are no doubt personal for all involved—and the case involves a lot of money—which has spawned a contentious and messy discovery process. Indeed, the case spiraled into a discovery morass spanning several years and resulted in the filing of dozens of aggressively disputed discovery motions. *See, e.g.*, *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d

---

[1] The Court cites herein to CMECF pagination, not to the pagination native to the parties' filed documents.

1087, 1092 (D. Nev. Oct. 18, 2022) (addressing more than two years ago the already "umpteenth" discovery dispute briefed out for judicial resolution).[2]

Although the circumstances of the case have at times proven challenging, the Court has repeatedly made clear its overarching expectation that case management deadlines be met. Most pertinent here, on March 18, 2024, the Court permitted a fourth extension to the discovery cutoff, allowing depositions noticed on or before January 15, 2024, to be completed by May 10, 2024. Docket No. 496 at 4. The Court also reset the dispositive motion deadline for June 12, 2024. *Id.* The order made plain that the discovery cutoff was meant to be firm and should be treated as such by the parties:

> It is time for discovery to wrap up so the case can move on to the merits phase. Counsel must take all reasonable steps to meet the deadlines set herein. **THE COURT IS NOT INCLINED TO GRANT FURTHER EXTENSIONS**.

*Id.* at 5 (emphasis in original). This was not a stray remark, but rather part of a consistent admonishment to finish discovery. *See also* Docket No. 503 at 2, 3 (deferring ruling on motion to withdraw as counsel because the discovery cutoff was meant to be "firm" and "the Court is keen on getting the case past the discovery phase and into the merits phase"); Docket No. 495 at 1 (in allowing withdrawal of local counsel, reminding lead counsel that "[t]his interim period without local counsel is not ground to delay discovery or other proceedings. Mintas' existing counsel must take all reasonable steps to meet the deadlines in the case" (emphasis omitted)).

---

[2] An ordinary discovery period in this District lasts 180 days measured from the date of the answer or other first appearance by a defendant. *See* Local Rule 26-1(a). To put the extraordinary span of discovery in this case into some context, the Court notes that the case relates to a failed corporate deal with FTX in 2021. In the intervening years that discovery was ongoing in this case, FTX declared bankruptcy and its executives were convicted and sentenced to prison. And, yet, this civil case remains plagued with discovery issues.

The firm discovery cutoff has now expired. The parties filed and briefed motions for summary judgment. Docket Nos. 537, 538, 539. A settlement conference is set for March 11, 2025. Docket No. 589.[3]

On February 6, 2024, Mintas filed a motion seeking letters rogatory for depositions and documents from Australians Ashley Kerr, Farshad Amirbeaggi, Brooke Maniscalco, Ross Benson, and Sally McDow. Docket No. 464. PlayUp did not oppose the motion on its merits, but expressed concern as to Mintas' delay in seeking that relief from the Court and in the prospect that these foreign depositions would result in yet another extension of the discovery cutoff. *See* Docket No. 478. On February 21, 2024, the Court granted the motion for letters rogatory based on the understanding that Mintas had not sought an extension of the discovery cutoff and was expected to complete these depositions before the discovery cutoff. *See* Docket No. 480 at 2-3. The Court then promptly transmitted the required papers to the Australian authorities. On January 3, 2025, the Court received a letter from the Australian authorities indicating that the processing of the deposition request was delayed due to an administrative error and seeking clarification as to whether the depositions remained necessary. Docket Nos. 603, 603-1. Mintas now seeks to reopen the discovery period so that three of these depositions (for Kerr, Benson, and McDow) can be arranged and held in Australia. Docket No. 607.

**II.    STANDARDS**

The Ninth Circuit has emphasized the importance of scheduling orders, *see Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 641 (D. Nev. 2011) (collecting cases), and has stated bluntly that Rule 16 scheduling orders must "be taken seriously," *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994). The Ninth Circuit has further elaborated that "[t]he use of orders setting a firm discovery cutoff date is commonplace, and has impacts generally helpful to the orderly progress of litigation, so that the enforcement of such an order should come as a surprise to no one." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006).

