UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PLAYUP, INC.,

       Plaintiff(s),

v.

DR. LAILA MINTAS,

       Defendant(s).

Case No. 2:21-cv-02129-GMN-NJK

**Order**

[Docket Nos. 627, 650]

Pending before the Court is Counterclaimant Laila Mintas' motion for forensic examination. Docket No. 627.[1] Counter-Defendant Daniel Simic filed a response in opposition. 628. Mintas filed a reply. Docket No. 633. The Court held a hearing on May 9, 2025. Docket No. 646; *see also* Docket No. 654 (transcript). For the reasons discussed below, the Court **GRANTS** the motion for forensic examination.

I.    **BACKGROUND**

In 2021, PlayUp Ltd.[2] was discussing possible acquisition by FTX. On November 24, 2021, an FTX representative sent Simic an email stating that FTX had "decided against a full acquisition," terminating the potential acquisition. *See* Docket No. 540 at 169. The parties in this case dispute what led to the demise of the FTX deal: PlayUp and Simic blame Mintas, while Mintas blames Simic. These circumstances are no doubt personal for all involved—and the case involves a lot of money—which has spawned a contentious discovery process. *See, e.g.*, *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1092 (D. Nev. 2022) (addressing nearly three years ago the "umpteenth" discovery dispute briefed for judicial resolution).

---

[1] In some of the documents cited herein, the native pagination does not align with the CMECF pagination. The Court cites to the CMECF pagination.

[2] This case was initiated by PlayUp, Inc. Mintas counterclaimed against PlayUp, Inc., Simic, and PlayUp Ltd. The Court will generally refer to "PlayUp" in the collective unless need for specificity exists.

On April 19, 2024, Mintas filed a motion for a forensic examination or to compel. Docket No. 509. In deciding that motion, the Court explained that the record showed that "Simic was party to many written communications as evidenced by nonparty subpoena responses that Simic did not produce in responding to Mintas' discovery requests served on him." Docket No. 546 at 5. Simic did not dispute that factual predicate. Instead, Simic resisted the motion on the ground that he lacked possession, custody, or control over those documents because the communications were made in relation to his work for PlayUp Ltd. *See id.* The Court resoundingly rejected Simic's argument, finding that he had both possession and control of unproduced, responsive documents. *Id.* at 5-8. Although the Court noted "significant concerns regarding Simic's discovery efforts with respect to not producing clearly responsive documents," it ordered Simic to undertake a thorough search for responsive documents in lieu of a forensic examination. *Id.* at 9. The Court made clear that the order was without prejudice to Mintas renewing her motion for forensic examination if Simic's search and production efforts were lacking. *Id.*

On October 14, 2024, Mintas filed a second motion for a forensic examination or to compel. Docket No. 586. In deciding that motion, the Court found that Simic's efforts in response to the earlier order were deficient in two ways: (1) he failed to produce documents in their native format and (2) he failed to detail sufficiently his search efforts to find responsive documents. Docket No. 602 at 3-5. The Court made clear that its "serious concerns" had not been assuaged given the more recent issues, but the Court again opted for leniency by affording Simic a "final opportunity" to rectify the discovery deficiencies. *Id.* at 6. The Court ordered that:

> Simic must produce the responsive documents in native format by January 24, 2025. Simic must also provide a supplemental declaration detailing his search efforts, including specific identification of each item/account searched and the manner of search undertaken (with any search terms identified), by January 24, 2025.

*Id.* The Court again made clear that its order was without prejudice to Mintas renewing her motion for forensic examination if Simic's search and production efforts were lacking. *Id.*

On March 17, 2025, Mintas filed a third motion for forensic examination, Docket No. 627, which is the matter currently before the Court.

## II.    STANDARDS

"The discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018).  The federal discovery system in some ways resembles an "honor system."  A party propounds discovery.  The opposing party certifies that the response is complete and correct. Fed. R. Civ. P. 26(g)(1).  The discovering party must generally "rely on the representations of the producing party or its representative that it is producing all responsive, relevant, and non-privileged discovery. . . .  That is the way our 'good faith' discovery system works."  *Han v. Futurewei Techs., Inc.*, No. 11-cv-831-JM (JMA), 2011 WL 4344301, at *5 (S.D. Cal. Sept. 15, 2011) (internal citation omitted).  The default reliance on an opposing party's representations is particularly strong in the context of electronically stored information, as "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies as to their own electronically stored information."  *Ashcraft v. Experian Info. Sols., Inc.*, No. 2:16-cv-02978-JAD-NJK, 2018 WL 6171772, at *2 n.2 (D. Nev. Nov. 26, 2018).  Hence, when a party indicates that a reasonable search was undertaken for documents and that no responsive documents were found (or that all responsive documents were produced), such representations will generally carry the day.