---

[3] Given potential recusal issues that arise from *ex parte* discussions about the case, the undersigned generally avoids to the extent possible holding a settlement conference when discovery remains ongoing. *See, e.g.*, Docket No. 589 at 1 (continuing the settlement conference "[i]n an effort to have discovery matters resolved prior to the settlement conference").

A request to extend deadlines in the scheduling order must be premised on a showing of good cause. Fed. R. Civ. P. 16(b)(4); Local Rule 26-3. The good cause analysis turns on whether the subject deadlines cannot reasonably be met despite the exercise of diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The diligence obligation is ongoing." *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012). "The showing of diligence is measured by the conduct displayed throughout the entire period of time already allowed." *Williams v. James River Grp. Inc.*, 627 F. Supp. 3d 1172, 1177 (D. Nev. 2022). The Court considers whether relief from the scheduling order is sought based on the development of matters that could not have been reasonably anticipated at the time the schedule was established. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999). Courts may also consider other pertinent circumstances, including whether the movant was diligent in seeking modification of the scheduling order once it became apparent that the movant required relief from the deadline at issue. *Sharp v. Covenant Care LLC*, 288 F.R.D. 465, 467 (S.D. Cal. 2012). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609. "The party seeking modification of the scheduling order bears the burden of establishing diligence." *Desio*, 339 F.R.D. at 638 (citing *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1077 (D. Nev. 2019)). When diligence has not been shown in support of an extension request, "the inquiry should end." *Johnson*, 975 F.2d at 609.

When a request for relief from a case management deadline is made after that deadline has expired, an additional showing of excusable neglect must be made. *Branch Banking & Trust Co. v. DMSI, LLC*, 871 F.3d 751, 764-65 (9th Cir. 2017) (addressing former Local Rule 26-4); *see also* Local Rule 26-3. The excusable neglect analysis is guided by factors that include (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the

proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Branch Banking*, 871 F.3d at 765.[4]

### III.   ANALYSIS

Mintas filed the instant motion to reopen discovery to proceed with four depositions: (1) a second deposition of Counter-Defendant Simic, and (2) the depositions of Australians Kerr, Benson, and McDow. The Court will address these requests in turn below.

#### A.   Simic Deposition

The Court begins with Mintas' request to reopen discovery because she "intends to seek a second deposition" of Simic at some point in the future. *See, e.g.*, Docket No. 607 at 8. This aspect of the motion is speculative because Mintas has not yet filed a proper request to depose Simic for a second time. Such a request must show both that the circumstances justify a second deposition, *see PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 433 (D. Nev. 2023) (identifying disfavored nature of repeat depositions and outlining applicable standards), and that the circumstances justify relief from the discovery cutoff, *cf. U.S. E.E.O.C. v. Pioneer Hotel, Inc.*, 2014 WL 5045109, at *2 (D. Nev. Oct. 9, 2014) (declining to compel discovery after the discovery cutoff because justification to reopen that deadline had not been shown). In short, this aspect of Mintas' motion puts the cart before the horse, so the Court declines to consider the issue as currently presented.

#### B.   Australian Depositions

Mintas also seeks to reopen the discovery period to obtain deposition testimony from Australians Kerr, Benson, and McDow. The gist of Mintas' position is that she is not at fault for

---

[4] The Ninth Circuit has at times stated somewhat differently the factors for consideration in deciding whether to reopen discovery, including "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d. 1060, 1066 (9th Cir. 2017). The Ninth Circuit has also made clear that a lack of diligence is alone fatal to a motion to reopen discovery. *Cornwell*, 439 F.3d at 1027 ("We decline to limit the district court's ability to control its docket by enforcing a discovery termination date, even in the face of requested supplemental discovery that might have revealed highly probative evidence, when the plaintiff's prior discovery efforts were not diligent"); *see also Branch Banking*, 871 F.3d at 765 (explaining that a lack of diligence was sufficient reason, standing alone, to deny motion to reopen deadline to amend pleadings).

the error that led to the letters rogatory remaining unprocessed, that she properly sought these depositions in timely fashion, and that the depositions are important to her case.[5] PlayUp counters that Mintas' request fails from the start because she cannot establish diligence, pointing to her failure to seek these depositions earlier in the discovery period, to enforce her rights as to these depositions after the letters rogatory were not processed, and to seek relief from the discovery cutoff in prompt fashion. The Court agrees with PlayUp that diligence is lacking here.