This honor system for discovery works in the overwhelming majority of cases, but the word of a litigation opponent is not sufficient in every case.  The discovery rules provide safeguards that may be activated in those cases in which judicial oversight may be warranted.  *See, e.g.*, Fed. R. Civ. P. 26(g)(3) (providing for sanctions for improper discovery certifications); Fed. R. Civ. P. 37(a)(1) (authorizing the filing of a motion to compel).  Most pertinent here, the discovery rules permit a party to request to "inspect, copy, test, or sample" electronically stored information.  Fed. R. Civ. P. 34(a)(1).  This rule provides a basis on which courts may order a forensic examination in appropriate circumstances:

> Computer forensics involves the location, examination, identification, collection, preservation, and analysis of computer systems and electronically stored information.  Forensic examination is unlike the traditional discovery process in that the subject party is required to open its physical premises and electronic systems to a third-party expert.  The subject party monitors the third party "throughout a lengthy process of 'imaging' (creating mirror

> images of certain computer storage devices) and searching the party's computer network, and must bear the risk of any inadvertent damage or disruption to its systems."

*Gergawy v. U.S. Bakery, Inc.*, No. 2:19-cv-00417-SAB, 2021 WL 6139419, at *2 (E.D. Wash. Aug. 24, 2021) (internal citations omitted).

Although forensic examination is a potential remedy, the ability to inspect an opposing party's computers or other electronic devices is by no means a matter of right. *See in re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003); *see also* Fed. R. Civ. P. 34(a), Advisory Comm. Notes (2006) (noting that the rule does not "create a routine right of direct access to a party's electronic information system"). "[T]he Ninth Circuit has not articulated a standard for ordering a forensic examination," *Juul Labs, Inc. v. Chou*, No. 2:21-cv-03056-DSF-PDx, 2022 WL 2161062, at *2 (C.D. Cal. Apr. 19, 2022), but district courts within the Ninth Circuit have explained that such relief may be warranted based on several considerations:

> A determination of whether the circumstances justify forensic imaging requires consideration of whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests. The scales tip in favor of compelling forensic imaging where there exists evidence of either discrepancies in a discovery response or a failure by the responding party to produce requested information.

*United Artists Corp. v. United Artist Studios LLC*, No. 2:19-cv-00828-MWF-MAAx, 2019 WL 9049050, at *9 (C.D. Cal. Oct. 7, 2019) (quotations and internal citations omitted). Stated somewhat differently, a forensic examination is appropriate when there are "serious questions" about the reliability and completeness of the materials produced, *Bass Underwriters, Inc. v. Kono*, No. 2:22-cv-00138-RFB-EJY, 2025 WL 951889, at *7 (D. Nev. Mar. 30, 2025), or about the "candor" of the producing party's assertions, *Ignite Spirits, Inc. v. Consulting by AR, LLC*, No. 2:21-cv-01590-JCM-EJY, 2022 WL 3346754, at *3 (D. Nev. Aug. 11, 2022). Courts have also looked to the existence of evasive behavior and purposeful delay. *See, e.g.*, *Krishnan v. Cambia Health Sols., Inc.*, No. 2:20-cv-574-RAJ, 2021 WL 3129940, at *5 (W.D. Wash. July 23, 2021); *Drueding v. Travelers Home & Marine Ins. Co.*, No. 22-cv-00155-LK, 2022 WL 17092736, at *6 (W.D. Wash. Nov. 21, 2022) (premising an order compelling forensic examination on, *inter alia*,

4

the "foot-dragging" of the opposing party).[3]    Although cases describe various approaches and considerations pertinent to this issue, there is no precise formulation describing exactly when discovery misconduct crosses the Rubicon into territory warranting a forensic examination.

The party seeking a forensic examination bears the burden of showing that such relief is warranted based on the circumstances of a particular case.  *MGA Ent., Inc. v. Nat'l Prods. Ltd.*, No. CV 10-07083 JAK (SSx), 2012 WL 12886446, at *2 (C.D. Cal. Jan. 26, 2012).[4]  District courts within the Ninth Circuit have expressed reluctance in allowing forensic examination of an opposing litigant's electronics.  *E.g.*, *SGII, Inc. v. Suon*, No. 8:21-cv-01168-DOC (JDEx), 2021 WL 6752324, at *9 (C.D. Cal. Dec. 29, 2021).[5]  A forensic examination is an "extraordinary remedy that requires substantial support."  *Bass Underwriters*, 2025 WL 951889, at *4.  A forensic examination is warranted only upon "a strong showing" that the opposing party has defaulted on its discovery obligations.  *Vasudevan Software, Inc. v. MicroStrategy Inc.*, No. 11-cv-06637-RS-PSG, 2013 WL 1366041, at *2 (N.D. Cal. Apr. 3, 2013).[6]  Accusations of incomplete discovery

---

[3] "Courts do not necessarily require nefarious spoliation conduct as a predicate for ordering inspection, although the road to success for the requesting party is certainly a smoother ride the higher the demonstrated degree of culpability on the part of the responding party."  Adam I. Cohen & David J. Lender, ELECTRONIC DISCOVERY: LAW & PRACTICE, § 10.03 (3d ed. 2024) (footnotes and citations omitted).