The Court begins with Mintas' discovery efforts during the discovery period itself. *See Williams*, 627 F. Supp. 3d at 1177 ("The showing of diligence is measured by the conduct displayed throughout the entire period of time already allowed"). The parties held their Rule 26(f) conference on February 1, 2022, Docket No. 58 at 2, at which time discovery could begin, Fed. R. Civ. P. 26(d)(1). Since very early in this case, Mintas knew of the potential significance of Kerr, Benson, and McDow. *See, e.g.*, Docket No. 1-4 (affidavit of Benson filed with the initiating complaint). Indeed, Mintas identified Kerr, Benson, and McDow in her own disclosures back in 2022. *See* Docket No. 478-2 (disclosures identifying Kerr and Benson on February 15, 2022); Docket No. 478-3 (supplemental disclosures identifying McDow on December 28, 2022). Despite that early knowledge, Mintas broached the subject of relying on Hague Convention processes for these Australian depositions in the waning days of the already-extended discovery period, on December 8, 2023. *See* Docket No. 478-1 at ¶ 6; *see also* Docket No. 478-4. Mintas did not file her motion for the letters rogatory for another two months. Docket No. 464.[6] The contention of diligence is seriously undermined by the fact that Mintas had more than ample time (two years, in fact) to obtain these depositions during the discovery period. *See Kelly v. CSE Safeguard Ins. Co.*, 2011 WL 2977890, at *2 (D. Nev. July 21, 2011) (rejecting motion to reopen discovery for

---

[5] The papers raise other arguments, but the Court declines to explicitly analyze every issue raised. Any argument not explicitly addressed herein has been rejected to the extent it is inconsistent with the outcome of this order. *See, e.g.*, *PlayUp*, 635 F. Supp. 3d at 1099.

[6] Mintas essentially blames the meet-and-confer process for that two-month delay. *See, e.g.*, Docket No. 607 at 5. "The requirement to meet-and-confer is not an excuse for failing to file a discovery motion in prompt fashion; counsel must diligently conduct those efforts to avoid unnecessary delay." *Garcia v. Serv. Emps. Int'l Union*, 332 F.R.D. 351, 355 (D. Nev. 2019).

depositions given that the parties had 259 days within the discovery period to take them).[7] The Court cannot find that Mintas could not have obtained these foreign depositions had she exercised reasonable diligence throughout the lengthy discovery period. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, 2021 WL 11960830, at *2 (D. Del. Oct. 15, 2021) (finding a lack of diligence in seeking Hague process for French deposition with only ten days remaining in discovery period given that the movant had several months earlier in the discovery period to seek that relief).

The lack of diligence that Mintas displayed throughout the discovery period is exacerbated by her lack of diligence in raising this issue with the Court. *Cf. Sharp*, 288 F.R.D. at 467 (explaining that the diligence inquiry may address whether the movant was diligent in seeking modification of the scheduling order once it became apparent that the movant required relief from the deadline at issue). The Court granted the motion for letters rogatory on February 21, 2024, Docket No. 480, and the process sought a response by March 8, 2024, in light of the impending discovery cutoff, *see, e.g.*, Docket No. 464-3 at 2. Mintas knew or should have known last spring that her request had not been processed because she had not in fact taken these depositions by the discovery cutoff set by the Court.[8] At that juncture, Mintas apparently resorted (unsuccessfully) to informal self-help in the form of a few electronic communications to the would-be deponents asking them to testify voluntarily. *See, e.g.*, Docket No. 604-1 at ¶¶ 3-8. Mintas did not, however, inquire with the Australian officials regarding the depositions. Even more puzzling given the written admonitions regarding the need to wrap up discovery, the "firm" discovery cutoff, and the expressed understanding that the Australian depositions would be taken before the discovery