[4] The burden of persuasion is generally on the party seeking to avoid discovery given "the liberal discovery principles of the Federal Rules."  *Blankenship v. Hearst Corp.* 519 F.2d 418, 429 (9th Cir. 1975).  On the other hand, a motion for forensic examination is disfavored and is not subject to liberal discovery principles.  The burden of persuasion is properly placed on the party seeking the forensic examination.

[5] There are several reasons for exercising caution before allowing a forensic examination. Such a procedure runs counter to the paradigm that "litigants are generally responsible for preserving [and producing] relevant information on their own."  *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008).  Courts also recognize that computers, cell phones, and other electronic devices are not simply "technological convenience[s].  With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'"  *Riley v. Cal.*, 573 U.S. 373, 403 (2014); *see also Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 737 (9th Cir. 2024).  "Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. . . . Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."  Fed. R. Civ. P. 34(a), Advisory Comm. Notes (2006).

[6] Some courts have indicated that this evidence may derive not only from the discovery presently at issue, but also from past conduct of the responding party.  *See, e.g.*, *Lee v. Asplundh Tree Expert Co.*, No. C17-719-MJP, 2017 WL 6731978, at *2 (W.D. Wash. Dec. 29, 2017) (basing order for forensic examination on conduct in related case).

productions are not uncommon in federal litigation, *see, e.g.*, *Kohli v. Dayal*, No. 2:20-cv-00538-CDS-NJK, 2023 WL 11909037, at \*2 (D. Nev. July 28, 2023), and speculation, hunches, and skepticism about the completeness of discovery will not justify a forensic examination, *see e.g.*, *Citizens Bus. Bank v. Mission Bank*, No. 5:22-cv-01473-FLA (SPx), 2024 WL 3363593, at \*4 (C.D. Cal. Mar. 15, 2024). "The mere possibility that a party might not produce all relevant, unprotected documents, is not a sufficient basis for ordering such a party to disclose its entire computerized system of information management." *Lawyers Title Ins. Co. v. U.S. Fidelity & Guar. Co.*, 122 F.R.D. 567, 570 (N.D. Cal. 1988).

"In determining if a forensic examination of an electronic device is warranted, courts consider whether the examination will reveal relevant information that is proportional to the needs of the case given any possible privacy or confidentiality concerns." *Estate of Mario Solis v. Cnty. of Riverside*, No. 5:23-cv-00989-HDV-SPx, 2025 WL 1090945, at \*2 (C.D. Cal. Mar. 11, 2025); *see also Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053-54 (S.D. Cal. 1999). "Courts and commentators have recognized that privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices." *Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 WL 5281629, at \*5 (N.D. Cal. Oct. 22, 2018); *see also Jones*, 95 F.4th at 737-38. The proportionality analysis also implicates several other considerations, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Some of the pertinent information may be uniquely within each party's possession, so that party is expected to advance a sufficient factual basis for its position as to the various proportionality considerations. *See* Fed. R. Civ. P. 26, Advisory Comm. Notes (2015) (discussing the parties' disparate access to information pertinent to a proportionality analysis). Given the extraordinary nature of ordering a forensic examination, courts may also consider whether less drastic remedies are feasible. *See, e.g.*, *MGA Entertainment*, 2012 WL 12886446, at \*2-3 (denying motion to compel forensic

examination and, instead, ordering further attorney-supervised search for responsive documents and submission of declaration attesting to details of that search).

Whether to permit a forensic examination is a matter entrusted to the broad discretion of the trial court. *Gopher Media, LLC v. Spain*, No. 3:19-cv-02280-CAB-KSC, 2020 WL 5748093, at *1 (S.D. Cal. Sept. 25, 2020).

## III.    POST-HEARING FILINGS

Mintas' motion raises a host of troubling accusations, including arguing that Simic engaged in direct violations of the undersigned's discovery orders. As will be discussed more fully below, Simic's written response to the motion takes a "see no evil" approach of ignoring the facts and trying to gaslight the Court with generalized statements that there was no misconduct. Simic's counsel also failed to provide concrete answers to several questions posed at the hearing. After the hearing concluded, Simic and his counsel tried to plug some of the holes. In particular, Simic's counsel filed an errata to her declaration, Docket No. 647, and a notice of production regarding a key document in dispute (SIMIC000004), Docket No. 648. Mintas then filed a motion to supplement, Docket No. 650; *see also* Docket No. 653 (errata), which spawned full briefing, *see* Docket Nos. 659, 661 (errata), 662.

The Court will in its discretion consider Simic's late filings. Docket Nos. 647, 648. With respect to Mintas' motion to supplement, Docket No. 650, the Court will permit that supplementation only as to the issues raised in Simic's late filings. Mintas' supplement is otherwise unnecessary to resolving the underlying motion.

## IV.    ANALYSIS

The Court will frame its analysis below in accordance with the considerations provided in the case law. First, the Court determines whether Mintas has made a strong showing that Simic engaged in the kind of discovery misconduct that ordinarily triggers a forensic examination. Second, the Court considers the availability of alternative remedies, Simic's privacy interests, and the proportionality of a forensic examination to the needs of the case. Third, the Court addresses the protocol for the forensic examination.