---

[7] It is entirely foreseeable that problems may arise in scheduling depositions. *See, e.g.*, *id.* It is also well understood that there may be delays in securing depositions in foreign countries. *See, e.g.*, *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992) (noting "difficulties" inherent in the Hague letter rogatory process for depositions, including that it is "time-consuming"). Given those realities, parties delay at their own peril in seeking foreign deposition testimony until the waning days of the discovery period. *Cf. Jackson*, 186 F.R.D. at 608 (explaining that a request to modify the scheduling order should be based on the development of matters that could not have been reasonably anticipated).

[8] Mintas is disingenuous in stating (repeatedly) that she had no way of knowing there was a delay in processing these depositions. *See, e.g.*, Docket No. 612 at 11. The transmitted papers specifically reference the then-upcoming discovery cutoff. *See, e.g.*, Docket No. 464-4 at 2. That there was a delay is obvious from the fact that the depositions did not proceed.

cutoff, *see, e.g.*, Docket No. 480 at 2-3, Docket No. 496 at 5, Mintas sat on her hands for months. Mintas filed no motion here to protect her interests with respect to these depositions until after the Court notified the parties of the letter from the Australian authorities that the processing of the deposition request was delayed due to an administrative error. Docket Nos. 603, 603-1. Even when a litigant is not at fault for a discovery issue that has arisen, that party is still required to protect her interests by seeking judicial relief in prompt fashion. *Cf. Wells v. Sears Roebuck and Co.*, 203 F.R.D. 240, 241 (S. D. Miss. 2001).[9] Mintas grasps at straws in trying to pin blame on someone else, whether that be this Court, the Australian authorities, or PlayUp, but she fails to explain adequately why she did not act with appropriate diligence in seeking relief from the Court.[10] In light of the above, the Court concludes that Mintas has not shown diligence and this finding is fatal to her instant motion.

Although the lack of diligence alone resolves the instant dispute, the Court notes Mintas' representations that these depositions are important to her case. *See, e.g.*, Docket No. 607 at 2. As the Court explained earlier in this case in denying discovery relief to Simic, representations as to the importance of these depositions cuts both ways. *See PlayUp*, 344 F.R.D. at 436 n.10. Assuming these depositions really are critical to Mintas' case, one would have expected her to be diligent in obtaining them. *Cf. Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 399 (N.D. Tex. 2006) ("the alleged importance of the documents appears inconsistent with the delay in seeking the documents"). Moreover, the Ninth Circuit has made clear that a lack of diligence defeats a motion to reopen discovery even when the discovery sought would be important to the case. *See Cornwell*, 439 F.3d at 1027 (holding that district court acted "well within its sound

---

[9] Mintas' motion is functionally equivalent to a motion to compel discovery filed after the dispositive motion deadline. Even when related to discovery that had been sought during the discovery period, such motions are routinely denied as untimely because continuing to resolve discovery matters at that late juncture impedes the progression of the case. *E.g.*, *Garcia*, 332 F.R.D. at 354.

[10] Mintas argues in reply that this Court has no ability to compel the Australian Government to expedite matters. Docket No. 612 at 5. Mintas does not explain, however, that this Court lacks the authority to inquire into the status of the letters rogatory. Mintas also does not explain why this Court would not require a timely motion seeking relief from the firm discovery cutoff that this Court set.

discretion" in denying request to reopen the discovery cutoff for lack of diligence, "even in the face of requested supplemental discovery that might have revealed highly probative evidence"). In short, the apparent importance of these depositions does not warrant granting Mintas relief from the long-expired discovery cutoff given her lack of diligence.

### IV.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Mintas' motion to reopen discovery.

IT IS SO ORDERED.

Dated: January 27, 2025

_____
Nancy J. Koppe
United States Magistrate Judge