**A.    Discovery Misconduct**

The Court begins with the parties' dispute as to whether circumstances exist to warrant a forensic examination. As explained above, courts have found a myriad of circumstances may warrant a forensic examination, including "discrepancies in a discovery response," "failure[s] by the responding party to produce requested information," "serious questions" about the reliability or completeness of the materials produced, "serious questions" about the "candor" of the producing party's assertions, and "foot-dragging" of the responding party. *See* Section II. Mintas' counsel surmised at the hearing that "any way you want to cut it, we've got it here in spades." Docket No. 654 at 49. Mintas' counsel is right.[7]

1.    FTX Meeting Notes from November 15, 2021

Prior to the close of discovery, Simic produced only two documents comprising a total of four pages. Docket No. 627-1 at ¶ 2. One of those documents was a PDF version of notes of a meeting with FTX on November 15, 2021 (SIMIC000004). *See* Docket No. 627-2. With respect to this document, the parties have traveled a long path. On November 3, 2023, Mintas served Simic with a request for production for "all notes, Documents, and Communications relating to any meeting involving You and FTX." Docket No. 509-1 at 49 (Request for Production 22). The propounded requests specified that Simic was required to "[p]roduce the documents in native format, including metadata." *Id.* at 41. On December 8, 2023, Simic responded with general objections that did not include any objection to the requirement for native format production. *Id.* at 91-93. As to this specific request, Simic provided a response as follows:

> Objection. This Request calls for documents that are privileged attorney-client communications and also calls for documents that are confidential attorney work-product. Notwithstanding said objections, Mr. Simic relies upon documents responsive to this Request that have already been produced in this matter and will produce any additional, relevant documents that are in his possession, custody[,] and control.

---

[7] The Court will not herein address all of Mintas' contentions of discovery violations, but will rather provide examples showing that a forensic examination is warranted.

*Id.* at 99. Simic did not produce SIMIC000004 until February 12, 2024. Docket No. 627-1 at ¶ 3. The document was not produced in native format, but rather as a PDF. *See id.* The document properties indicate that the PDF was created the day it was produced, February 12, 2024. *See id.*

In resolving Mintas' second motion for a forensic examination or to compel, the Court rejected Simic's arguments that he was not required to produce documents in native format. Docket No. 602 at 4. The Court ordered Simic to "produce the responsive documents in native format by January 24, 2025." *Id.* at 6. That deadline was later extended to February 14, 2025. Docket No. 616.

In the pending motion, the first argument presented by Mintas is that Simic violated the Court's order by failing to produce the native format version of SIMIC000004. Docket No. 627 at 11-12. Mintas also explained that the native format version of this document is important because it provides contemporaneous statements of "perhaps the most important meeting in this entire case: the final meeting between Simic and FTX prior to FTX's rejection of the FTX Deal." *Id.* at 11. What is even more problematic, Mintas provides evidentiary support showing that SIMIC000004 had been altered. More specifically, Mintas obtained an email from Michael Costa[8] to Simic attaching a different version of the same meeting notes. *See* Docket No. 627-3; *see also* Docket No. 627-1 at ¶¶ 5-7. The Costa email references the attached version of the notes as being "unedited from when they were written." Docket No. 627-3 at 2. Importantly for current purposes, however, SIMIC000004 differs in several material respects from the version attached to the Costa email. *See* Docket No. 627 at 12. Hence, the pending motion lays the factual foundation to find that (1) the PDF of SIMIC000004 that Simic produced had been altered for litigation advantage, (2) Simic violated the Court's order to produce the native version of SIMIC000004, and (3) Simic violated that order as a bad faith tactic to avoid confirmation of his evidence manipulation.

These types of substantiated accusations of bad faith discovery violations should be the stuff of nightmares for any attorney. And, yet, the response to the pending motion ignores the issue, providing no rebuttal or argument of any kind. *See* Docket No. 628. Hence, as the briefing

---

[8] Michael Costa is a board member of PlayUp Ltd. *See, e.g.*, Docket No. 627-1 at ¶ 5.

concluded it was undisputed that Simic engaged in bad faith discovery violations in direct contradiction of a judicial order. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[i]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

Rather than making any attempt to explain or justify the above conduct with Rule 11 representations or sworn declarations, Simic and/or his counsel opted to have a junior associate email opposing counsel behind the scenes as follows:

> Hi Eric, we have thoroughly searched for the native format of the Simic000004 document. After a diligent search, we have determined that no native format exists for this particular document. Thank you.
>
> Kind regards,

Docket No. 633-3.[9] This missive does nothing to put the issue to rest; rather, it raises more red flags. Most obviously, the email appears purposefully vague, fails to comply with the order to provide a declaration as to search details, and appears to show that Simic either lost or destroyed the native format version of the document.

The evasive behavior continued at the hearing. First, Simic's lead counsel provided inconsistent representations on the basic facts concerning SIMIC000004. Counsel insisted that "we worked with Mr. Simic and Mr. Costa to see if there was a native version of the specific PDF that they're asking for, and **it just doesn't exist**. I can't -- my client can't be compelled to produce something that they don't have." Docket No. 654 at 7 (emphasis added). Counsel then indicated that she did not actually know the details of the native format version of SIMIC000004, that she requested the native format from the client, and that the client provided her with neither the native format of the document nor a clear explanation for failing to do so:

> MS. BROOKHYSER: . . . My understanding is the PDF that we have was created by Mr. Simic. I've asked him to give us natives. I've asked Mr. Costa. And then the notes, the notes file that they

---

[9] This email was provided to the Court by Mintas with the reply.

have, the picture of which has been produced, is the one that they have. We don't have a separate native of a different version.

THE COURT: What happened to that native version?

MS. BROOKHYSER: I don't know, Your Honor. I have asked the client, and I have not been given a clear explanation of what happened to that native version.

Docket No. 654 at 8-9. Just moments later, however, counsel pivoted again to offer that "if we need to produce the actual Apple note, I'm not quite sure how to do that in a native format, but **we can do that**." *Id.* at 9 (emphasis added). Hence, within the span of roughly two minutes, counsel shifted from (1) insisting that the native format "just doesn't exist" to (2) suggesting that the client may be withholding the native format from counsel to (3) offering that "we can" produce the native format.

Second, counsel was not credible in expressing confusion as to what constitutes the "native format" of a discovery document. Again, counsel seemed to understand perfectly well that a generated PDF copy of a document is not the native format of that document. *See, e.g.*, *id.* at 7. When pressed as to inconsistencies in her representations, counsel feigned confusion as to what constitutes a native version of a document only to immediately acknowledge that a copy is not a native version:

THE COURT: Your response seems to suggest that the native format was produced, despite the email from [the associate that it didn't exist and would not be produced]. How do you essentially comport those two representations?

MS. BROOKHYSER: So I think when we are referring to the native format, we're referring to the picture of the actual Apple Notes document.

THE COURT: Which is not native format?

MS. BROOKHYSER: That's fair, Judge. . . .

*Id.* at 9.

Third, counsel was unable to state at the hearing whether her briefing even discussed SIMIC000004 at all. There was some suggestion that perhaps a reference to the production of "November 15, 2020 Board Meeting Minutes" was actually meant to be a representation that the native format of SIMIC000004 had been produced. *See* Docket No. 633 at 4 (quoting Docket No.

11

628 at 10).  At the hearing, counsel could not state whether her own briefing was meant to be a reference to SIMIC000004.  *See* Docket No. 654 at 10-12.  No doubt, counsel had put herself in a box.  If that reference in her brief was meant to convey that the native version of SIMIC000004 had been produced, such a representation would be directly contrary to the email sent to opposing counsel that "we" could not find the native format and that it would not be produced.  Docket No. 633-3.  If that reference was not meant to convey the native version of SIMIC000004 had been produced, then Simic effectively conceded any counterargument on this issue by choosing to ignore it in the briefing.  At the end of the day, counsel could not explain what her own briefing meant to convey, and was left to effectively concede that the responsive brief simply ignored the very first issue argued in the motion.  *See* Docket No. 654 at 10-12.

Things went from bad to worse after the hearing when, on May 12, 2025, counsel filed an errata to her earlier declaration in an effort to "clarify" the issues.  *See* Docket No. 647-1.  The bottom line of the errata is that counsel belatedly attested that she believed all along, including at the time she wrote the responsive brief, that the native version of SIMIC000004 had been produced to opposing counsel.  Counsel declares more specifically as follows:  "Before responding to the Renewed Motion to Compel, I received verification from my Associate that the native files that needed to be supplemented were all received and were being produced.  I believed that included the November 15, 2021 notes."  *Id.* at ¶ 7.  There are some blatant deficiencies in this retelling of history.[10]  First, the responsive brief was filed on March 28, 2025, *see* Docket No. 628 (notice of electronic filing), and counsel provides no explanation (credible or otherwise) as to how she could have believed at that time the native version of SIMIC000004 had been produced when counsel was a party to her associate's email just two days earlier representing that "no native format exists for this particular document," Docket No. 633-3.  Second, if counsel truly believed when briefing the motion that the native version of SIMIC000004 had been produced, such an understanding is completely at odds with each of the three different arguments she presented at the hearing on the issue.  *See* Docket No. 654 at 7 ("it just doesn't exist.  I can't -- my client can't be compelled to

---

[10] Since the errata was filed after the hearing, these deficiencies are not easily subject to the normal scrutiny of the adversarial process.

produce something that they don't have"); *id.* at 8-9 ("I've asked [Simic] to give us natives. I've asked Mr. Costa. And then the notes, the notes file that they have, the picture of which has been produced, is the one that they have. We don't have a separate native of a different version . . . I have asked the client, and I have not been given a clear explanation of what happened to that native version); *id.* at 9 ("if we need to produce the actual Apple note, I'm not quite sure how to do that in a native format, but we can do that"). At best, counsel feigns incompetence through this declaration, indicating that she wrote a brief, filed a declaration (Docket No. 628-1), and appeared for a hearing regarding serious accusations of misconduct with no understanding of the facts and without having undertaken any reasonable effort to obtain such an understanding. The errata does not dig Simic and his counsel out of their hole.

The story continued to evolve even thereafter. A mere four days later, on May 16, 2025, Simic filed a "Notice of Production of the native version of SIMIC000004." Docket No. 648 at 1.[11] No details are provided, other than a representation that "the native version, [W]ord document, of SIMIC000004 was produced." *Id.* Even taking this representation as true, it is on its face contrary to multiple representations that the native format version of the document no longer exists. *E.g.*, Docket No. 633-3; Docket No. 654 at 7. The Court also notes that the native format of SIMIC000004 has been referenced repeatedly as being an Apple Notes file, *see, e.g.*, Docket No. 647-1 at ¶¶ 10, 11 (declaration from just days earlier referencing Apple Notes as the native format); Docket No. 654 at 11 ("the only native that I understand exists is this Apple Notes"), but the recent production was in Microsoft Word. The notice also fails to explain why Simic did not produce this native version when he was ordered to do so months earlier or, relatedly, why he apparently produced it only after full briefing and after a hearing about serious discovery accusations.

On May 22, 2025, Mintas filed a supplemental brief explaining that the Word version of SIMIC000004 referenced in the notice of production was different than either of the two versions produced previously. *See* Docket No. 650-1 at ¶¶ 7-8. Moreover, the metadata related to this document revealed that it was created the day before the case was initiated and after the version of

---

[11] Simic's counsel moved to withdraw minutes after filing this notice of compliance. *See* Docket No. 649. The Court resolves the motion to withdraw through separate order.

SIMIC000004 produced by Costa. *See id.* at ¶ 9. Hence, Mintas paints the latest production of this document as additional evidence of Simic's discovery abuses, including evidence tampering. *See* Docket No. 650 at 6-7.

On June 5, 2025, Simic filed a declaration in response to Mintas' motion to supplement addressing SIMIC000004. *See* Docket No. 659-1 at ¶¶ 39-46. Simic notably provides no explanation (again) as to why the native format version of this document was not produced earlier in compliance with his discovery obligations both as to the discovery request itself and the Court's specific order. Instead, Simic contends that he updated his notes with his recollection and Costa's input, so that there were "minimal and non-material wording variations" of this document at different times. *See id.* at ¶¶ 43-45. Simic then indicates that no one would expect a separate Word document for each instance that the document was printed to PDF. *Id.* at ¶ 44. In short, Simic now concedes that there are multiple versions of this document, despite previously producing only a single PDF version.[12] Moreover, as explained in the reply to the motion to supplement, Simic does not address the metadata showing that he created the document the day before the case was initiated and after the version of SIMIC000004 produced by Costa. *See* Docket No. 662 at 2.

At this stage, it is undisputed that Simic failed to timely provide discovery in response to the discovery request and in accordance with the Court's order. Moreover, the story portrayed by Simic and his counsel as to SIMIC000004 has been in constant flux, sometimes changing literally by the minute. Given the repeated misrepresentations, the Court has no confidence in the accuracy of the current representations made as to the document at issue, including whether the actual native

---

[12] Having effectively conceded several different versions of this document are in his "personal" possession, *see* Docket No. 659-1 at ¶ 45, the papers also notably fail to explain how Simic did not violate his discovery obligations by not producing *each* version in responding to the discovery request in the first instance, *see* Docket No. 509-1 at 43 ("'Document' includes every version of every such item" (emphasis in original)). Simic also does not clearly attest that he has in fact produced every version of this document at this time.

version of these notes has truly been produced. As to the perpetual foot-dragging and evasion, the Court has been given no clear answers as to the undeniable tardiness of the production efforts.[13]

### 2. Declaration Attesting to Search Efforts

Mintas also points to deficiencies with Simic's declaration as to the search undertaken for responsive documents. Docket No. 627 at 17-18. On August 1, 2024, the Court ordered Simic to "engage in a thorough search for responsive documents and produce those responsive documents. Simic must also serve a declaration attested to under penalty of perjury as to the details of the search undertaken and that all responsive documents have been produced." Docket No. 546 at 9. On January 3, 2025, the Court rejected the declaration that Simic provided as "plainly insufficient." Docket No. 602 at 5. The Court ordered Simic to provide a supplemental declaration "detailing his search efforts, including specific identification of each item/account searched and the manner of search undertaken (with any search terms identified)." *Id.* at 6.[14]

Mintas argues that Simic violated this order by providing insufficient detail, pointing specifically to the lack of any detail on the search for responsive communications or documents in Simic's text messages, laptop computer, or Microsoft Teams account. Docket No. 627 at 17. Mintas' concerns track with the declaration. Simic attests that he "personally searched [his] test [sic] messages . . . laptop, and Microsoft Teams for information responsive to the requests in the Order." Docket No. 627-9 at ¶ 7. Simic's response to the motion amounts to smoke and mirrors, focusing on the details provided in his declaration as to <u>other</u> sources of information. *See, e.g.*, Docket No. 628 at 9 (quoting the declaration as to the search of WhatsApp, Signal, and email account). While Simic elsewhere attests to the search criteria he used to search his emails,

---

[13] Other missing native format versions of responsive documents discussed in Mintas' motion were produced by Simic <u>after</u> the motion was filed, *see* Docket No. 628 at 10, despite Simic having been ordered to produce them before that time, *see* Docket No. 616. The violation of the Court's order is chalked up to a bald representation of inadvertence. *See* Docket No. 628-1 at ¶ 4 (declaration indicating without elaboration that these native file documents "were inadvertently left out of the disclosure"). There is no dispute that Simic also violated the Court's order by failing to produce the native version of these other documents by the deadline set in the order.

[14] Details must be provided "with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 367 (D. Nev. 2019) (quoting *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012)).

WhatsApp, and Signal accounts, Docket No. 627-9 at ¶¶ 6(h), (i), he omits any attestation as to how he searched his text messages, laptop, or Microsoft Teams. Simic provides no actual argument on the issue in the responsive brief, so it is effectively conceded. *See Stichting Pensioenfonds*, 802 F. Supp. 2d at 1132.

Rather than properly address this issue in the briefing, Simic's counsel attempted to bridge the declaration's gaps at the hearing based on her "understanding" of what was supposed to be said in the declaration (but was in reality omitted). *See* Docket No. 654 at 32-34. Even assuming that these new contentions are properly raised at the hearing, *but see, e.g.*, *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1075 n.4 (9th Cir. 2016), counsel's statements do not change the outcome here. The details of the search must be provided <u>in a declaration</u>. Docket No. 602 at 6; Docket No. 546 at 9. Such a requirement is consistent with ample case law. *See, e.g.*, *V5 Technologies*, 332 F.R.D. at 367 (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006) and *Meeks v. Parsons*, No. 1:03-cv-6700-LJO-GSA, 2009 WL 3003718, at *4 (E.D. Cal. Sept. 18, 2009)). The contentions made by Simic's counsel at the hearing were (obviously) not provided in declaration form and it would appear that counsel lacks personal knowledge of this particular information. Moreover, while Simic has expanded the record after the hearing in other ways, a corrected declaration was not filed by Simic as to the search of the text messages, laptop, or Microsoft Teams to correspond with his counsel's statements. The lack of a proper declaration on this issue is particularly important in the context of this case given the serious concerns as to lack of candor, including as to inaccurate representations made at the hearing itself. *See, e.g.*, Section IV.A.1.

In short, the Court agrees with Mintas that, despite two orders, Simic failed to substantiate that a reasonable search was undertaken for a wide swath of responsive documents from text messages, his laptop, or Microsoft Teams account. Simic's violations and evasive misconduct raise serious questions as to the completeness of the production made.

### 3.    Self-Selection of a Limited Time Period

Mintas also points to Simic's failure to search for responsive documents throughout the time period identified in the discovery requests. Docket No. 627 at 14-15. The discovery requests

seek documents for the period of January 1, 2019, to the present.  Docket No. 509-1 at 30.  Simic has been ordered twice to "search for and produce responsive documents."  Docket No. 546 at 10; *see also id.* at 6 (in declining to order a forensic examination, explaining that the Court would instead "order Simic to engage in a thorough search for responsive documents and produce those responsive documents"); Docket No. 602 at 6 ("Simic must produce the responsive documents in native format").

Simic's supplemental declaration states cryptically that he "focused" his search on responsive documents during the responsive timeframe of January 1, 2019, to the present.  Docket No. 627-9 at ¶ 6.  And, yet, the later attestations in that same declaration regarding the specific searches conducted are limited to a few months in 2021.  *See id.* at ¶ 6(i).  Simic now explains (through counsel) that searching earlier time periods does not make sense given the facts of this case.  Docket No. 628 at 11.  Putting aside the critical problem that a party is not permitted to omit an objection to a stated timeframe only later to decide for himself—after being ordered by the Court to produce responsive documents—that a shorter period should apply, Simic provides no justification at all as to his failure to search for documents <u>after</u> the 2021 search period.  Moreover, Mintas responds to this argument in reply by explaining that, *inter alia*, "productions from FTX and various other third parties show that Simic sent and received hundreds of relevant and responsive emails related to Dr. Mintas and FTX in 2022 and 2023."  Docket No. 633 at 5.  Hence, there remains an unrebutted deficiency with the search and production made as to documents in 2022 and 2023.

In short, the Court agrees with Mintas that Simic's failure to search for and produce documents from 2022 and 2023 raises serious questions as to the completeness of the production made.

### 4.    Conclusion

Mintas has made a strong showing of discovery misconduct.  Summed up in legal terminology pertinent to this motion, Simic has displayed many different types of behavior that warrant a forensic examination, including "failure[s] by the responding party to produce requested information," "serious questions" about the reliability or completeness of the materials produced,

"serious questions" about the "candor" of the producing party's assertions, and "foot-dragging" of the responding party.

**B.    Additional Considerations**

Having concluded that Mintas made a strong showing that Simic engaged in the type of discovery misconduct that generally triggers a forensic examination, the Court also finds that lesser remedies are not feasible in this case.  The Court has itself expressed reluctance to ordering a forensic examination.  Despite expressing its serious concerns on two separate occasions, the Court declined to order a forensic examination to afford Simic a chance to right his ship.  Docket Nos. 546, 602.  It should have been perfectly clear to Simic that additional chances would not be provided thereafter.  *See* Docket No. 602 at 6 (indicating that Simic would have a "final opportunity" to "rectify the discovery issues").  Despite opportunity and warning, Simic still did not comply.  Instead, he continued along the same course of obfuscation.  At this juncture, a forensic examination is required to ensure that Mintas has the important discovery material to which she is entitled for trial.

The Court also agrees with Mintas that ordering a forensic examination accords with the principal of proportionality.  Considering the discovery obfuscation and the other evidence presented, the Court anticipates that a forensic examination may reveal probative material that has not yet been disclosed.  Although the Court is mindful of Simic's privacy interest, the Court also notes that this is a business dispute and a protocol will be adopted to prevent unnecessary intrusion.  Moreover, the Court agrees with Mintas that the forensic examination is otherwise proportional to the needs of the case.  *See, e.g.*, Docket No. 627 at 4; Docket No. 654 at 38-48.

**C.    Protocol**

The motion outlines a proposed protocol to govern the forensic examination, seeking to balance Simic's privacy interests with the need for an inspection to identify and yield relevant documents.  Docket No. 627 at 18-19.  Simic's sole objection to the protocol in his responsive brief is to the proposal that the parties confer on a third-party examiner rather than Mintas preemptively proposing one.  *See* Docket No. 628 at 10.  Parties conferring on the identity of the forensic examiner is entirely commonplace, *e.g.*, *Ignite Spirits*, 2022 WL 3346754, at *5 (upon

granting motion for forensic examination, ordering the parties to confer on the forensic examiner), and Simic abandoned his contrary position at the hearing, *see* Docket No. 654 at 36-37.

The Court adopts Mintas' proposed protocol:

- The parties must immediately confer on the third-party examiner. Within seven days of the issuance of this order, the parties must file a joint statement with the name of the chosen third-party examiner. If the parties cannot agree on a third-party examiner, they must file a joint statement with their competing proposals and arguments within 14 days of the issuance of this order. The selected examiner will be retained at Simic's expense.[15]

- Within seven days of the selection of an examiner (by party agreement or by Court order), Simic must provide the examiner with access to 1) PlayUp's Microsoft Teams database which stores both PlayUp, Ltd. and PlayUp, Inc's corporate records, 2) the playup.com email account of Simic, and 3) any cellphone, laptop, or other electronic device used by Simic to conduct business for PlayUp, Inc. or PlayUp, Ltd.

- The examiner will promptly perform keyword searches for emails, communications, and documents that include the phrases "FTX," "Humble Libretto,"[16] "Alameda," "Laila," "Layla," "Leyla," "Leila," "Mintas," or "bitch" and the email addresses of any individuals at FTX, including Dabir, Arora, Ma, Bankman-Fried, and Sun. The timeframe for the search will encompass the period of July 1, 2021, to the present.

- The documents resulting from these searches will be produced by the examiner to counsel for Simic for review. Within seven days of receiving the documents, Simic's counsel must

---

[15] Simic's counsel suggested at the hearing that Mintas should pay for at least part of the forensic examination. *See* Docket No. 654 at 45-46. The Court disagrees. The forensic examination is only necessary because of Simic's misconduct, so Simic will be responsible to pay for that examination. *See, e.g.*, *Krishnan*, 2021 WL 3129940, at *5 ("Because the requirement for a forensic examination is the direct consequence of Plaintiff's failure to properly disclose communications and apparent withholding of information, Plaintiff must bear the financial cost of such an examination").

[16] Simic's counsel indicated at the hearing that some search terms would no longer point to relevant information considering the more recent trimming of the live claims in the case. *See* Docket No. 654 at 43-44 (arguing that "Humble Libretto" and the email address for Sun would no longer point to relevant documents); *see also* Docket No. 631. If the parties concur to limiting the search accordingly, they may do so by agreement. *See* Fed. R. Civ. P. 29(b).

produce all non-privileged documents received from the examiner to Mintas' counsel with a privilege log containing sufficient information to evaluate any assertions of privilege.

- If any disputes arise regarding a privilege assertion or other disputed item, counsel must promptly confer in compliance with the governing rules.  If judicial oversight is required, any such motion must be filed within 14 days of Simic's counsel producing documents and the privilege log to Mintas' counsel.

**V.    CONCLUSION**

For the reasons discussed above, Mintas' motion for a forensic examination (Docket No. 627) is **GRANTED**.  Mintas' motion to supplement (Docket No. 650) is **GRANTED** in part and **DENIED** in part.

IT IS SO ORDERED.

Dated: July 18, 2025

_____
Nancy J. Koppe
United States Magistrate Judge